# Defendant's Exhibit K



**CHRIS CHRISTIE**
*Governor*

**KIM GUADAGNO**
*Lieutenant Governor*

*State of New Jersey*
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
PO BOX 080
TRENTON, NJ 08625-0080

**JOHN J. HOFFMAN**
*Acting Attorney General*

**TO:**       Elie Honig, Director, Division of Criminal Justice
          All County Prosecutors

**FROM:**   John J. Hoffman, Acting Attorney General

**DATE:**    September 24, 2014

**SUBJECT:** <u>Clarification of "Graves Act" 2008 Directive with Respect to Offenses Committed
          by Out-of-State Visitors From States Where Their Gun-Possession Conduct
          Would Have Been Lawful</u>

    Recent events have focused public attention on how prosecutors exercise discretion in cases
where a resident of another state brings into New Jersey a firearm that had been acquired lawfully
and that could be carried lawfully by that visitor in the visitor's home jurisdiction. Under current
New Jersey law, these otherwise law-abiding persons are subject not only to arrest, prosecution, and
conviction for unlawful possession of a firearm, but also to enhanced punishment – a mandatory
minimum State Prison sentence – under the "Graves Act."

    For the reasons explained below, in most of these cases, imprisonment is neither necessary
nor appropriate to serve the interests of justice and protect public safety. Accordingly, and consistent
with the manner in which the vast majority of these cases have been handled throughout the State,
this memorandum provides that in the absence of case-specific aggravating circumstances, these
defendants should not be sentenced to incarceration. Prosecutors can promote this outcome in either
of two ways. First, depending on the specific circumstances, it may be appropriate for the prosecutor
to allow a defendant to avoid the consequences of a criminal conviction by consenting to his or her
application for pretrial intervention (PTI), subject to review and approval by the trial court judge.
In making that decision, the prosecutor should consider not only the general aggravating and
mitigating factors and PTI criteria set forth in the New Jersey Code of Criminal Justice, but also
special facts and circumstances set forth in Section 3 of this memorandum that are particularly
relevant to these unusual situations involving otherwise law-abiding persons who inadvertently
violate New Jersey's gun laws.

    In cases where the prosecutor determines that PTI is not appropriate, this memorandum
establishes a rebuttable presumption that the prosecutor will tender an initial plea offer that
authorizes the court upon conviction to impose a non-custodial probationary sentence.



*New Jersey Is An Equal Opportunity Employer · Printed on Recycled Paper and is Recyclable*

1.    The 2008 Graves Act Expansion

The Graves Act was expanded in 2008 to include the unlawful simple possession of a handgun. See P.L. 2007, c. 341 (effective January 13, 2008). Before that, the Graves Act sentencing enhancement applied only to convictions for possession of a firearm <u>for an unlawful purpose</u>, or possession of a firearm <u>during the course of committing certain specified predicate crimes</u>.[1]  When the Graves Act was reworked substantially in 2008, the Attorney General promulgated the "Attorney General Directive to Ensure Uniform Enforcement of the 'Graves Act'" [hereinafter, "2008 Graves Act Directive," or simply "2008 Directive"].  The 2008 Directive provides guidance to prosecutors in applying the statutory safety valve codified in N.J.S.A. 2C:43-6.2, which may result in a reduction of the sentence to one year imprisonment or to non-custodial probation.  The 2008 Directive also provided limited guidance to prosecutors on when to consent to a defendant's application for PTI.

2.    The Current Graves Act Framework

Under New Jersey's current statutory framework, prosecutors play a critical role in determining whether a defendant who is the subject of this Directive – i.e., an otherwise law-abiding resident of another state who brings into New Jersey a firearm that had been acquired lawfully and that could be carried lawfully by that visitor in the visitor's home jurisdiction – will be sentenced to State Prison.  The Graves Act generally stipulates that persons convicted of the unlawful possession of a firearm must serve 42 months in prison before becoming eligible for parole.[2]  The law authorizes two distinct means by which a defendant may avoid the mandatory minimum sentence.  The application of both of these exemptions are vested in the sound discretion of the prosecuting authority.

First, a defendant may avoid conviction for a Graves Act crime by being admitted to the PTI program.  Under New Jersey law, prosecutors are not permitted to reject categorically a defendant's application for PTI on the grounds that he or she is charged with a crime that is subject to the presumption of imprisonment or a mandatory minimum sentence.  See State v. Caliguiri, 158 N.J. 28 (1999).  There is, however, a rebuttable presumption that a person charged with a Graves Act

---

[1]

These predicate crimes, which are listed in N.J.S.A. 2C:43-6c, are:  murder (N.J.S.A. 2C:11-3); manslaughter (N.J.S.A. 2C:11-4); aggravated assault (N.J.S.A. 2C:12-1b); kidnapping (N.J.S.A. 2C:13-1); sexual assault (N.J.S.A. 2C:14-2a); aggravated criminal sexual contact (N.J.S.A. 2C:14-3b); robbery (N.J.S.A. 2C:15-1); burglary (N.J.S.A. 2C:18-2); and escape (N.J.S.A. 2C:29-5).

[2]

For decades, the mandatory minimum sentence had been fixed at 3 years without possibility of parole.  Last year, the minimum term of parole ineligibility was increased to 42 months, and the gradation of the underlying gun offense was elevated from a third-degree crime to a second-degree crime.  See P.L. 2013, c. 113 (amending N.J.S.A. 2C:43-6c and N.J.S.A. 2C:39-5).

crime is not eligible for PTI.  Because unlawful possession of a firearm is graded as a second-degree crime,[3] by law, PTI is available only if there are compelling and extraordinary reasons to justify diverting the case from ordinary prosecution.  See State v. Nwobu, 139 N.J. 236, 252-53 (1995).

The second option applies in cases where a defendant is convicted of the Graves Act offense, but the prosecutor files a motion pursuant to N.J.S.A. 2C:43-6.2 to reduce the stipulated 42-month State Prison sentence.  This statute serves as a safety valve to avoid imposition of an unjust sentence  Assuming that the defendant has not previously been convicted of a gun offense, the Assignment Judge may waive or reduce the stipulated sentence, but only when the prosecutor has filed a motion to authorize a reduced sentence.  In such instances, a defendant may be sentenced to one year imprisonment in some cases, or to non-custodial probation in others. Application of this statutory safety valve, in other words, depends on the exercise of reasoned prosecutorial discretion.

3.   Addressing Unusual Situations Outside the Heartland of the Graves Act

The prosecution policy set forth in this clarifying memorandum is based on a careful assessment of applicable statutes and actual prosecution practices across the State. On August 8, 2014, upon learning of a pending case that attracted public attention to the operation of the Graves Act, the Division of Criminal Justice instructed all County Prosecutors to refrain from taking any dispositive action or from sentencing any defendant in any case where a resident of another state brought into New Jersey a firearm that had been acquired lawfully and that could be carried lawfully by that visitor in the visitor's home jurisdiction.  The Division of Criminal Justice imposed this temporary hold to enable the Division to gather information about how these cases are handled across the State, and to assess the need for further guidance from the Attorney General to ensure appropriate statewide uniformity in the implementation of county prosecution policies and practices.

As noted above, beginning on August 8, the Division of Criminal Justice canvassed all 21 County Prosecutors' Offices to determine how they typically handle cases where an out-of-State visitor brings a lawfully-acquired firearm into New Jersey under circumstances where possession would have been lawful in their home state and where they honestly believed that such possession also was lawful in New Jersey. This survey confirmed that even though these cases are not common, nearly every County Prosecutor has handled at least a few such cases in recent years, and some offices routinely handle several such cases per year.  The survey showed that absent some case-specific aggravating circumstance, typically a defendant who commits such inadvertent offense is

---

[3]

The designation of an offense as a second-degree crime is critical not only to PTI eligibility, but also to a defendant's eligibility for a probationary sentence upon conviction.  In 2008, the statute that expanded the Graves Act to include "simple" possession of a firearm, see note 3, infra, also elevated the offense of unlawfully possessing a firearm to a second-degree crime.  See P.L. 2007, c. 341 (effective January 13, 2008).  Before that, these gun offenses were graded as third-degree crimes, meaning that these defendants upon conviction would have been entitled to a presumption of non-imprisonment if they had not previously been convicted of an offense.  See N.J.S.A. 2C:44-1e.

not sentenced to State Prison.   This practice reflects a recognition that in these unusual circumstances, a non-custodial probationary sentence typically is sufficient to achieve the deterrence and public safety goals of the Graves Act.  The survey also showed that some defendants are admitted to PTI, depending on the case-specific circumstances.

As a general matter, the Graves Act addresses gun possession crimes that pose a greater risk to public safety than the offenses committed by out-of-state visitors who do not realize that their authority to carry a weapon in their home state does not extend into New Jersey.  While ignorance of the law is not a defense, see N.J.S.A. 2C:2-4,[4] prosecutors certainly may consider whether a defendant made an honest mistake in determining the level of defendant's culpability for purposes of sentencing.  Because this situation falls outside the heartland of the Graves Act, and because the 2008 Directive did not address these unusual cases in detail, it is appropriate to provide further guidance to prosecutors to ensure that case outcomes are uniform, fair, and proportionate, considering the public safety and deterrent purposes undergirding the Graves Act.

4.    Scope

This clarifying memorandum applies only to Graves Act cases where the defendant is an out-of-state resident who produces proof that:  1) the firearm had been lawfully acquired in another jurisdiction, 2) defendant's possession would have been lawful in his or her home jurisdiction, and 3) defendant was under the misimpression that such possession was lawful in New Jersey.

Nothing in this memorandum affects or applies to any case where the prosecutor has reason to believe that the defendant had a purpose to use the firearm unlawfully in this State, or where defendant was committing or intended to commit any of the predicate crimes specifically listed in the Graves Act.  See note 3, supra.  This memorandum, in other words, applies only to cases involving the "simple" unlawful possession of a firearm, and not to cases that would have been subject to the Graves Act before the statute was expanded in 2008.  Nor does anything in this memorandum preclude a prosecutor from challenging or discounting a defendant's assertion that the gun possession offense was inadvertent.  Rather, the guidance to prosecutors provided in this memorandum presupposes that the three circumstances enumerated above are not disputed.

5.    Special Considerations in Reviewing Pretrial Intervention Applications.

Statutory and case law establish a general presumption against allowing any Graves Act defendant – or any person charged with any second-degree crime – to be admitted to the PTI

---

[4]

N.J.S.A. 2C:2-4c(3) provides, for example, that a mistake of law is a defense if the actor "diligently pursues all means available to ascertain the meaning and application of the offense to his conduct and honestly and in good faith concludes his conduct is not an offense in circumstances in which a law-abiding and prudent person would also so conclude."

program.  See State v. Nwobu, 139 N.J. 236, 252 (1995) ("That [defendant] is charged with a second-degree crime is the single most important factor involved.  To overcome the presumption against PTI, defendant must establish 'compelling reasons' for admission into PTI....  To forestall imprisonment a defendant must demonstrate something extraordinary or unusual...").

While the 2008 Directive generally calls for the "strict enforcement of the presumption of ineligibility for pre-trial intervention" that applies by law to a second-degree gun offense, see Sec. 5, it nonetheless makes clear that prosecutors are not permitted "categorically" to deny a defendant's PTI application.  Rather, prosecutors are required on a case-by-case basis to consider all of the relevant factors in the PTI Guidelines and in N.J.S.A. 2C:43-12 to determine whether compelling case-specific reasons overcome the presumption against admission.  See State v. Caliguiri, 158 N.J. 28 (1999).

Furthermore, the 2008 Directive expressly provides that a prosecutor may consent to PTI in "rare cases involving extraordinary and compelling circumstances that fall outside the heartland of the legislative policy to deter unauthorized gun possession." Sec. 5a. Notably, the 2008 Directive provides an example of such an extraordinary case: "the defendant has no prior involvement with the criminal justice system, he or she lawfully acquired and possessed the firearm in a different state and the defendant's presence in New Jersey was incident to lawful travel." Ibid. This specific example provided parenthetically in the 2008 Directive contemplated a situation where an out-of-state resident is traveling through New Jersey en route to another State via our interstate highway system. The 2008 Directive did not address other situations where an out-of-state visitor would be more likely to interact with non-motorists in this State while armed with an unlawfully-possessed firearm.

While the parenthetical example in the 2008 Directive confirms that PTI can be a legitimate prosecution option, the Directive provided only limited guidance on when the presumption against PTI might be overcome.  To provide further guidance to prosecutors in evaluating PTI applications on a case-by-case basis as required by law, it is appropriate to identify certain special facts and circumstances that prosecutors should consider in these unusual situations.

Accordingly, in exercising reasoned discretion, in addition to considering all applicable aggravating and mitigating factors that apply generally to Graves Act cases and to PTI determinations, prosecutors should when applicable and feasible[5] consider the following special facts that relate specifically to situations where a defendant applying for PTI  has established the three circumstances enumerated in Section 2 of this clarifying memorandum:

---

[5]

It should be noted that the defendant has the burden of presenting facts in support of his or her PTI application. Prosecutors generally will have no way of knowing, for example, about a defendant's travel itinerary and the extent to which others in this State might have been exposed to the unlawfully-possessed firearm.

a.    <u>Minimal Exposure of the Firearm to Persons in New Jersey</u>

**The manner and circumstances of the possession minimized the exposure of the firearm to others in this State, thereby reducing the risk of harm.** This mitigating fact accounts for the likelihood that persons in New Jersey would be exposed to the dangers posed by the presence of the unlawfully-possessed firearm by focusing on the weapon's accessibility while the defendant would be interacting with other persons while in this State.

This factor considers, for example, whether the firearm was kept in a vehicle at all times while the defendant would be in New Jersey, or whether the defendant carried, or planned or was likely to carry, the firearm on or about his or her person outside a vehicle.

This factor also accounts for the nature and circumstances of the defendant's travel into this State, and the period(s) of time during which the unlawfully-possessed firearm would present a risk to anyone in New Jersey. For example, traveling through New Jersey on an interstate highway with few if any stops presents less danger than a more protracted visit, or multiple visits, where it is likely that the defendant will be interacting with non-motorists in this State.

Under this factor, for example, an unlawfully-possessed firearm kept in a vehicle trunk would present less accessibility and thus less exposure to others than a firearm kept in the passenger cabin of a vehicle.

This factor also accounts for whether the firearm was loaded. An unloaded firearm presents a less immediate risk to persons with whom the defendant might interact.

b.    <u>The Gun-Possession Offense was Isolated and Aberrational</u>

**Defendant is otherwise a law-abiding person.** This clarifying memorandum addresses situations where a person has made an honest mistake in believing that possession of the weapon was lawful. <u>See</u> Section 2, <u>supra</u>. Consistent with that focus, this factor accounts for whether defendant was committing any other separate[6] offense at the time of the unlawful possession of the firearm. Note that it would be expected in these cases that the defendant would have committed some other violation that attracted law enforcement attention, such as a motor vehicle infraction,

---

[6] The prosecutor should consider whether any contemporaneous lesser offense was truly separate and distinct from the Graves Act offense conduct, and whether, upon conviction, the court likely would merge any such contemporaneous offense with the Graves Act offense, or impose concurrent sentences.

which led police to discover the unlawfully-possessed firearm. A prosecutor should consider the nature and severity of any other contemporaneous offense (*e.g.*, motor vehicle offense, ordinance violation, disorderly persons offense, or indictable crime[7]), and the risk that the separate offense posed to public or officer safety.

This factor also accounts for any other pending cases against the defendant, defendant's prior criminal and juvenile record, and his or her history of interaction with the juvenile or adult criminal justice systems.

c.   <u>Volunteering Presence of Firearm to Police</u>

**The defendant on his or her own initiative advised a police officer that a firearm is present.** While admitting to the presence of a firearm in response to a police question (*e.g.*, "is there anything in the car I should know about?") is a mitigating circumstance, *volunteering* information about the firearm to police without being prompted to do so is an especially important mitigating factor that tends to confirm that the defendant did not realize that possession of the firearm was unlawful. <u>See</u> note 3, <u>supra</u>.

In contrast, denying the presence of a weapon in response to a question is a significant *aggravating* circumstance, evincing a consciousness of guilt and contradicting defendant's assertion that he or she believed that possession of the weapon was lawful.

d.   <u>Surrendering Unloaded Firearm for Safe-Keeping</u>

**The defendant presented an unloaded firearm to a hotel clerk for safekeeping to prevent it from being stolen from defendant's vehicle during a hotel stay.** This recurring mitigating circumstance suggests a defendant's earnest attempt to minimize the risks associated with the presence of the firearm in this State.

e.   <u>Circumstances Concerning Confusion of New Jersey and Other-State Law</u>

**The defendant had not been advised of limitations on the right to possess or carry a firearm.** Prosecutors may, when feasible, consider the circumstances of defendant's familiarity with gun laws. <u>See</u> note 5, <u>supra</u> (noting that it is defendant's

---

[7]   It bears repeating that if the defendant while in unlawful possession of the firearm was committing or attempting to commit any of the predicate offenses listed in <u>N.J.S.A.</u> 2C:43-6c and reproduced in note 2, <u>supra</u>, this Memorandum *does not apply*. <u>See</u> Section 2, <u>supra</u>.

responsibility to provide information needed to overcome the presumption against PTI). While everyone is presumed to know the law, a claim of inadvertence should be viewed with greater skepticism if defendant was on *actual* notice that the weapons-carrying authority of his or her home state did not extend to other jurisdictions (*e.g.*, the defendant's out-of-state carry permit – or the application for such a permit – expressly advises that the authority to carry is limited to that jurisdiction).

There is no mathematical formula for evaluating the foregoing special circumstances in relation to the other aggravating and mitigating circumstances that prosecutors must consider in determining whether there are compelling reasons to justify a defendant's admission to PTI. It is not possible in this clarifying memorandum to anticipate every fact and circumstance that might be relevant. Nor is it possible to ascribe the precise weight that should be given to any particular circumstance militating for or against admission to PTI.

6.   Procedural Requirements for PTI Approval

The procedural requirements for approving a defendant's application for PTI set forth in Section 5(b), (c) of the 2008 Graves Act Directive (*i.e.*, County Prosecutor or DCJ Director personal approval; statement of reasons sent to Attorney General) are not affected by this clarifying memorandum, and remain in force and effect.

7.   Waiver of Imprisonment/Parole Ineligibility Term Pursuant to N.J.S.A. 2C:43-6.2

In cases where a defendant is not admitted to PTI, the prosecutor must decide whether to invoke the mandatory-minimum-sentence safety valve codified at N.J.S.A. 2C:43-6.2, and if so, whether to agree to a non-custodial sentence. As noted above, a survey of County Prosecutors confirms that the general practice in cases involving the situation described in Section 2, supra, is that these defendants are not sentenced to State Prison. That practice comports with governing statutory law. It is especially important to note that the Graves Act's waiver/reduction statute expressly authorizes a probationary sentence. This explicit authority to impose probation was not rescinded or restricted by P.L. 2007, c. 341 (which expanded the reach of the Graves Act), or by P.L. 2013, c. 113 (which increased the mandatory minimum term to 42 months and upgraded the underlying gun offense to a second-degree crime). See notes 1, 3, supra.

In a case where the prosecutor does not consent to PTI but elects to invoke the safety valve codified in N.J.S.A. 2C:43-6.2, there are only two sentencing options: the court either must impose a State Prison sentence with a 12-month term of parole ineligibility, or else impose probation. Because it was necessary for practical reasons to provide an incentive for guilty defendants to make a timely acceptance of responsibility, the 2008 Directive established a rebuttable presumption in typical illegal firearms possession cases that a prosecutor will agree to reduce the 36-month

minimum term then in effect (which has since been increased to 42 months by the recent legislation, discussed in note 1, supra) to 12 months of parole ineligibility. The one-year sentence is referred to in the 2008 Directive as the "standardized" plea offer. See Sec. 6(c)(4). The 2008 Directive includes provisions for both upward and downward departures from the presumptive one-year plea offer. As noted above, in certain circumstances, a prosecutor is authorized to agree to probation. In other specified circumstances, the 2008 Directive instructs a prosecutor to seek the *maximum* term of parole ineligibility under the Graves Act. For example, if the prosecutor determines that the organized crime aggravating factor set forth in N.J.S.A. 2C:44-1a(5) applies, the prosecutor is prohibited from invoking the statutory safety valve unless there is a significant possibility of an acquittal or suppression of critical evidence. See Sec. 6(c)(2).[8]

Although a probationary sentence is permitted by law, the 2008 Directive establishes a "strict presumption" against a prosecutor agreeing to probation. See Sec. 6(c)(3). However, in establishing this general presumption, Section 6 of the 2008 Directive did not address comprehensively the unusual circumstances described in Section 2 of this clarifying memorandum. From the standpoint of proportionality – and consistent with actual practice confirmed by the recent survey of County Prosecutors – it makes little sense to sentence an inadvertent offender to the same 12-month state prison term that is generally imposed on much more culpable gun offenders who currently benefit from the "standardized" one-year plea offer discussed above. It also should be noted that the 2008 Directive recognizes that in addition to considering the aggravating and mitigating circumstances set forth in N.J.S.A. 2C:44-1, "[t]he prosecuting agency may also take into account the likelihood of obtaining a conviction at trial." Sec. 6(c)(1). That provision recognizes that prosecutors may account for how juries will perceive an offense.

Accordingly, in cases described in Section 2 of this clarifying memorandum, except where the prosecutor approves a defendant's application for PTI pursuant to Section 3 supra, the prosecutor shall tender an initial plea offer that allows for probation unless the prosecutor determines that relevant aggravating factors outweigh applicable mitigating factors. In making this determination,

---

[8]

Another upward adjustment from the standardized one-year sentence is authorized by the Attorney General's Targeted Anti-Gun (TAG) strategy, which has been implemented in the course of the past year in Mercer and Essex Counties in an effort to stem the record number of gun-related crimes and homicides. Under this program, a prosecutor may designate a person charged with unlawful possession of a firearm as a "TAG" defendant based upon specified aggravating circumstances, including, for example, where there is a substantial likelihood that defendant is involved in organized criminal activity within the meaning of N.J.S.A. 2C:44-1(a)(5); where the defendant had brandished, displayed, pointed, discharged, or threatened to discharge the weapon while in a public place; or where the weapon was a defaced or stolen firearm. The TAG program features a "special plea policy" that provides that when a prosecutor applies the TAG designation to a defendant, "such designation shall [for purposes of the 2008 Graves Act Directive] constitute a finding by the prosecutor that the aggravating factors applicable to the offense conduct and offender, including the need to deter others from carrying a loaded firearm in public, outweigh mitigating circumstances." Pursuant to the 2008 Directive, that finding requires the prosecutor to seek imposition of the full term of parole ineligibility authorized by law.

in addition to considering all relevant aggravating and mitigating circumstances that apply generally to Graves Act offenses and offenders, the prosecutor should pay particular attention to the "special facts" described in Section 3, supra.

8.    Inconsistent Provisions

Any provisions of the 2008 Graves Act Directive inconsistent with this clarifying memorandum are hereby superseded to the extent of such inconsistency.

9.    Questions

Any questions concerning this clarifying memorandum shall be addressed to the Director of the Division of Criminal Justice, or his designee.  The Director may share questions and responses with other prosecutors to promote uniformity as appropriate.

10.    Effective Date and Retroactive Application

This clarifying memorandum takes effect immediately and shall remain in force and effect unless rescinded or revised by the Attorney General.  To the extent practicable, the provisions of this clarifying memorandum shall apply to all pending cases.

John J. Hoffman
Acting Attorney General

DATED: September 24, 2014