UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PULLMAN ARMS INC.; GUNS and GEAR, LLC; PAPER CITY FIREARMS, LLC; GRRR! GEAR, INC.; and NATIONAL SHOOTING SPORTS FOUNDATION, INC.,<br><br>          Plaintiffs,<br><br>     v.<br><br>MAURA HEALEY, ATTORNEY GENERAL FOR THE COMMONWEALTH OF MASSACHUSETTS,<br><br>         Defendant. | CIVIL ACTION NO. 4:16-cv-40136-TJH |

**REPLY MEMORANDUM OF ATTORNEY GENERAL MAURA HEALEY
IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

**(LEAVE TO FILE GRANTED MARCH 8, 2017)**

MAURA HEALEY
ATTORNEY GENERAL

William Porter, BBO #542207
Gary Klein, BBO #560769
Julia Kobick, BBO #680194
Thomas Bocian, BBO #678307
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, Massachusetts 02108
(617) 963-2976

Date: March 9, 2017

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

    I.     The Plaintiffs' State-Law Claims Are Barred by the Eleventh Amendment...........1

    II.    In Any Case, the Plaintiffs Have Failed to Demonstrate That the
            Enforcement Notice Misconstrues the State Assault Weapons Law. .....................4

    III.   The Plaintiffs' Vagueness Claim Should Be Dismissed........................................7

         A.     Plaintiffs may not bring a pre-enforcement challenge to the
                 Enforcement Notice "as applied" to selected firearms. .............................7

         B.     The Enforcement Notice is not impermissibly vague on its face. ...............8

    IV.   The Plaintiffs' Conditional Second Amendment Claim Is Not Justiciable. ..........12

CONCLUSION....................................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Actmedia, Inc. v. Stroh*, 830 F.2d 957 (9th Cir. 1986)..................................................2n

*Am. Freedom Def. Initiative v. Massachusetts Bay Transp. Auth.*,
    781 F.3d 571 (1st Cir. 2015) ...............................................................................11

*Center for Individual Freedom v. Madigan*,
    697 F.3d 464 (7th Cir. 2012) .................................................................................8

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)................................................................................................5

*Chester Upland Sch. Dist. v. Pennsylvania*,
    2012 WL 1079960 (E.D. Pa. Apr. 2, 2012) ...........................................................3

*Coates v. City of Cincinnati*, 402 U.S. 611 (1971) .......................................................10

*Draper v. Healey*, 827 F.3d 1 (1st Cir. 2016)........................................................8n, 10

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr.*
    *Trades Council*, 485 U.S. 568 (1988) .............................................................. 11-12

*Estate of Bennett v. Wainwright*, 548 F.3d 155 (1st Cir. 2008)......................................6

*Faruq v. Herndon*, 831 F. Supp. 1262 (D. Md. 1993) ...................................................3

*Florida Department of State v. Treasure Salvors, Inc.*,
    458 U.S. 670 (1982)................................................................................................2

*Forum for Academic and Institutional Rights, Inc. v. Rumsfeld*,
    291 F. Supp.2d 269 (D.N.J. 2003), *aff'd*,
    446 F.3d 1317 (3d Cir. 2006)...............................................................................10

*Franklin v. Albert*, 381 Mass. 611, 411 N.E.2d 458 (1980) ...........................................6

*Gun Owners' Action League, Inc. v. Swift*,
    284 F.3d 198 (1st Cir. 2002).................................................................................7

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .............................................11

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ..............................................9n, 11n

*Kines v. Day*, 754 F.2d 28 (1st Cir. 1985) ....................................................................8

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949)................................................................................2

*Libertarian Party of New Hampshire v. Gardner*,
    843 F.3d 20 (1st Cir. 2016)..................................................................9n

*Nachman Corp. v. Pension Benefit Guar. Corp.*,
    446 U.S. 359 (1980)............................................................................6n

*N.Y. State Rifle & Pisstol Ass'n, Inc. v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015), *cert. denied sub nom.*
    *Shew v. Malloy*, 136 S. Ct. 2486 (2016) ............................................7

*Parr v. Rosenthal*, 475 Mass. 368, 57 N.E.3d 947 (2016)............................5

*Pennhurst State School & Hosp. v. Halderman*,
    465 U.S. 89 (1984)......................................................................1, 2, 3

*Pharm. & Diagnostic Servs., Inc. v. Univ. of Utah*,
    801 F. Sup. 508 (D. Utah 1990)..........................................................3

*Smith v. Goguen*, 415 U.S. 566 (1974) ......................................................10

*United Pub. Workers of Am. (C.I.O.) v. Mitchell*,
    330 U.S. 75 (1947)..............................................................................8

*United States v. Bohai Trading Co., Inc.*,
    45 F.3d 577 (1st Cir. 1995)...............................................................4, 7

*United States v. Craft*, 535 U.S. 274 (2002) ................................................5

*United States v. Lam*, 677 F.3d 190 (4th Cir. 2012) ....................................10

*United States v. National Dairy Products Corp.*,
    372 U.S. 29 (1963)..............................................................................7

*United States v. Stauffer Chem. Co.*,
    684 F.2d 1174 (6th Cir. 1982) ............................................................5

*United States v. Williams*, 553 U.S. 285 (2008) .........................................10

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008)............................................................................12

*Zemel v. Rusk*, 381 U.S. 1 (1965) ...............................................................7

**Statutes**

G.L. c. 12 ............................................................................................................................2

G.L. c. 140, § 121 ..................................................................................................1, 2, 4, 5, 6

**Constitutional Provisions**

U.S. Const. Amend. I.............................................................................................................8

U.S. Const. Amend. II..........................................................................................................12

U.S. Const. Amend. XI ................................................................................................1, 2, 3

**Miscellaneous**

Senate Bill No. 1985, 180th General Court (1997) ..........................................................4, 6

## I.     The Plaintiffs' State-Law Claims Are Barred by the Eleventh Amendment.

Basing their argument only on legislative history, the plaintiffs claim that the Attorney General's interpretation of "copies or duplicates" in the Enforcement Notice is contrary to G.L. c. 140, § 121 (Section 121), which uses that phrase in defining "assault weapons" prohibited under state law. *See* Opposition to Defendant's Motion to Dismiss Amended Complaint, pp. 22-28 (hereafter "Opp. [page]") (Dkt. 27); and Amended Complaint ("Compl."), ¶¶ 79, 94 (Dkt. 15). They specifically contend that the Notice "expands" the definition of assault weapon in Section 121 and "violates" the state assault weapons ban.[1] The Attorney General emphatically rejects each of these assertions but urges, more fundamentally, that the Court dismiss these state-law claims as barred by the Eleventh Amendment. *See* Mem. of Attorney General in Support of Motion to Dismiss Amended Complaint, pp. 10-25 (hereafter "AG Mem. [page]") (Dkt. 23).

Under *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), the Eleventh Amendment prohibits lawsuits in federal court against state officials based on alleged violations of state law. Accordingly, the Court lacks jurisdiction over the plaintiffs' claim that the Notice violates Section 121. The plaintiffs mistakenly argue that, in issuing the Notice, the Attorney General has acted beyond her authority and, for that reason, assert that "these state law claims are not protected from federal jurisdiction under *Pennhurst*." Opp. 22. But the plaintiffs' claim that the Attorney General has acted beyond her authority in issuing the Notice also rests on state law. *See* Opp. 23-25 (arguing that the Attorney General violated the Mass. Constitution, state

---

[1]     *See*, *e.g.*, Opp. 7 (Notice "adopted an entirely new interpretation of the 'assault weapon' definition that is not in conformity with the statutory test, nor with the legislative history or intent); Opp. 6 (Notice "vastly expanded [the statutory] definition for 'assault weapon'"); Opp. 22 (Notice "violates" assault weapons ban). Based on these claims, the plaintiffs request a permanent injunction against enforcement of the "Notice and its definition of copy or duplicate of Enumerated Weapons." Opp. 25.

common law, and Mass. G.L. c. 12 by issuing the Notice). For that reason, the authority claim is equally barred under *Pennhurst*.[2]

The plaintiffs are wrong to assert that the Eleventh Amendment bar is inapplicable simply because they have alleged that the Attorney General acted beyond her authority. Opp. 26-28. *Pennhurst* itself rejected an argument by the dissenting Justices for application of an *ultra vires* exception to Eleventh Amendment immunity in that case. 465 U.S. at 106-17. The Court explained that, if an *ultra vires* exception exists, "it is a very narrow exception," *id.* at 114 n.25, that would apply only when a state official "acts 'without any authority whatever,'" meaning there is "no 'colorable basis for the exercise of authority by state officials.'" *Id.* at 101 n.11 (quoting *Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 697, 716 (1982)). "A claim of error in the exercise of [delegated] power is therefore not sufficient" to invoke this exception, even assuming such an exception exists. *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 703 (1949)).[3]

Here the plaintiffs claim, at most, error by the Attorney General in the exercise of a delegated power–the interpretation of Section 121, a law that she is charged with enforcing. *See*

---

[2]   Moreover, the plaintiffs' opposition demonstrates that their claim of lack of authority simply reiterates their claim that the Attorney General interpreted Section 121 too broadly in the Notice. *See* Opp. 23-24 (asserting that the Attorney General "does not have the authority to . . . rewrite a criminal statute to encompass markedly broader conduct than the Legislature adopted, or [that] the plain language of the statute supports"). Plaintiffs do not argue, nor could they, that the Attorney General lacks the fundamental prerogatives of a prosecutor to interpret the law she is charged with enforcing and to make that interpretation public where she believes it will encourage compliance.

[3]   The Court in *Pennhurst* specifically rejected the argument that a state's Eleventh Amendment immunity can be overcome whenever its officials purportedly act contrary to state law; such a view, the Court explained, "would virtually eliminate the constitutional doctrine of sovereign immunity." *Id.* at 114 n.25. *Cf. Actmedia, Inc. v. Stroh*, 830 F.2d 957, 964 (9th Cir. 1986) (rejecting plaintiff's argument that the Eleventh Amendment posed no bar to its state-law claims because the defendant official allegedly acted "in excess of his authority" under state statute).

Opp. 24 ("She has vastly expanded the scope of a criminal statute through the Enforcement Notice.").[4] The plaintiffs do not argue that the Attorney General had no "colorable basis" to exercise the core prosecutorial function of interpreting a criminal law, nor could they so argue. *See* AG Mem. 13-16. The plaintiffs' *ultra vires* argument cannot, therefore, rescue their state-law claims from dismissal for lack of jurisdiction. *See Chester Upland Sch. Dist. v. Pennsylvania*, 2012 WL 1079960, at *2 (E.D. Pa. Apr. 2, 2012) (Eleventh Amendment barred state-law claim even though plaintiff alleged that state officials "acted outside of the authority designated by state law"); *Faruq v. Herndon*, 831 F. Supp. 1262, 1283 (D. Md. 1993) ("The defendants . . . acted 'within the sphere of their official  responsibilities,' whether or not they interpreted those  responsibilities correctly, and accordingly are entitled to Eleventh Amendment immunity.") (quoting *Pennhurst*, 465 U.S. at 107); *Pharm. & Diagnostic Servs., Inc. v. Univ. of Utah*, 801 F. Supp. 508, 515 (D. Utah 1990) (purported *ultra vires* exception did not apply because there was "colorable basis" of authority even though state officials may "have misinterpreted the breadth of their authority").

If applied here, an *ultra vires* exception would "conflict[] directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst*, 465 U.S. at 106. These principles are most seriously threatened when a plaintiff seeks to compel state officials to answer in federal court to claims that they violated state law. *Id*. Not surprisingly, the First Circuit has never recognized an *ultra vires* exception to Eleventh Amendment immunity. Nor should this Court, especially where *Pennhurst* itself declined to do so.

---

[4]   The Opposition exaggerates the nature of her action by repeatedly referring to the Notice as a "regulation." The Enforcement Notice is not a regulation; it is an advisory that informs the public of the Attorney General's interpretation of the assault weapons statute. *See* AG Mem. 15.

## II.     In Any Case, the Plaintiffs Have Failed to Demonstrate That the Enforcement Notice Misconstrues the State Assault Weapons Law.

Strikingly, even though the plaintiffs continue to make the conclusory assertion that the Attorney General has "expanded" the scope of the statute (Opp. 24-25), they do not make any specific argument in their Opposition that the Enforcement Notice conflicts with either the plain language or the purpose of the state assault weapons ban. As the Attorney General has explained, her interpretation of "copies or duplicates" is consistent with the text and purpose of the statute. *See* AG Mem. 5-7, 17-22.

Instead, the plaintiffs base their argument that the Notice is inconsistent with Section 121 on a proposed legislative provision that was not adopted by the Legislature. Opp. 22-23. *See* Senate Bill No. 1985, 180th General Court (1997) (reproduced in Compl., Ex. F.) (hereafter "Senate No. 1985"). The argument should be rejected because the meaning of a law is expressed in its plain language, not in provisions that were proposed, but not enacted. *United States v. Bohai Trading Co., Inc.*, 45 F.3d 577, 581 (1st Cir. 1995) ("Congress speaks through duly enacted bills and resolutions" and does not "memorialize . . . its intent[] through unenacted non-statutory materials").

In 1998, an amendment to the proposed firearms legislation was filed in the Massachusetts Senate that, among other things, would have defined a "copy" of a banned "assault weapon."[5] The amendment was not adopted, and the Legislature instead enacted more general language from the 1994 federal law that banned enumerated weapons and their "copies or duplicates." *See* AG Mem.

---

[5]   The proposed amendment defined "copy" as any weapon model with a "bolt and receiver" (or "bolt and receiver design") that was the same as or "identical or nearly identical to" a "designated" banned weapon because the copy was "redesigned from, renamed, renumbered or patterned after any such designated weapon," provided that the weapon as modified used "only ammunition of more than .22 caliber rimfire." *See* Senate No. 1985.

4

5-6. The plaintiffs argue that, by *not* enacting the amendment, the Legislature "has spoken," and substantively rejected its content; and that the term "copies" in Section 121 cannot be construed to reflect any features of the proposed amendment. Opp. 22-23. The argument, however, runs counter to settled principles of statutory construction; the court should give no weight to the proposed amendment because there is no reliable way to know what might have motivated the Legislature not to adopt its provisions. *See United States v. Craft*, 535 U.S. 274, 286–88 (2002) ("several equally tenable inferences may be drawn from [Congressional] inaction, including the inference that the existing legislation already incorporated the offered change") (quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994)); *United States v. Stauffer Chem. Co.*, 684 F.2d 1174, 1184 (6th Cir. 1982) ("the language of rejected alternative legislation is not entitled to great weight in construing legislation that was finally passed, since the court has no way of knowing what motivated the legislature to take such action"); *Parr v. Rosenthal*, 475 Mass. 368, 381 n.14, 57 N.E.3d 947, 959 (2016) ("the practicalities of the legislative process furnish many reasons for the lack of success of a measure other than legislative dislike for the principle involved in the legislation") (citations and internal quotation omitted).

Indeed, legislators could have concluded that the rejected amendment was *too narrow*, and that the more general language that was ultimately adopted (without a potentially confining definition of "copy") provided necessary flexibility to law enforcement officials who would implement the new state law. Or there could have been any number of other reasons that the Legislature did not adopt the amendment; but it would be wrong to conclude that the law, as enacted, rejects in all respects the comparison of weapon components or designs in determining whether one weapon is a "copy" of another. *See, e.g., Craft*, 535 U.S. at 286–88 (attaching no significance to Senate's rejection of proposed amendment that would have authorized a particular

tax lien; statute's general language still held to authorize such liens); *Franklin v, Albert*, 381 Mass. 611, 615–17, 411 N.E.2d 458, 461–62 (1980) (legislature's failure to enact a proposed discovery rule for accrual of malpractice claims did not constitute "legislative disapproval of a discovery rule"). In sum, the Court should reject the plaintiffs' attack on the Notice based on legislative inaction on Senate No. 1985.[6]

The plaintiffs' opposition also asserts, without specification, that since 1998 Massachusetts law enforcement authorities "have universally interpreted G.L. c. 140 § 121 to mean that only firearms meeting the features test and the specifically enumerated firearms constituted banned assault weapons." Opp. 6; Compl., ¶ 39. The plaintiffs do not explain on what basis these authorities could ignore that the statute also expressly bans "copies or duplicates" of the enumerated weapons. The Court need not accept this "unsupported conclusion[]" in considering the sufficiency of the amended complaint. *Estate of Bennett v. Wainwright*, 548 F.3d 155, 162 (1st Cir. 2008) (citation omitted). But, more importantly, the alleged (but unsupported) law-enforcement interpretation is at odds with what plaintiffs admit in the Amended Complaint is the framework of the Massachusetts Assault Weapons Law: "In addition to the specific firearms *and copies or duplicate of those firearms*, the federal legislation also banned as an 'assault weapon' any semiautomatic rifle, pistol, or shotgun that failed what became known as the 'features' test.". Compl., ¶ 23. *See id.* ¶ 35, 36 ("assault weapon" has the same meaning in the state statute as in the federal statute). Thus, plaintiffs concur that by its plain language the Massachusetts law bans: (1)

---

[6]   The plaintiffs' position is not supported by their citation to the dissenting opinion in *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 392–393 (1980) (Stewart, J., dissenting). *See* Opp. 23. *Nachman* construed ERISA consistently with several definitional amendments that Congress had rejected prior to the law's passage. *Id.* at 369-84. Justice Stewart's dissenting view – that rejection of those amendments was probative of Congress's intent – was not embraced by the majority.

weapons with two or more defined, military style features, and (2) a set of enumerated weapons, and "copies or duplicates" of the enumerated weapons. *Id*.

### III.   The Plaintiffs' Vagueness Claim Should Be Dismissed.

#### A.   Plaintiffs may not bring a pre-enforcement challenge to the Enforcement Notice "as applied" to selected firearms.

In their opposition, the plaintiffs insist that they may bring an "as applied" vagueness challenge by alleging that "the Enforcement Notice language is confusing to apply to specific firearms formerly sold by the retailers." Opp. 2. They argue that, because they are "[u]ncertain whether the proposed sale of identified firearms violates the Enforcement Notice," the Court should "declare that the Attorney General cannot enforce the Notice against them as to these firearms." *Id*. at 13. *See* Compl., p. 23, ¶ 1. They say, incorrectly, that this is "a quintessential as-applied challenge." Opp. 13.

These arguments are misplaced. A party who "complain[s] about the threat of enforcement, but not any particular instances of enforcement" does not assert an as-applied claim. *Gun Owners' Action League, Inc. v. Swift*, 284 F.3d 198, 205 (1st Cir. 2002) (describing pre-enforcement vagueness claims as "facial challenges [that] raise special justiciability concerns"). An "as-applied" vagueness claim is typically raised as a defense to a civil or criminal enforcement action. "In determining the sufficiency of the notice a statute must of necessity be examined *in light of the conduct with which a defendant is charged*." *United States v. National Dairy Products Corp.*, 372 U.S. 29, 33 (1963) (citations omitted) (emphasis added). *Accord Bohai Trading Co., Inc.*, 45 F.3d at 580. Thus, a criminal defendant can bring an as-applied challenge, "grounded in the facts and context of a particular set of charges," "[s]hould such a prosecution ever occur." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 266 (2d Cir. 2015), *cert. denied sub nom. Shew v. Malloy*, 136 S. Ct. 2486 (2016). *See Zemel v. Rusk*, 381 U.S. 1, 20 (1965) ("gradations of fact or

charge would make a difference as to criminal liability," and so "adjudication of the reach and constitutionality of [the statute] must await a concrete fact situation").

This Court should not attempt to adjudicate whether the Assault Weapons law is impermissibly vague "as applied" to particular weapons, where no enforcement action for possession or transfer of those weapons is pending or threatened. *See Kines v. Day*, 754 F.2d 28, 30 (1st Cir. 1985) ("challenging a rule as applied often requires more specific allegations of harm than are necessary to test facial validity").[7] By pressing the question now the plaintiffs seek an improper advisory opinion. *See United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) ("As is well known the federal courts . . . do not render advisory opinions."). It would be premature for the court to undertake a weapon-by-weapon vagueness analysis, where none of the plaintiffs allege a specific, imminent risk of prosecution. *Cf. Center for Individual Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012) (where the plaintiff had not "actually engaged in a particular form of speech that is subject to regulation" it could not raise an as-applied First Amendment challenge).

### B.     The Enforcement Notice is not impermissibly vague on its face.

Even if the plaintiffs could demonstrate that a pre-enforcement facial challenge to the Notice is justiciable, *see* AG Mem. 26-30, their vagueness claim should nevertheless be dismissed

---

[7]   Indeed, as the plaintiffs acknowledge, the Attorney General has confirmed that some identified weapons are not prohibited "assault weapons" under the Enforcement Notice.  *See* Opp. 10-11 (listing .22 caliber rimfire semiautomatic rifles that are not prohibited.). And, for others, the Attorney General has made no specific determination. Opp. 12 (the Attorney General's Office "does not know whether the Enforcement Notice prohibits the IWI Tavor, one of the firearms Plaintiffs wants to sell").  In neither case could the plaintiffs demonstrate a basis for an "as applied" vagueness challenge. *Cf.  Draper v. Healey*, 827 F.3d 1, 4 (1st Cir. 2016) (as applied challenge allowed where Attorney General informed plaintiffs that specific Glock pistols violated handgun safety regulations).

for several reasons.[8]

First, the plaintiffs' facial challenge to the Enforcement Notice fails because they concede the viability of one of its two tests. In their opposition, the plaintiffs do not challenge the Interchangeability Test, one of the two alternative tests that the Attorney General has set forth as guidance for determining when a weapon is a "copy" of a banned enumerated weapon. *See* Compl. Ex. G., at 4. The plaintiffs effectively concede the utility of the Interchangeability Test as a means of identifying a copycat assault weapon. Indeed, the plaintiffs explain that their "facial challenge is that the Notice's similarity test" is vague because it allows different interpretations, producing different outcomes, "for firearms that are *not otherwise prohibited by the interchangeability test*. (Compl., ¶¶52–56)." Opp. 19 (emphasis added). *See also id.* at 20 (arguing that the Similarity Test has "no metric to determine whether firearms, *not otherwise "copies" under the interchangeability test*, are "copies" under the similarity test." (emphasis added).

Second, with respect to the test they do challenge, the Similarity Test, the plaintiffs' vagueness challenge rests on the erroneous premise that commonly understood statutory terms require statutory definitions. They contend that "the Notice does not adequately define the phrase 'operating system and firing mechanism of the weapon' are 'based on or otherwise substantially

---

[8]    "The Supreme Court has articulated two formulations of the standard for assessing facial challenges to statutes." *Libertarian Party of New Hampshire v. Gardner*, 843 F.3d 20, 24–25 (1st Cir. 2016) (citations omitted). *See* AG Mem. 30-31 (describing alternative formulations). In the present case, the plaintiffs cannot show, under either formulation, that the Enforcement Notice is vague on its face. *See* AG Mem. 30-34. The plaintiffs correctly note that the Supreme Court recently elected not to apply the more stringent of these formulations – which requires a plaintiff to prove that a challenged law is impermissibly vague in all of its applications – in a challenge to a criminal sentencing law; the Court struck down the law because of its structural vagueness even though valid applications could be conceived. *See* Opp. 19 (citing *Johnson v. United States*, 135 S. Ct. 2551, 2560-61 (2015)). The ruling does not suggest the converse, however, that a plaintiff could prove facial invalidity of a more straightforward law by identifying a few invalid applications.

similar to one of the Enumerated Weapons' . . . ." Opp. 8. Beyond that bare assertion, the plaintiffs nowhere explain why such straightforward, common-sense terms *need* further definition. "The mere absence of definitions does not necessarily render [a law] vague, particularly where, as here, the terms are subject to interpretation according to their commonly understood meaning." *Forum for Academic and Institutional Rights, Inc. v. Rumsfeld*, 291 F.Supp.2d 269, 318 (D.N.J. 2003), *aff'd*, 446 F.3d 1317 (3d Cir.2006). As explained in the motion to dismiss, federal courts have rejected numerous vagueness challenges to laws that require a determination that an item or substance is "substantially similar" to another item or substance, or that use other terms of similar import. *See* AG Mem. 33. *Cf. United States v. Lam*, 677 F.3d 190, 202 (4th Cir. 2012) (phrase "substantially indistinguishable" in statutory definition of a counterfeit trademark is not impermissibly vague).

Moreover, the plaintiffs' contention that a specified standard in the Notice ("substantially similar") should be explained in more detail does not suggest facial invalidity. A law is vague on its face when "no standard of conduct is specified at all," but not when the law "requires a person to conform his conduct to an imprecise but comprehensible normative standard." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). *Cf. Draper*, 827 F.3d at 4 (handgun safety regulations were not required "to provide something approaching a design specification"). It is the "absence of any ascertainable standard" that "offends the Due Process Clause." *Smith v. Goguen*, 415 U.S. 566, 578 (1974). Standardless provisions are vague because they call for "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *United States v. Williams*, 553 U.S. 285, 306 (2008).  None of this can be said about the Enforcement Notice, which is itself the Attorney General's effort to provide definition and "narrowing context" to the phrase

"copies or duplicates" in Section 121. *See* Compl. Ex. G. [9]

The plaintiffs also contend that the Similarity Test is impermissibly vague because the phrase "substantially similar" could be construed broadly to refer to any weapon that operates on the same basic "physics principles" as are employed in the Enumerated Weapons. Opp. 8-9, 19-21. But the Attorney General does not embrace that construction, which is contrary to the plain language of the Similarity Test. The test defines "similarity" based on whether a weapon's "internal functional components" – not its physics principles – "are substantially similar in construction and configuration to those of an Enumerated Weapon." Compl. Ex. G. *See* AG Mem. 32, 35. This hypothetical (and incorrect) construction of the Similarity Test does not establish that the Notice is vague its face. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 3 (2010) ("Plaintiffs' resort to hypothetical situations testing the limits of [the challenged provisions] is beside the point because this litigation does not concern such situations"). And the Court should be especially reluctant to consider plaintiffs' broad, imagined construction of the Notice where it invites, rather than avoids, constitutional invalidity. *See Am. Freedom Def. Initiative v. Massachusetts Bay Transp. Auth.*, 781 F.3d 571, 583–84 (1st Cir. 2015) ("[W]e are not bound to accept counsel's guess about how the agency would apply the guideline in hypothetical cases. [* * *] We thus decline to attribute such a constitutionally suspect interpretation of the regulation to the MBTA") (*citing Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades*

---

[9]   In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Court held that the "residual clause" of the Armed Career Criminal Act is vague on its face because it requires a court to assess the risk posed by a crime by reference to "a judicially imagined 'ordinary case'. . . rather than to real-world facts or statutory elements." *Id.* at 2557. That is the opposite of the Enforcement Notice, under which a gun dealer would apply specific tests to actual weapons. Indeed, the *Johnson* court emphasized that "we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct." *Id.* at 2561.

*Council*, 485 U.S. 568, 575 (1988)).

**IV.     The Plaintiffs' Conditional Second Amendment Claim Is Not Justiciable.**

The plaintiffs' opposition does not demonstrate that their purported Second Amendment claim is ripe. They contend that the claim is "not premised on possible future events, but rather on one possible legal interpretation this Court could reach." Opp. 30. But that interpretation of the Notice – which bases "similarity" of weapons on shared "physics principles" – was rejected by the Attorney General when plaintiffs proposed it in the Amended Complaint. *See* AG Mem. 32. As explained above, the Similarity Test looks at "internal functional components" and not "physics principles." *Supra*, at 11. The Court should not indulge the plaintiffs' flawed interpretation of the Notice in order to reach their purported Second Amendment claim. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) ("Exercising judicial restraint in a facial challenge frees the Court . . . from unnecessary pronouncement on constitutional issues") (citation and internal quotation omitted).

<u>**CONCLUSION**</u>

For the foregoing reasons, and for the reasons in the Attorney General's opening memorandum, the amended complaint should be dismissed.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

  /s/ William W. Porter
William W. Porter, BBO #542207
Julia E. Kobick, BBO #680194
Gary Klein, BBO #560769
Thomas Bocian, BBO #678307
Assistant Attorneys General
One Ashburton Place, 20th Floor
Boston, Massachusetts 02108
(617) 963-2976
Date: March 9, 2017                    bill.porter@state.ma.us

12

## CERTIFICATE OF SERVICE

I certify that this document filed through the CM/ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 9, 2017.

/s/ William W. Porter
William W. Porter
Assistant Attorney General

13