UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PULLMAN ARMS INC.; GUNS and GEAR, LLC; PAPER CITY FIREARMS, LLC; GRRR! GEAR, INC.; and NATIONAL SHOOTING SPORTS FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MAURA HEALEY, ATTORNEY GENERAL FOR THE COMMONWEALTH OF MASSACHUSETTS, <br><br> Defendant. | CIVIL ACTION NO. 4:16-cv-40136-TJH |

**SUPPLEMENTAL POST-ARGUMENT MEMORANDUM OF
ATTORNEY GENERAL MAURA HEALEY
IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

MAURA HEALEY
ATTORNEY GENERAL

William Porter, BBO #542207
Gary Klein, BBO #560769
Julia Kobick, BBO #680194
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, Massachusetts 02108
Date: April 18, 2017    (617) 963-2976

The Attorney General submits this supplemental memorandum in support of her Motion to Dismiss the Amended Complaint in order to respond to several issues raised at the hearing on the motion on April 7, 2017.

**I.     Under *Beckles v. United States*, the Attorney General's Enforcement Notice is Not Subject to a Vagueness Challenge under the Due Process Clause.**

In this case, the plaintiffs claim that the Attorney General violated due process by issuing a public advisory (entitled "Enforcement Notice") in July 2016, the purpose of which is "to provide a framework to gun sellers and others for understanding the definition of 'Assault weapon' contained in G.L. c. 140, § 121." *See* Amended Complaint ("Am. Compl."), ¶¶ 75, 90 (Dkt. 15); *id*., Ex. G (AG Enforcement Notice) at 1.[1] The Notice "provides guidance on the identification of weapons that are 'copies' or 'duplicates' of the enumerated Assault weapons that are banned under Massachusetts law." *Id.*  The guidance is applied prospectively to the Attorney General's enforcement of the assault weapons law. *Id*.

On March 6, 2017, the Supreme Court held in *Beckles v. United States*, 137 S. Ct. 886, 890 (2017), that federal sentencing guidelines "are not subject to vagueness challenges under the Due Process Clause." The Court explained that "advisory Guidelines [that] do not fix the permissible range of sentences" but "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range . . . are not subject to a vagueness challenge under the Due Process Clause." 137 S. Ct. at 892.  The notice required by due process "is provided by the applicable statutory range, which establishes the permissible bounds of the court's sentencing discretion." *Id*. at 894. The *Beckles* Court explained that "advisory Guidelines also do not implicate

---

[1] The plaintiffs describe this case as "an action for declaratory relief brought by the National Shooting Sports Foundation and four licensed firearm retailers asking this Court to declare that the July 20, 2016 Enforcement Notice issued by Massachusetts Attorney General Maura Healey to be unconstitutionally vague, invalid, and unenforceable." Am. Compl., page 1.

the vagueness doctrine's concern with arbitrary enforcement." *Id*. That concern may be implicated by "[l]aws that 'regulate persons or entities,'" and such laws "must be sufficiently clear 'that those enforcing the law do not act in an arbitrary or discriminatory way.'" *Id*., quoting *FCC* v. *Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). "The Guidelines, however, do not regulate the public by prohibiting any conduct or by 'establishing minimum and maximum penalties for [any] crime.'" *Id*. at 895, quoting *Mistretta v. United States*, 488 U.S. 361, 396 (1989). "Rather, the Guidelines advise sentencing courts how to exercise their discretion within the bounds established by Congress." *Id.* The Court held that, as such, the Guidelines do not raise concerns about "fair notice" or "arbitrary enforcement" that underlie vagueness challenges to laws and regulations.

The rule in *Beckles* readily extends to the present case. As in *Beckles*, the provision challenged here is not a law or regulation, but rather is a public advisory that explains how the Attorney General will interpret the assault weapons statute in considering future enforcement actions. *See* Am. Compl., Ex. G, at 1 (the guidance will be applied in the "enforcement of criminal laws such as G.L. c. 140, §§ 128 and 131M, and civil laws such as G.L. c. 93A"). The Enforcement Notice sets out two tests by which the Attorney General's office will evaluate whether a semiautomatic weapon is a prohibited "copy" or "duplicate" of an assault weapon listed as banned in G.L. c. 140, § 121. *Id*., Ex. G at 3-4 (setting out the Similarity Test and Interchangeability Test). These tests serve to guide the exercise of the Attorney General's enforcement discretion "within the bounds established by the [Legislature]" in the assault weapons statute. *Beckles*, 137 S. Ct. at 895.

Like the federal sentencing guidelines, the Enforcement Notice does not "regulate the public." *Id*. Such regulation is left to the statute. *See* G.L. c. 140, §§ 121, 131M (prohibiting

possession and transfer of assault weapons), § 123 (prohibiting sale of assault weapons by licensed gun dealers), § 128 (providing penalties for violations by gun dealers). As the Attorney General explained in her motion to dismiss:

> [T]he Enforcement Notice is not a regulation. It is an advisory that notifies the public of the Attorney General's interpretation of a criminal statute she is bound to enforce. To be sure, the Attorney General has separate authority to issue regulations under the state Consumer Protection Act, G.L. c. 93A, § 2(c), but she did not exercise that authority here. Instead, she simply announced to the public, in advance of any potential prosecution, how she construes a phrase in a criminal statute committed to her enforcement.

Mem. of Attorney General in Support of Motion to Dismiss Amended Complaint, pp. 16-17 (Dkt. 23). Although the Attorney General seeks to promote compliance with the statute, the Enforcement Notice is not itself a regulation that binds the public. *See* Am. Compl., Ex. A, at 3 ("By issuing the notice, the Attorney General hopes and expects that non-compliant gun dealers will come into voluntary compliance with the law.").

This case presents a clear parallel to *Beckles*, where provisions that guided judicial discretion, but were not themselves binding on the public, were held not subject to a vagueness challenge. Here, the plaintiffs have challenged public guidance that the Attorney General issued to explain the framework under which she intends to exercise her enforcement discretion. As in *Beckles*, the Attorney General's guidance does not implicate due process. This Court should accordingly dismiss the void-for-vagueness claim against the Enforcement Notice.

## II. Because the Enforcement Notice Provides Interpretive Guidance, It Promotes the Validity of the Assault Weapons Law as Against a Vagueness Claim.

Although *Beckles* insulates the Enforcement Notice from a vagueness claim, the Notice also militates against any claim that the Assault Weapons statute is impermissibly vague. "In evaluating a facial challenge to a state law, a federal court must . . . consider any limiting construction that a state court or enforcement agency has proffered." *Village of Hoffman Estates*

*v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982), citing *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Such proffers can be of dispositive importance. *See*, *e.g.*, *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 66–67 (1st Cir. 2011) (where state commission's interpretation of the challenged statute was "considerably more precise than the original," the law, as "so limited," was "not so vague as to offend due process").[2]

Most important for the present case, in *Kolbe v. Hogan*, 849 F.3d 114, 148-49 (4th Cir. 2017) (*en banc*), the Fourth Circuit embraced interpretive guidance from the Maryland Attorney General and Maryland State Police in rejecting a vagueness challenge to a statutory ban on "copies" of specified assault weapons—the very same provision challenged here.[3] The court held that because the guidance "explain[s] how to determine whether a particular firearm is a copy of an identified assault weapon, we cannot conclude that the term 'copies' in [the statute] is unconstitutionally vague." *Id*. at 149. Although the Maryland plaintiffs asserted—like the plaintiffs here—that a "typical gun owner" would not know how to apply the guidance (i.e. whether "the internal components of one firearm are interchangeable with those of another firearm"), the court explained that this "contention misapprehends the vagueness inquiry," which focuses on identification of "the applicable legal standard, not on the difficulty of ascertaining the relevant

---

[2] Indeed, the lack of enforcement guidance can support a vagueness claim. In *FCC* v. *Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2318 (2012), the fact that the Federal Communications Commission did *not* provide notice to broadcasters that "fleeting moments of indecency" would violate the statute was a basis for holding that the broadcasters lacked the notice required by due process.

[3] In fact, the Enforcement Notice takes an approach similar to that followed in Maryland. Under the Maryland Attorney General's opinion, "a copy of a designated assault weapon must be similar in its internal components and function to the designated weapon." *Kolbe*, 849 F.3d at 148. The Maryland State Police bulletin explained that a firearm that is cosmetically similar to an assault weapon identified in the statute is a copy only if it possesses "completely interchangeable internal components necessary for the full operation and function of any one of the specifically enumerated assault weapons." *Id*.

4

facts in close cases." *Id*., citing *United States v. Williams*, 553 U.S. 285, 306 (2008). Because the "legal standard for determining what qualifies as a copy of an identified assault weapon is sufficiently clear," the *en banc* court rejected the "plaintiffs' contention that the [Maryland] ban on copies of assault weapons is unconstitutionally vague." *Id*. The same conclusion follows here.

III.   **The Plaintiffs Lack Standing to Assert a Vagueness Claim Against the Enforcement Notice Because their Alleged Injury Will Not Be Redressed by Enjoining the Notice.**

As an alternative basis for dismissal, the plaintiffs lack standing to assert a vagueness claim against the Enforcement Notice because their requested remedy would not redress their alleged injury.[4]

Redressability—that is, "a likelihood that the requested relief will address the alleged injury," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)—is an essential component of Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). An alleged injury is only redressable when "a plaintiff 'personally would benefit in a tangible way from the court's intervention.'" *Steel Co.*, 523 U.S. at 104 n.5 (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975)). Because, as explained below, the plaintiffs would not benefit in any tangible way from an order invalidating the Enforcement Notice, they lack standing to advance the vagueness claim they assert. *See Steel Co.*, 523 U.S. at 109–10 (respondent lacked standing because "none of the relief sought by respondent would likely remedy its alleged injury in fact").

The plaintiffs complain that the Enforcement Notice is too vague to permit them to know what weapons are banned and how to conform their conduct to the law. They allege that they

---

[4] Although the Attorney General did not make this argument in support of her motion to dismiss, the Court raised the question of redressability at the hearing on April 7. As a jurisdictional issue, the plaintiffs' standing "cannot be waived or conceded." *SunCom Mobile & Data, Inc. v. FCC*, 87 F.3d 1386, 1388 n.3 (D.C. Cir. 1996). For that reason, the Court may consider the argument at this time.

confront a risk of prosecution if they sell certain weapons that might be banned and, as a result, have elected not to sell the weapons. *See* Am. Compl., ¶¶ 2, 52, 57, 76-83, 91-98. And they ask this Court to declare that the Notice is unconstitutionally vague and "enjoin" its enforcement. *Id*. at 23-24 (Requests for Relief, ¶¶ 1, 2, 5, 6).[5]

Even if the Court were to declare that the Notice is impermissibly vague and enter the requested injunction, the Attorney General could still prosecute gun dealers and others, to the full extent of the statute, for possessing or transferring banned assault weapons, including "copies or duplicates" of weapons enumerated in G.L. c. 140, § 121. That is, this Court could not enter relief that interferes with the internal judgments and prosecutorial decision-making of the Office of the Attorney General. *See United States v. Goodwin,* 457 U.S. 368, 380 n. 11 (1982) (prosecutor has "broad discretion" to "select the charges against an accused"); *Commonwealth v. Pellegrini*, 414 Mass. 402, 404 (1993) (Article 30 of the Massachusetts Declaration of Rights "creates a separation of power between the branches of government essentially granting the prosecutor exclusive power to decide whether to prosecute a case."). Moreover, the Attorney General, in her discretion, could withdraw the Notice but nevertheless prosecute on the basis of her interpretation of the definition of assault weapon in the statute. She has chosen not to do so, based on a sense that it is fairer to put the public clearly on notice of her interpretation in advance of applying it in a criminal or civil case.

---

[5] The Enforcement Notice is not "enforced" by the Attorney General; only the statute can be enforced. Accordingly, there is no basis for "a permanent injunction enjoining the Office of the Attorney General from enforcing the Enforcement Notice and its definition of copy or duplicate of Enumerated Weapons." *See* Am. Compl., Prayers for Relief, ¶¶ 5, 6. *Cf. Beckles*, 137 S. Ct. at 895 ("In this case . . . the District Court did not 'enforce' the career-offender Guideline against petitioner. It enforced 18 U. S. C. § 922(g)(1)'s prohibition on possession of a firearm by a felon—which prohibited petitioner's conduct—and § 924(e)(1)'s mandate of a sentence of 15 years to life imprisonment—which fixed the permissible range of petitioner's sentence.").

Thus, if relief were granted against the Enforcement Notice—effectively requiring that it be withdrawn from publication—the plaintiffs will confront the same alleged uncertainty they claim to face now, but they will not have the benefit of the Attorney General's interpretive guidance. Because their alleged injury will not be redressed by relief against the Enforcement Notice, they lack standing to sue.[6]

## CONCLUSION

For the foregoing reasons, and for the reasons in the Attorney General's opening and reply memoranda, the amended complaint should be dismissed.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

 /s/ William W. Porter
William W. Porter, BBO #542207
Julia E. Kobick, BBO #680194
Gary Klein, BBO #560769
Assistant Attorneys General
One Ashburton Place, 20th Floor
Boston, Massachusetts 02108
(617) 963-2976

April 18, 2017                                bill.porter@state.ma.us

## CERTIFICATE OF SERVICE

I certify that this document filed through the CM/ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 18, 2017.

/s/ William W. Porter
William W. Porter

---

[6] If what plaintiffs seek under the guise of a vagueness claim is a declaration that the Attorney General's interpretation of "copies and duplicates" is too broad and contrary to the statute, their claim is barred under the 11th Amendment, as explained in the Attorney General's prior memoranda.