UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PULLMAN ARMS INC. et al.<br>    Plaintiffs,<br><br>v.<br><br>MAURA HEALEY, ATTORNEY GENERAL<br>FOR THE COMMONWEALTH OF<br>MASSACHUSETTS<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.: 4:16-cv-40136-TJH |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Introduction

At the hearing conducted on April 7, 2017, the Court requested that the Plaintiffs provide authority that they can maintain a due process vagueness challenge to the Attorney General's Enforcement Notice.  In response to this inquiry, the Plaintiffs refer the Court to the Supreme Court's opinion in *F.C.C. v. Fox Television Studios*, 567 U.S. 239 (2012) which struck down on vagueness grounds an F.C.C. indecency policy implemented under a 2001 guidance and subsequent F.C.C. decisions concerning what obscenity standards would apply to broadcast media. This decision and other cases cited in this brief make clear that the Plaintiffs may bring due process vagueness challenges against notices or policies when those represent final agency rules.

The Attorney General asserts that the Enforcement Notice is not a law or regulation, but rather offers interpretive guidance of the Assault Weapons ban, and merely "provid[es] the public with notice of how she interprets a criminal law."  Memorandum of Maura Healey in Support of Motion to Dismiss Amended Complaint, p. 15. However, because the notice is a

material change in policy and has a binding effect on Plaintiffs' conduct, it should be treated as a final rule or agency action subjecting it to pre-enforcement vagueness review under both federal and state cases interpreting the scope of agency rulemaking action.

### A. Federal Courts May Consider Vagueness Challenges to Agency Guidance and Policies.

The Plaintiffs may maintain this due process challenge to the Enforcement Notice. According to the Supreme Court, a "fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.,* 567 U.S. 239, 132 S. Ct. 2307, 183 L. Ed. 2d 234 (2012). In *Fox Television*, the Supreme Court considered whether the F.C.C.'s prior orders and 2001 "Policy Statement" entitled "Guidance on the Commissions Case Law Interpreting 18 U.S.C. §1464 and Enforcement Policies Regarding Broadcast Indecency" provided adequate notice to the media on what would be considered indecency. Noting that the "requirement of clarity in regulation is essential to the protections afforded by the Due Process Clause of the Fifth Amendment, " the Court analyzed whether the policy statement and orders met this standard. 132 S.Ct. at 2317. Notably, the plaintiffs in *Fox* did not challenge a formal regulation nor did the Court apply the vagueness standard to the indecency statute itself. Instead, as the Plaintiffs request here, the Court considered whether the F.C.C.'s policy guidance and its prior orders provided adequate notice to the media. The Court ultimately found that the "Commissions' standards as applied to these broadcasts were vague" and set the enforcement orders aside. 132 S. Ct. at 2320.

The Supreme Court's application of vagueness principles to agency rulemaking is consistent with other federal court decisions. *See also*, *Action for Children's Television, v. FCC*, 852 F.2d 1332 (D.C. Cir. 1988). In *Action for Children's Television*, broadcasters sought review

of an FCC order issued after three rulings. 852 F.2d at 1334. The broadcasters claimed that the decision had the force of regulation because it announced a new test for "indecency," and challenged the decision as unconstitutionally vague on its face. *Id.* While the Circuit Court ultimately found that the order was not facially vague, the Court applied the vagueness doctrine to the order because the F.C.C. engaged in rulemaking with the force of regulation. 852 F.2d at 1337. It stated that "the FCC has left no doubt that it has stated a standard it expects to apply generally, not a prescription peculiarly fitted to the three individual broadcasts." 852 F.2d at 1337. It considered the challenge because "the [FCC] has employed the informal adjudication format to promulgate a rule of general applicability", and while the agency may choose how it proceeds, "the agency may not resort to adjudication as a means of insulating a generic standard from judicial review." 852 F.2d at 1337.

The Court should find the same here. The Enforcement Notice is generally applicable, and the Attorney General may not insulate that rule from judicial review through the use of informal enactment processes.

### B. The Enforcement Notice Amounts to a Final Rule and Meets the Legal Definition of a "Regulation."

The authority provided above answers the question posed by the Court, but in addition to these cases which apply due process principles to agency rulemaking, the Court should find that the Plaintiffs may proceed to challenge this notice because the Enforcement Notice constitutes a final, binding agency action such that it constitutes a regulation under state law.[1] While Plaintiffs have not challenged whether the Enforcement Notice complies with the requirements of the Massachusetts Administrative Procedures Act ("APA"), that statute is instructive in determining

---

[1] There can be no question that the Due Process Clause allows challenges to state regulations that fail to provide adequate notice to the public on what conduct is illegal or banned. *See e.g.*, *Draper v. Healey*, 98 F.Supp. 3d 77 (D. Mass. 2015).

3

whether or not the Enforcement Notice amounts to a regulation. The APA defines a "regulation" to include "the whole or any part of every rule, regulation, **standard or other requirement of general application and future effect**, including the amendment or repeal thereof, adopted by an agency to implement **or interpret the law enforced or administered by it**." M.G. L. c. 30A, §1(5) (emphasis added).

The Massachusetts Supreme Judicial Court has held that "[t]he language of the definition [of "Regulation"] reflects an intent that it be interpreted broadly." *Commonwealth v. Trumble*, 396 Mass. 81, 88 (1985) (*citation omitted*). As stated by the Supreme Judicial Court, "it is no use trying to frame an airtight definition of such pronouncements which would serve to distinguish them from regulations; on the other hand, it may be possible to point to factors of differentiation in light of the functions or purposes that are furthered by notice and hearing in the given context." *Mass. Gen. Hosp. v. Rate Setting Comm.*, 371 Mass. 705, 706 (1977). Such "factors of differentiation" that point to treating a "guidance" as a regulation include: (1) whether the guidance "inaugurate(s) a material change of policy"; (2) whether the guidance is "complex, or of broad or pervasive coverage"; (3) whether the guidance involves "difficulties of compliance"; and (4) whether it has "binding force." *Id.* at 707; *see also Trust Ins. Co. v. Comm. Auto.* Reinsurers, 46 Mass.App.Ct. 657, 661 (Mass. App. Ct. 1999) (finding that guidance was a regulation because it "involved the adoption and institution of new policies which substantially altered the rights and interests of regulated parties").

The Enforcement Notice meets this standard. The Enforcement Notice inaugurates a material change of policy, and purposefully so. The Attorney General does not dispute that, for 18 years, the firearms now potentially subject to the Enforcement Notice were sold, openly, after the transactions were reviewed and approved by the Commonwealth without repercussion,

within Massachusetts. It was this very policy that she was attempting to change when she promulgated the Enforcement Notice. She states:

> in 2015 alone, Massachusetts gun dealers sold more than 10,000 weapons that were nearly identical in design and function to banned enumerated weapons. . . .**To address this problem**, the Attorney General, acting in her capacity as chief law enforcement officer of the Commonwealth, issued an advisory, titled an Enforcement Notice, that clarified which weapons are 'copies or duplicates' of the banned enumerated weapons.

Memorandum of Attorney General Maura Healey in Support of Motion to Dismiss Amended Complaint at 1-2 (emphasis added). The Attorney General attempted to change policy to prevent the sale of popular firearms commonly sold in Massachusetts. This was not a minor change to policy: it was material, aimed at the sale of more than 10,000 firearms annually.

Second, the Enforcement Notice is complex and of broad and pervasive coverage. The complex (and confusing) nature of the Notice forms the heart of the Due Process challenge. To understand the scope of the tests described in the Enforcement Notice requires knowledge of engineering and internal firearms design. In addition, there can be little question that this Enforcement Notice applies broadly to all firearms retailers and all potential purchasers in Massachusetts.

Third, the Plaintiffs face difficulties complying with the Enforcement Notice. As described more fully in the Plaintiff's Opposition to the Motion to Dismiss, firearms retailers have not been able to determine whether various rifle models, including the modern bullpup IWI Tavor, the Kel-Tec RFB, and the FN PS90 are now prohibited or not. *See* Plaintiffs' Opposition to Defendant's Motion to Dismiss Amended Complaint at 7-12.

Fourth, the Enforcement Notice has had binding effect on affected parties. The Attorney General has been abundantly clear: the Enforcement Notice, not the text of the Assault Weapons

ban, will guide police and prosecutors enforcing the criminal penalties under the Assault Weapons ban. On its face, the Enforcement Notice is mandatory. It does not use conditional language, such as "may" or "could." Instead, it says that a firearm "**is** a Copy or Duplicate and **is therefore** a prohibited Assault weapon" if it meets one of the two tests. It states, "[t]his guidance **will be applied to future transfers of 'Assault weapons.'"** Exhibit A, emphasis added. Further, the Attorney General, in her public statements, has not indicated that this guidance is an optional "best practice"; in fact, she intends that it be binding. In an Op-Ed in the Boston Globe, the Attorney General wrote about closing a "loophole" in the assault weapons ban, and wrote:

> That will end now. On Wednesday, we are sending a directive to all gun manufacturers and dealers that makes clear that the sale of these copycat assault weapons is illegal in Massachusetts. . . . If Washington won't use its power to get these guns off our streets, we will. Not only do we have the legal authority to do so, we have a moral obligation to do so.

July 20, 2016 op-ed by Ms. Healey, Compl., Ex. K. The Attorney General does not intend for this Notice to be optional, and Plaintiffs have, in fact, stopped selling firearms in the face of this uncertainty.[2] Because the Enforcement Notice has binding effect, it is a regulation and subject to judicial review. See e.g. *Trust Ins. Co. v. Commissioner of Div. of Ins.*, 1997 WL 367061 at *4-5 (Mass. Super. Court, June 10, 1997) (holding that a "methodology" was actually a regulation because it "inaugurated a material change of policy.")

### C. Guidance Documents are Reviewable When They Reflect the Agency's Final Position and Impose Obligations That Are Binding as a Practical Matter.

Pre-enforcement judicial review of agency action such as this is also is appropriate in light of federal court decisions reviewing agency action under the federal APA. When, as here,

---

[2] The Assistant Attorney General stated during oral argument on April 7, 2017 that the Notice seems to be working, and there have been no enforcement actions.

the agency action is "final," the court will analyze the agency action to see if it meets the required standards under the APA. *See, Bennett v. Spear*, 520 U.S. 154, 177-78 (1996)(Court reviewed a biological opinion issued by the Fish and Wildlife Service); *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016).[3] The Supreme Court set out a two-step inquiry for assessing the finality of an agency's action: "[f]irst, the action must mark the consummation of the agency's decision making process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78 (internal quotation marks and citation omitted); *see also Hawkes*, 136 S. Ct. at 1813; *Conservation Law Foundation, Inc. v. Jackson*, 964 F.Supp.2d 152, 165-66 (D. Mass. 2013); *c.f. Rhode Island v. EPA*, 378 F.3d 19, 23 (1st Cir. 2004) (An agency action is "final" only where it "represents the culmination of the agency's decisionmaking process and conclusively determines the rights and obligations of the parties with respect to the matters at issue.")

Under *Bennett*'s "consummation" prong, a guidance document is no longer "tentative" or "interlocutory" when the document represents the agency's final articulation of its legal position. The possibility, which always exists, that an agency could modify its guidance at some point in the future is insufficient to render the guidance non-final. *See, e.g.*, *CropLife Am. v. EPA*, 329 F.3d 876, 881-82 (D.C. Cir. 2003).  Here, the Enforcement Notice is the "consummation" of the Attorney General's efforts to restrict firearms sales.  While the Attorney General's "Frequently Asked Questions" have gone through iterations to offer additional interpretative guidance of the Enforcement Notice, the Notice itself has not changed.  It is final and subject to judicial review.

---

[3] While the federal Administrative Procedures Act and the Massachusetts cognate do not have identical texts, Massachusetts courts often look to federal law for guidance in interpreting the Massachusetts APA. *Mass. Gen. Hosp. v. Rate Setting Comm.*, 371 Mass. 705 (1977).

*Bennett*'s second prong requires that a guidance document determine "legal rights or obligations," or have "legal consequences" to be considered final. 520 U.S. at 177-78. To have "legal consequences," a guidance document first must purport to "alter the legal regime" to which regulated parties are subject. *Bennett*, 520 U.S. at 178. Assuming a guidance document does purport to alter the legal regime, it will be binding "as a practical matter" when "affected private parties [1] are reasonably led to believe that [2] failure to conform will bring adverse consequences." *Gen. Elec.*, 290 F.3d at 383.

The Enforcement Notice has "legal consequences" under *Bennett* because the Plaintiffs face the risk of criminal penalties if they choose to disregard the guidance. The Supreme Court has held consistently that the possibility of punitive sanctions or the denial of some benefit can render agency guidance binding as a practical matter. *See, U.S. Army Corp. of Engineers v. Hawkes Co.*, ___ U.S. ___, 136 S. Ct. 1807, 1815 (2016) (plaintiffs who fail to conform to agency's jurisdictional determination "do so at the risk of significant criminal and civil penalties"). Here, the Plaintiffs risk legal consequences if they disregard the Enforcement Notice, as the Attorney General has repeatedly emphasized in her public statements. It is a final agency action and is subject to pre-enforcement judicial review.

**D. Public Policy Disfavors Unreviewable Rulemaking**.

Agencies increasingly have used guidance documents, such as advisories, methodologies, and notices, rather than formal rulemaking, to effect policy changes. Although so-called guidance documents like the Enforcement Notice may in some circumstances be non-binding legal clarifications, observers have long recognized that agencies use guidance documents to engage in "backdoor" lawmaking without public participation. *Non-Binding Legal Effect of*

*Agency Guidance Documents, Committee on Government Oversight and Reform*, H.R. Rep. No. 106-1009, at 1 (2000).

This D.C. Circuit summarized the problem as follows:

> The phenomenon we see in this case is familiar. Congress passes a broadly worded statute. The agency follows with regulations containing broad language, open-ended phrases, ambiguous standards and the like. Then as years pass, the agency issues circulars or guidance or memoranda, explaining, interpreting, defining and often expanding the commands in the regulations. . . . Law is made, without notice and comment, without public participation, and without publication in the Federal Register or the Code of Federal Regulations.

*Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020 (D.C. Cir. 2000).

It is a violation of public policy to subject Massachusetts citizens to criminal penalties, and then fail to provide them a means of challenging the unlawful regulation short of instigating a criminal prosecution. *See*, *e.g.*, *Frozen Food Exp. v. United States*, 351 U.S. 40, 44 (1956) (plaintiffs who disregard agency's guidance "run civil and criminal risks"). The Supreme Court has recognized that regulated parties should not be forced to bear the risk of costly enforcement proceedings in order to get a judicial determination whether an agency has acted lawfully. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 152-53 (1967). Yet, that is what the Attorney General argues here – that her rulemaking is immune from judicial review because it is not a "regulation" and has not yet been enforced. There should be no such loophole for agency action that so directly impacts Plaintiffs' lives and businesses.

The Supreme Court's decision in *Beckles v. United States*, ___ U.S. ___, 137 S.Ct. 886 (2017) does not alter this analysis or conclusion. The Court in *Beckles* found that the federal sentencing guidelines are not amenable to a vagueness challenge because they "merely guide the district court's discretion" and do not "implicate the twin concerns underlying the vagueness

doctrine – providing notice and preventing arbitrary enforcement." 137 S.Ct. at 894.  Unlike the Enforcement Notice, the sentencing guidelines are not binding - they now serve as advisory guides to judges.  *Id.*  "All of the notice required is provided by the applicable statutory range, which established the permissible bounds of the court's sentencing discretion." *Id.*

### E.  Alternatively, the Plaintiffs Should be Permitted to Amend the Complaint

If this Court finds that the Enforcement Notice, standing alone, does not constitute a regulation that may be challenged as vague under the Constitution, it should permit Plaintiffs, in the interest of justice, to amend their Complaint to challenge the Assault Weapons Ban *as interpreted by the Enforcement Notice*.  Such an amendment would not prejudice the Defendant, as they have not raised a challenge to this Complaint based on the lack of judicial review of administrative guidance that falls short of a law or regulation.

In addition, the Court may also elect to certify the question to the Supreme Judicial Court under S.J.C. Rule 1.03 concerning whether this Notice amounts to a regulation under state law.

PLAINTIFFS,
Pullman Arms Inc., Guns and Gear, LLC,
Paper City Firearms, LLC, Grrr! Gear, Inc.,
and National Shooting Sports Foundation, Inc.
By their attorneys,

/s/  David R. Kerrigan                                    /s/   Michael J. Sullivan
Christopher A. Kenney, Esq., BBO# 556511     Michael J. Sullivan, Esq.
cakenney@KandSlegal.com                            msullivan@ashcroftlawfirm.com
David R. Kerrigan, Esq., BBO# 550843           Ashcroft Law Firm
drkerrigan@KandSlegal.com                           200 State Street
Kenney & Sams, P.C.                                      7th Floor
Old City Hall                                                    Boston, MA 02109
45 School Street
Boston, MA 02108
(617)722-6045

DATED: April 18, 2017

## **CERTIFICATE OF SERVICE**

     I hereby certify, on behalf of Plaintiffs, that on <u>April 18, 2017</u>, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u>/s/ David R. Kerrigan</u>  
David R. Kerrigan
