**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                                            )
PULLMAN ARMS INC.; GUNS and                  )
GEAR, LLC; PAPER CITY FIREARMS,         )                    **CIVIL ACTION**
LLC; GRRR! GEAR, INC.; and                         )
NATIONAL SHOOTING SPORTS                    )                    **C.A. No. 16-CV-40136-TSH**
FOUNDATION, INC.,                                        )
                        **Plaintiffs,**                              )
                                                                            )
                                                                            )
                        **v.**                                             )
                                                                            )
                                                                            )
MAURA HEALEY, ATTORNEY                      )
GENERAL FOR THE                                       )
COMMONWEALTH OF                                  )
MASSACHUSETTS.                                        )
                                                                            )
                        **Defendant.**                          )
_____ )


**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**
**(Docket No. 22)**

**March 14, 2018**

**HILLMAN, D.J.**

**Introduction**

Plaintiffs Pullman Arms, Inc., Guns and Gear, LLC, Paper City Firearms, LLC, and

National Shooting Sports Foundation bring this action seeking a declaratory judgment that an

Enforcement Notice ("Notice") regarding assault weapons issued by Attorney General Maura

Healey on July 20, 2016 is unconstitutionally vague and unenforceable.  The Notice announces

the Attorney General's intention to prosecute those selling assault weapons in violation of the

Massachusetts Assault Weapon Ban, Mass. Gen. L. ch. 140, § 121, and outlines how she interprets

the definition of "assault weapon" under the statute.  The Massachusetts Assault Weapons Ban

was modeled after the federal Public Safety and Recreational Firearms Use Protection Act, 18 U.S.C. 921(a)(30), also referred to as the 1994 Federal Assault Weapons Ban.  Like the equivalent federal statute, the definition of "assault weapon" under the Massachusetts ban included, *inter alia*, 19 specific models of semiautomatic weapons ("Enumerated Weapons"); such as the AK-47, and "copies or duplicates of th[os]e weapons, of any caliber."  The phrase "copies or duplicates" is not defined under either the federal or state statute.

The Notice announces two tests that the Attorney General plans to use to establish whether a weapon is a "copy or duplicate" of one of the Enumerated Weapons: the "Similarity Test" and the "Interchangeability Test."  Under the Similarity Test, a weapon is considered a copy or duplicate of an Enumerated Weapon "if its internal functional components are ***substantially similar*** in construction and configuration to those of an Enumerated Weapon."  Notice, at 3 (emphasis added).  Plaintiffs assert that the term "substantially similar" is vague, and that they are unable to discern which weapons the Attorney General considers to be copies or duplicates of the Enumerated Weapons.  On August 18, 2016, the Attorney General issued a subsequent notice entitled "Guns That Are Not Assault Weapons," which set forth a list of guns that were exempted from the ban, including "any .22 caliber rifle."  Shortly thereafter, this subsequent notice was revised to clarify that semiautomatic rifles chambered for .22 caliber *rimfire* ammunition were exempted, and further added .17 caliber rimfire ammunition models and the Springfield Armory M1A to the list of weapons that are not "assault weapons".

Plaintiffs allege that when they called the Attorney General's Office to seek clarification regarding whether certain specific models were banned under the Attorney General's interpretation, they were told to "use their best judgment." As a result of the uncertainty caused by

the Notice, and a fear of prosecution, firearm retailers have ceased selling certain weapons that they previously sold.

The Attorney General has moved to dismiss on numerous grounds, including that the state law claims are barred by the Eleventh Amendment, that the Enforcement Notice is not vague, that the Second Amendment claims are not justiciable, and that the Enforcement Notice does not impose a substantial burden on the plaintiffs' Second Amendment rights.  After hearing, the Attorney General submitted a supplemental brief in support of her motion citing as additional grounds for dismissal that the Enforcement Notice is not susceptible to a vagueness challenge, and that the Plaintiffs lack standing.

## Discussion

*A. Susceptibility to vagueness challenge*

"[A] void-for-vagueness challenge must be directed to a statute or regulation that purports to define the lawfulness or unlawfulness of speech or conduct." *Nyeholt v. Secretary of Veterans Affairs*, 298 F.3d 1350 (CAFC Aug. 6, 2002).  The Attorney General asserts that her Notice is not susceptible to a constitutional vagueness challenge because it is neither statue nor regulation, but rather, "an advisory that notifies the public of the Attorney General's interpretation of a criminal statute…."  Dkt. #23 at 16.  In support, she cites to *Beckles v. United States*, ___ U.S. ___, 137 S.Ct. 886 (2017), for the proposition that mere "guidelines" do not raise concerns about "fair notice" or "arbitrary enforcement" that underlie vagueness challenges to laws and regulations.[1]

---

[1] The Attorney General also cites *Kolbe v. Hogan*, 849 F.3d 148 (4th Cir. 2017) (*en banc*), which addresses a vagueness challenge to the "copies or duplicates" provision in Maryland's Assault Weapons statute. However, in *Kolbe*, the vagueness challenge failed because the statute included cognizable guidance on interpreting the term. This is different from the instant challenge, in which Plaintiffs claim that the Attorney General has created vagueness *de novo* in her reinterpretation of the previously settled application of the Massachusetts statute.

In *Beckles*, a vagueness challenge to the U.S. Sentencing Guidelines was not allowed because the court held that the Sentencing Guidelines do not regulate the public. However, in the context of this case the Attorney General's enforcement notice essentially does just that, by creating a climate in which the Plaintiffs now must refrain from commercial activity (that the Attorney General has acknowledged has previously been generally accepted) or risk prosecution. The lack of clarity in the Sentencing Guidelines in *Beckles* created no hazard to citizens, but was rather intended to create a framework for the courts to work within. On the other hand, the Notice and subsequent publications, and statements by the Attorney General make it clear that the Plaintiffs will suffer consequences for participating in commercial activity that was common practice under the *status quo ante*.[2]

An agency's interpretation of the law is reviewable if it has the effect of regulation, regardless of whether it is called one. *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154 (1997). In *Bennett*, the Supreme Court established that quasi-regulatory action by an agency is a subject for judicial review when the agency's action is final. Specifically, such action is reviewable if it is, a) conclusive, not "tentative or interlocutory" and, b) that "obligations are determined …from which legal consequences flow." *Bennett*, 520 U.S. at 177-78. Interpreted in the light of the Attorney General's public statements, the Notice is a conclusive statement evidencing her intent to shift the definitional regime under which arms sales are to be regulated in Massachusetts. In fulfillment of the second prong, it is clear that the Attorney General intends that there will be legal consequences for those that engage in transferring the weapons in question. The Notice and associated publications are thus generally reviewable under *Bennett*.

---

[2] In her motion to dismiss, the Attorney General states that "in 2015 alone, Massachusetts gun dealers sold more than 10,000 weapons that were nearly identical in design and function to banned enumerated weapons."

*B.  Enforcement Notice is reviewable because it is regulatory in effect*

On the specific issue of whether a document purporting to be other than a regulation can be reviewed by this court, *F.C.C vs Fox Television Stations, Inc.*, 567 U.S. 239 (2012) is instructive.   In *Fox*, the Supreme Court allowed that a Guidance document could be reviewed for vagueness because the need for "clarity in regulation is essential to the protections afforded by the Due Process Clause of the Fifth Amendment." *Fox*, 567 U.S. at 253.  This Court cannot dismiss the Plaintiffs' challenge to the Notice because they have raised genuine questions as to whether it gives "fair notice of conduct that is forbidden" with respect to the sale of certain weapons enumerated in the complaint.


*C. Fourteenth Amendment*

The Fourteenth Amendment prohibits the states from depriving an individual of property without due process. The Plaintiffs argue that their property, as vested in the conduct of their business and as exercised under the associated licenses necessary to run those businesses, will be impermissibly infringed upon by the Attorney General's actions in promulgating the Notice.  They claim that they now refrain from exercising property rights that they previously held due to the climate of uncertainty created by the Attorney General.  The Plaintiffs point to the AG's initial notice which allowed that .22 caliber weapons were exempt from the definition of assault weapons.  The Plaintiffs (somewhat disingenuously) claim that they felt that this included .223 caliber weapons even though .223 clearly exceeds .22 (inches).   The Attorney General's office later clarified their meaning to specify that they intended to exempt weapons designed to accept .22

rimfire ammunition, but not those built for the semiautomatic delivery of the .223 round.  While this clarifies the meaning intended in the Notice, the Plaintiffs complain that the second version of the "Guns that Are Not Assault Weapons" then notified that weapons like the semiautomatic Springfield M1A were *outside* the Attorney General's definition of assault weapons. Plaintiffs argue that this casts doubt on the coherence of the Attorney General's position because the M1A is built to fire ammunition that is greater than .22 caliber, and by default has a 10-round capacity in direct violation of Mass. Gen. L. ch. 140.  This, together with the Plaintiffs' allegations that the Attorney General's office told them to "use their best judgment" and that they had not "taken a position" on a specific weapon, provides sufficient controversy to sustain this action. The Attorney General's Notice and subsequent failure to clarify arguably has resulted in a lack of fair notice of which conduct will be subject to criminal sanction.   It is in the interests of all parties that this be resolved in order to effectuate a clear and effective regulatory regime in which sanctionable conduct is properly prescribed.

A reading of the Notice in the context of the subsequent notices, and taking into account the Plaintiffs' unchallenged narratives of their attempts to clarify the Attorney General's intent, arguably lacks necessary clarity with respect to certain weapons, *at this stage of the proceedings*. The Plaintiffs had been able to sell these weapons, and the Attorney General's public statements highlight that the weapons have been widely sold in the Commonwealth without sanction, suggesting that the law was previously (prior to the notices in dispute here) settled on this matter. Plaintiffs complain that they now refrain from selling such weapons because such sales might be, but are not definitively, illegal.  On this basis, the Court finds that the Plaintiffs make out the elements of case sufficient to survive a motion to dismiss.

*D. Threat of enforcement is sufficient basis for challenge*

The Attorney General argues that, because she has yet to charge any of the Plaintiffs, there is no application of the law to challenge.  This matter is justiciable absent actual enforcement because there is a threat of enforcement, which serves as an adequate basis for a challenge to constitutionality.  *Medimmune v. Genentech*, 549 U.S. 118 (2007).   Precluding challenge at this stage opens the door to the problem noted in *Medimmune* where a plaintiff had to choose between taking an action that they believe to be legitimate but which would expose them to liability.  That threat is sufficient to sustain the Court's review.

*E. There is a sufficient "as applied" challenge to sustain the suit*

In *Doe v. Reed*, 561 U.S. 186, 194 (2010), the Supreme Court distinguished "facial" challenges that generally seek to set aside a law or regulation and "as applied" challenges, where the relief is sought against a specific instance of the law's application to the particular circumstance of the plaintiffs. The Court agrees that a facial challenge to the Notice would be inappropriate for the reasons the Attorney General outlines.  There are many aspects of the Notice that clearly set out the Attorney General's interpretation and intent with respect to the statute.  However, this Court disagrees that there is no "as applied" challenge here.  For the reasons discussed above with respect to the vagueness issues created by the Attorney General's actions surrounding future enforcement activity, this Court recognizes an "as applied" challenge that withstands dismissal at this stage of the litigation.

*F. Standing*

The Attorney General asserts that the Plaintiffs lack standing to bring this action because their injuries cannot be redressed by this Court.  The burden of establishing standing rests with the party invoking federal jurisdiction.  *Bennett v. Spears*, 520 U.S. 154, 167-168 (1997).  There are "three fundamental requisites of standing that every litigant invoking the jurisdiction of the federal courts must possess:  (1) injury-in-fact - an invasion of a legally-protected interest that is both concrete and particularized, and actual or imminent; (2) causation; and (3) redressability. . . ." *Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 104 (1st Cir. 1995).  "[I]t must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

The Attorney General argues that any order requiring her to take down her Notice does not preclude her from prosecuting the Plaintiffs for selling "copies or duplicates" of the Enumerated Weapons in violation of the statute.  The Court disagrees.  There are a range of potential remedies that would mitigate the harm caused by a lack of clarity in the Attorney General's communication on this matter.  Without prejudice to the Court's future decisions in this matter, it suffices to say that the Court could order the Attorney General's office to clarify whether or not specific weapons are, in their opinion, within or outside the scope of the statutory ban, or alternately, without curtailing the Attorney General from the legitimate enforcement of the statute, simply enjoin her from using the specific notices to which the Plaintiffs object to argue (in future prosecutions) that plaintiffs were on notice that certain types of sales were considered illegal.

*G. Eleventh Amendment*

The Attorney General argues that this suit is barred under the doctrine enunciated in *Penthurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), which established that the Eleventh Amendment prohibition on suits against states extends to suits in United States courts that seek to review the actions of state officials acting in their official capacity.   The Plaintiffs argue that the Attorney General has exceeded her authority by effectively extending the meaning of a law beyond the letter of the statute and the intent of the legislature.   It is their position that the Attorney General is either attempting to abridge their property rights by changing the law with respect to assault weapons *ex cathedra*, or alternately, that she has abridged the same property rights by accidentally or deliberately clouding the question of the extent of the Massachusetts assault weapon ban to achieve the same end.   At this stage, the Court finds that the Complaint is sufficient to establish a plausible claim that the Attorney General's actions have deprived the Plaintiffs of property without due process.

*H. Second Amendment*

The Plaintiffs make a somewhat gratuitous argument that the Enforcement Notice unconstitutionally burdens the Second Amendment. A major portion of this argument is premised on an alternate interpretation of what the Attorney General intends under the "similarity" test articulated in the Notice.   Plaintiffs first articulate the obvious meaning, which they label similarity on the basis of "commonality of design details," but then go on to raise the specter of an alternate meaning which they label "commonality in physics principles."   In raising the "physics principles"

argument, they unnecessarily generate hypothetical inroads into the Second Amendment rights of Massachusetts citizens in a manner that strays into the speculation and premature interpretation that *Washington State Grange* warns against. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008). However, the Attorney General disavows the "physics principles" interpretations explicitly, helping to make it abundantly clear that the portion of this case that survives the motion to dismiss is limited to the question of whether or not the firearms enumerated by the plaintiffs do or do not fall within the scope of the Attorney General's intent with respect the definition of banned assault weapons.

### Conclusion

For the reasons set forth above, Defendant's motion to dismiss (Docket No. 22) is ***denied.***

**SO ORDERED.**


*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**