UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PULLMAN ARMS INC.; GUNS and GEAR, LLC; PAPER CITY FIREARMS, LLC; GRRR! GEAR, INC.; and NATIONAL SHOOTING SPORTS FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MAURA HEALEY, ATTORNEY GENERAL FOR THE COMMONWEALTH OF MASSACHUSETTS, <br><br> Defendant. | CIVIL ACTION NO. 4:16-cv-40136-TJH |

**DEFENDANT'S MOTION TO STAY
UNDER *COLORADO RIVER* ABSTENTION**

The defendant, Attorney General Maura Healey, moves to stay this case under the abstention doctrine articulated by the Supreme Court in *Colorado River Water Conservation District v. United States*. In August 2018, counsel for the plaintiffs in this case filed another lawsuit in Massachusetts state court that likewise challenges the Attorney General's Enforcement Notice on Prohibited Assault Weapons. As in this case, the plaintiffs in this new state court case, *Baystate Firearms v. Healey*, contend that the Enforcement Notice is not a prosecutor's advisory to the public, but rather is a regulation that should have been issued pursuant to the rulemaking process set forth in G.L. c. 30A. Because the Massachusetts court's resolution of that state-law issue will likely be dispositive of *both* of the federal constitutional claims remaining in this case, and because of the unusually strong state interests at stake in this case, this Court should stay this matter pending the Massachusetts court's final resolution of the state-law claim asserted in *Baystate Firearms*.

1

## BACKGROUND

In July 2016, in response to widespread evasion of the Commonwealth's Assault Weapons Ban and the surging number of mass shootings with assault weapons nationwide, Attorney General Healey informed the public of her plan to enforce the state's Assault Weapons Ban, which prohibits the possession and sale of "copies or duplicates" of certain enumerated weapons. *See* G.L. c. 140, §§ 121 and 131M; Amended Compl. Exs. J, K, L (ECF Doc. Nos. 15-10 to 15-12). She issued a public Enforcement Notice, applicable prospectively, that "provides guidance on the identification of weapons that are 'copies' or 'duplicates' of the enumerated Assault weapons that are banned under Massachusetts law." *See* Amended Compl. Ex. G (ECF Doc. No. 15-7).

**I.  District Court Proceedings in *Pullman Arms v. Healey*.**

The plaintiffs filed this action in September 2016 to challenge the Enforcement Notice. *See* ECF Doc. Nos. 1, 15. The Attorney General moved to dismiss the amended complaint in January 2017. *See* ECF Doc. No. 22. In April 2018, this Court denied the motion, but agreed with the Attorney General that two of the plaintiffs' claims must be dismissed. *See Pullman Arms, Inc. v. Healey*, 301 F. Supp. 3d 227 (D. Mass. 2018). Specifically, this Court "agree[d] that a facial challenge to the Notice would be inappropriate for the reasons the Attorney General outline[d]" in her motion. *Id.* at 232. And this Court rejected the plaintiffs' "somewhat gratuitous argument that the Enforcement Notice unconstitutionally burdens the Second Amendment." *Id.* at 233; *see also* Br. for Plaintiffs-Appellees in *Pullman Arms v. Healey*, at 13 n. 7 (1st Cir. No. 18-1331) ("The Complaint also raised a Second Amendment claim, which was dismissed.").

In denying the Attorney General's motion to dismiss, however, this Court ruled that the plaintiffs could pursue a claim alleging that the Enforcement Notice is unconstitutionally vague as applied to certain weapons specified in the amended complaint—IWI Tavor rifles, FN PS90 rifles,

Kel-Tec RFB rifles, .22 caliber rimfire AR-15 style rifles (including Smith & Wesson M&P 15-22 rifles), and Springfield Armory M1A rifles. *Id.* at 232-34. This Court emphasized that "the portion of this case that survives the motion to dismiss is limited to the question of whether or not the firearms enumerated by the plaintiffs do or do not fall within the scope of the Attorney General's intent with respect the definition of banned assault weapons." *Id.* at 233-34. In recognizing that as-applied vagueness claim, the Court rejected the Attorney General's argument that, under the principles set forth in *Beckles v. United States*, 137 S. Ct. 886 (2017), an as-applied vagueness claim was not subject to review, concluding instead that the "Enforcement Notice is reviewable because it is regulatory in effect." *Id.* at 231.

This Court also held that the amended complaint stated a claim that the Enforcement Notice "deprived the Plaintiffs of property without due process" of law. *Id.* at 233. Because the amended complaint had not denominated a count for violation of procedural due process, the plaintiffs later clarified that a procedural due process claim was asserted in paragraphs 5-8, 39-41, and 68-72 of their amended complaint. *See* Br. for Plaintiffs-Appellees in *Pullman Arms v. Healey*, at 13 (1st Cir. No. 18-1331) ("The Complaint also states allegations sufficient to claim violation of the … Fourteenth Amendment due process rights arising from the Enforcement Notice's deprivation of Plaintiffs-Appellees' property interest in their licensure to sell the firearms. (Am. Compl., ¶¶ 5-8, A. 2-3; ¶¶ 39-41, A. 24-38; ¶¶ 68-72, A. 23.)"). After identifying a procedural due process claim in the amended complaint, this Court declined to dismiss separate state law claims, asserted in paragraphs 79 and 94 of the amended complaint, as barred by the Eleventh Amendment. *See Pullman Arms*, 301 F. Supp. 3d at 233. Those claims alleged that the "Enforcement Notices exceeds the Attorney General's statutory authority" under Massachusetts law. Amended Compl. (ECF Doc. No. 15) ¶¶ 79, 94.

**II.** **District Court Proceedings in *Worman v. Healey*.**

While the *Pullman Arms* case was pending before this Court, another group of gun owners and gun dealers filed a lawsuit against the Attorney General and other state officials to challenge the Assault Weapons Ban and the Enforcement Notice. *See Worman v. Healey*, 293 F. Supp. 3d 251 (D. Mass. 2018). Their complaint raised a Second Amendment challenge to the Assault Weapons Ban, a vagueness challenge to the phrase "copies or duplicates" in the Assault Weapons Ban, and a due process challenge to the Enforcement Notice. *Id.* at 259-60.

After a period of discovery, the parties cross-moved for summary judgment. *Id.* at 257. The District Court (Young, J.) granted judgment to the state defendants on the Second Amendment and vagueness claims and dismissed the due process challenge to the Enforcement Notice as unripe. *Id.* at 259-72. On the first claim, the court determined that assault weapons and large-capacity magazines are not protected by the Second Amendment. *Id.* at 264-67. On the third claim, the court ruled that the "plain meaning" of the phrase "copies or duplicates" in the Assault Weapons Ban "provides a person of ordinary intelligence fair notice as to what is prohibited under the Act." *Id.* at 269. That phrase, the court explained, "plainly refers to exact replicas of the enumerated firearms as well as firearms that may not be identical to the enumerated firearms but are nevertheless 'imitations.'" *Id.*

With respect to the second claim—the due process challenge to the Enforcement Notice— the court explained that the Enforcement Notice is "a prosecutor's advisory to the public of her interpretation of a criminal law committed to her enforcement." *Id.* at 261 (internal quotation marks omitted). "The mere existence of the Enforcement Notice, which was not directed at any particular individual or entity and contemplates that it may be 'alter[ed] or amend[ed],'" the court explained, "does not bring about a change in rights or obligations." *Id.* at 261-62. Thus, the court disagreed

with this Court's ruling in *Pullman Arms* "that the Enforcement Notice itself has the effect of a regulation and is reviewable." *Id.* at 261 n. 5. To conclude that the Enforcement Notice affects rights and obligations like a final agency action, the *Worman* Court explained, "would be to exalt form over substance and discourage a desirable practice: If any comment on a law's interpretation by the Attorney General could be considered to have binding effect just because citizens may accord it considerable weight, the Attorney General would forever remain silent, providing citizens with *less* notice and creating a higher risk that their rights to due process may someday be violated." *Id.* at 261 (emphasis in original). The Court thus ruled that the *Worman* plaintiffs' due process challenge to the Enforcement Notice was not ripe for adjudication. *Id.* at 259-63.

### III.   Appeals in *Pullman Arms* and *Worman*.

In *Pullman Arms*, the Attorney General took an interlocutory appeal of only the denial of her motion to dismiss the plaintiffs' state law claims, asserted in paragraphs 79 and 94 of the amended complaint, on the basis of Eleventh Amendment immunity. After briefing, and during oral argument in the First Circuit, counsel for the plaintiffs stipulated to dismissal of the state law claims asserted in the amended complaint, stating that the plaintiffs "could not, in when we go back and actually litigate this in district court, prevail on a theory that here's the law, here's the notice, it redefines the law, it exceeds her authority." In view of that stipulation, counsel for the Attorney General agreed that the appeal could be dismissed. The First Circuit accordingly dismissed the appeal "[b]ased upon the representation of the plaintiffs-appellees, made in open court, that they are not pursuing any state-law claims in the underlying action." Judgment, *Pullman Arms v. Healey*, First Cir. No. 18-1331. Two federal claims thus remain in the *Pullman Arms* case on remand: (1) a claim challenging the Enforcement Notice as vague as applied to the five weapons identified in the amended complaint, and (2) a procedural due process claim.

In *Worman*, the plaintiffs appealed only the judgment in favor of the state defendants on their Second Amendment challenge to the Assault Weapons Ban. They did not appeal the entry of judgment for the Commonwealth on the vagueness claim or the dismissal of the due process challenge to the Enforcement Notice as unripe. *See* Br. of Plaintiffs-Appellants in *Worman v. Healey*, at 3 n. 1 (1st Cir. No. 18-1545). Thus, they did not contest the District Court's characterization of the Enforcement Notice as a prosecutorial advisory rather than a regulation. The First Circuit heard argument on the *Worman* appeal on January 9, 2019.

**IV.**     *Baystate Firearms v. Healey* **Lawsuit in State Court.**

In August 2018, while the First Circuit appeals were pending in *Pullman Arms* and *Worman*, the lawyers representing the plaintiffs in this case filed another lawsuit against the Attorney General, this time on behalf of Baystate Firearms and Training, LLC and Downrange Inc., two different gun dealers. *See* Exhibit A (Petition for Declaratory Relief). Originally filed in the Supreme Judicial Court for Suffolk County, this lawsuit asserts a Declaratory Judgment Act claim under G.L. c. 231A. *See id.* ¶¶ 45-53. The claim alleges that the Enforcement Notice is not a prosecutor's advisory of her interpretation of a criminal law, but rather is a regulation that should have been issued under the administrative rulemaking process set forth in G.L. c. 30A. *See id.* After the Attorney General filed an answer, the Single Justice requested supplemental briefing on whether the claim is "ripe for review" and "whether the enforcement notice identified in the plaintiff's complaint should be subject to pre-enforcement judicial review." *See* Exhibit B. The Single Justice thereafter transferred the case to the Massachusetts Superior Court in accordance with G.L. c. 211, § 4A. *See* Exhibit C. The case is now pending in Suffolk Superior Court, No. 1984CV00004.

**ARGUMENT**

The common thread running through the *Pullman Arms* and *Worman* cases, as well as the new *Baystate Firearms* case, is a question of state law—namely, is the Enforcement Notice a prosecutor's advisory of her interpretation of criminal law committed to her enforcement, or is it a regulation? That question is now squarely before the state court in *Baystate Firearms*, where the plaintiffs seek a declaration that "[t]he Enforcement Notice constitutes a regulation under state law" that must be invalidated under G.L. c. 30A. *See* Exhibit A, ¶ 2. The Massachusetts court's resolution of that question will, of course, be binding on federal courts. In these circumstances, involving parallel state and federal litigation, the *Colorado River* doctrine permits federal courts to stay their hand when exceptional circumstances warrant abstention. This case meets that high standard, because both remaining federal claims are intertwined with an issue of state law that will likely be dispositive of the federal claims and that implicates unusually strong state interests.

In *Colorado River Water Conservation District v. United States*, the Supreme Court recognized that "the pendency of a similar action in state court may merit federal abstention based on 'considerations of wise judicial administration' that counsel against duplicative lawsuits." *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Federal abstention under the *Colorado River* doctrine is appropriate in cases that involve "exceptional circumstances or implicate broad policy considerations." *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 11 (1st Cir. 2003).

The First Circuit has developed a "non-exclusive list of factors" that bear on whether a federal court should abstain under *Colorado River* pending the outcome of parallel state court proceedings. *Jimenez*, 597 F.3d at 27. Those factors include:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (6) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Id.* at 27-28. This "is not an exhaustive list, nor is it a litmus test for *Colorado River* deference, which must remain a discretionary tool." *Currie v. Group Ins. Comm'n*, 290 F.3d 1, 10 (1st Cir. 2002). The decision whether to abstain "'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case.'" *Jimenez*, 597 F.3d at 28 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

While several of the factors are neutral in this case, the third and fifth factors—"the desirability of avoiding piecemeal litigation," and "whether state or federal law controls"—counsel strongly in favor of abstention. Indeed, this case bears striking similarity to *Currie v. Group Insurance Commission*, a case in which the First Circuit abstained and granted a stay under *Colorado River* based in large part on the strength of the same factors. *Currie* involved two federal constitutional claims that were "intertwined" with the issue of state law that was "currently pending before the state courts." *Currie*, 290 F.3d at 10. Importantly, the state court's resolution of the issue of state law might have mooted the federal claims. *Id.* at 9.

The same circumstances are present in this case. Regardless of how the state court rules in *Baystate Firearms*, the disposition of the remaining claims in *Pullman Arms* will be greatly simplified. If, in *Baystate Firearms*, the Massachusetts court rules that the Enforcement Notice is a prosecutor's advisory of her interpretation of a criminal law—not a regulation—both of the federal constitutional claims in this case would likely fail as a matter of law. Specifically, the Attorney General would renew her argument that, under the Supreme Court's decision in *Beckles*, the Enforcement Notice (as an advisory) is not subject to pre-enforcement as-applied vagueness

8

challenges. *See supra*, at 3. And the plaintiffs' procedural due process claim would be untenable, because the plaintiffs have not identified any process that would be due before a prosecutor advises the public on her interpretation of a criminal law. Instead, their procedural due process claim is premised on the theory that the Constitution required the Attorney General to follow the rulemaking procedures in G.L. c. 30A before she could issue the Enforcement Notice—the very theory that would have been rejected in *Baystate Firearms*.[1] Conversely, if the Massachusetts court rules that the Enforcement Notice is a regulation that should have gone through rulemaking under G.L. c. 30A, then the Enforcement Notice would be invalid and the *Pullman Arms* plaintiffs' federal constitutional claims challenging that Notice would be moot. Thus, this case involves that rare circumstance where "*Colorado River* has special appeal"—namely, "where a state court decision 'may substantially, perhaps even fully, answer certain questions of state law in a way that will permit easy answers, relatively speaking, to the federal ones.'" *Currie*, 290 F.3d at 11 (quoting *Kartell v. Blue Shield of Mass.*, 592 F.2d 1191, 1193-94 (1st Cir. 1979)).

The concerns about avoiding piecemeal litigation that animate *Colorado River* abstention are particularly acute in this case. The First Circuit has explained that "[w]eight may be afforded to the piecemeal litigation factor only where the implications and practical effects of litigating the parallel actions provide an *exceptional basis* for surrendering federal jurisdiction, such as a clear competing policy or some special complication." *Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109, 116 (1st Cir. 2012) (emphasis in original). The quintessential "exceptional basis" under this test comes from *Currie*, where the First Circuit stayed the federal action "partly to avoid

---

[1] *See, e.g.*, Amended Compl. (ECF Doc. No. 15) ¶ 2 ("the 2016 Enforcement Notice issued without any administrative process or input from affected parties"); ¶ 40 ("The Attorney General did not follow in any manner the requirements of G.L. c. 30A in issuing what constitutes a regulation in the form of the Enforcement Notice.").

rendering an advisory opinion." *Id.* (citing *Currie*, 290 F.3d at 9-13). That same exceptional basis is present here. For the reasons described, regardless of how this Court ultimately views the Enforcement Notice—as either a prosecutor's advisory or a regulation—an opposite conclusion by the state court in *Baystate Firearms* would likely render this Court's decision advisory. *See supra*, at 8-9. Thus, there is an especially strong "exceptional basis" for allowing the Massachusetts court to proceed to final judgment in *Baystate Firearms* first. *See, e.g.*, *Rivera-Feliciano v. Acevedo-Vila*, 438 F.3d 50, 62 (1st Cir. 2006) (finding that "it would be better to avoid the piecemeal litigation" and permit a Puerto Rico court to "decide … controlling issues of Puerto Rico law first"); *Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc.*, 751 F.2d 475, 477 (1st Cir. 1985) (abstaining under *Colorado River* in light of the "real possibility that … two courts might interpret the same standard [insurance] policy language differently"). In addition, because the same attorneys are litigating this case and the *Baystate Firearms* case, a stay in the federal case would prevent duplicative or overlapping discovery processes that would unnecessarily add to the parties' expenses, and it would eliminate any incentive to plan litigation events in one case with an eye toward the other case.

Importantly, this case, like *Currie*, is also one in which "the state has unusually strong interests," and in which the importance of those interests "transcends the result in the case [now] at bar." *Currie*, 290 F.3d at 10-11 (Massachusetts had unusually strong interests in the administration of state-provided insurance benefits). It involves the Massachusetts Attorney General's interpretation of, and future enforcement of, a longstanding state criminal law aimed squarely at protecting the safety of Massachusetts residents and law enforcement officers. "It cannot be gainsaid that Massachusetts has compelling governmental interests in both public safety and crime prevention." *Gould v. Morgan*, 907 F.3d 659, 673 (1st Cir. 2018). Indeed, "few interests

are more central to a state government than protecting the safety and well-being of its citizens." *Id.* This case is wholly unlike those cases in which the First Circuit has declined to abstain under *Colorado River*—cases involving, for example, "a simple contract dispute requiring application of settled local law," *Nazario-Lugo*, 670 F.3d at 117, or a "dispute between a vendor and its sales representative … of primary importance only to the immediate parties," *KPS & Assocs.*, 318 F.3d at 11.

The same "comity concerns" motivating the *Colorado River* abstention doctrine are thus present in this case. *See Currie*, 290 F.3d at 11. This Court should grant the Attorney General's motion to stay and abstain from further consideration of the plaintiffs' remaining claims in this case pending the Massachusetts courts' final disposition of the *Baystate Firearms* case.

## **CONCLUSION**

For the foregoing reasons, this Court should grant the Attorney General's motion to stay under the *Colorado River* abstention doctrine.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

 /s/ Julia Kobick
William W. Porter, BBO #542207
Julia E. Kobick, BBO #680194
Assistant Attorneys General
Gary Klein, BBO #560769
Special Assistant Attorney General
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, Massachusetts 02108
(617) 963-2559

Date: February 7, 2019          julia.kobick@state.ma.us

**CERTIFICATE PURSUANT TO LOCAL RULE 7.1(a)(2)**

I certify that, on January 30, 2019, I conferred with David Kerrigan, counsel for the plaintiffs, and he indicated that the plaintiffs will oppose this motion.

/s/ Julia E. Kobick
Julia E. Kobick
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I certify that this document filed through the CM/ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 7, 2019.

/s/ Julia E. Kobick
Julia E. Kobick
Assistant Attorney General