UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————————
)
PULLMAN ARMS INC., GUNS and GEAR, LLC, )
PAPER CITY FIREARMS, LLC,                         )
GRRR! GEAR, INC., and                               )
NATIONAL SHOOTING SPORTS                      )
FOUNDATION, INC.                                     )
                                                             )
                    Plaintiffs,                           )          CASE NO.: 4:16-cv-40136-TJH
                                                             )
v.                                                           )
                                                             )
MAURA HEALEY, ATTORNEY GENERAL        )
FOR THE COMMONWEALTH OF                    )
MASSACHUSETTS                                      )
                                                             )
                    Defendant.                          )
———————————————————————————)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY**

For close to two and a half years, the four Plaintiff firearm retailers and the National

Shooting Sports Foundation have sought review by this Court of a regulatory effort that

continues to harm them through uncertainty.  While this action has been pending, these four

shops have had no choice but to refrain from selling popular firearm models that may violate the

Attorney General's ambiguous Enforcement Notice. In fact, two of the plaintiffs have ceased

firearm retail sales altogether due to declining sales after the Notice issued.

This Court should deny the Attorney General's request to stay this action for an

undetermined period of time, perhaps two to three years, prolonging these licensed retailers' wait

for clarity in the law.  Clarity in the law is a fundamental principle under the 14th Amendment,

and the Plaintiffs should not have to wait further years for different plaintiffs in a separate state

court case to proceed through judgment and eventual appeals.

This is not the exceedingly rare case qualifying for the most exceptional abstention doctrine, *Colorado River* abstention, because:

(1) the six *Colorado River* factors the Attorney General deems "neutral" in fact weigh heavily against abstention, especially where the state court action, involving wholly distinct parties and legal issues, is not an adequate vehicle for complete and prompt resolution of all of the issues presented in this case;

(2) the "piecemeal litigation" factor is inapplicable where the mere possibility that the state action might render this action insufficient to support *Colorado River* abstention; the state court case is unlikely to affect this one; and the state court case requires no discovery; and

(3) federal and not state law controls in this exclusively federal constitutional case, especially where the state court case involves a straightforward application of settled state law which is not involved in the federal constitutional claims here.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

### 1. Four Licensed Firearms Retailers, Fearing Criminal Prosecution, Cease Selling Popular Firearms And Bring This Action Challenging the Notice.

On July 20, 2016, Attorney General Healey issued a so-called "Enforcement Notice" which established a new definition for the statutory prohibition against assault weapons contained in G.L. c. 140, §122. Faced with uncertainty regarding the Notice's scope and application to various firearms, four Massachusetts licensed firearms retailers—Pullman Arms, Inc. of Worcester, Guns and Gear, LLC of Agawam, Paper City Firearms, LLC of Holyoke, and Grrr! Gear, Inc. of Orange, and the National Shooting Sports Foundation, filed this action in September, 2016 against the Attorney General. The Plaintiffs seek a prospective injunction and a declaration against the Attorney General from enforcing the Enforcement Notice as to specific firearms listed in the complaint. (Am. Compl., Doc. 15, p. 18–24.) The complaint described the

ambiguities raised by the Notice and raised a vagueness challenge because the Notice did not provide sufficient clarity on what firearms met its new "similarity" or "interchangeability" tests.

The Attorney General moved to dismiss the Amended Complaint in its entirety.  On March 14, 2018, the District Court denied the Motion in part, and allowed it in part.  *Pullman Arms v. Heal*ey 301 F. Supp. 3d 227 (D. Mass. 2018).  The Court found that two claims could proceed: the due process challenge that the Enforcement Notice was unconstitutionally vague as applied to specific firearms, and the due process challenge that Attorney General's new regulatory restrictions on the plaintiffs' firearms licenses amounted to a deprivation of property without due process by "accidentally or deliberately clouding the question of the extent of the Massachusetts assault weapons ban."  301 F. Supp. 3d at 233-234.

After requesting briefing on whether the Notice was capable of judicial review, the Court found that this Notice was susceptible to a due process vagueness challenge.  In so doing, the Court did not rely on whether the Notice constituted a regulation under the Massachusetts Administrative Procedures Act, G.L. c. 30A.  Instead, the Court relied on federal cases to find that the Enforcement Notice "has the effect of a regulation" for purposes of federal constitutional review, "regardless of whether it is called one." 301 F. Supp. 3d at 231. The Court also considered instructive federal cases that "a document purporting to be other than a regulation can be reviewed by this Court."  301 F. Supp. 3d at 231.  For example, the Court relied upon the Supreme Court's decision in *FCC v. Fox Television,* 567 U.S. 239 (2012), and noted that even a document styled as a "guidance" can be reviewed for vagueness under the Fourteenth Amendment.  301 F. Supp. 3d at 231.

The Attorney General subsequently appealed a portion of the decision to the First Circuit Court of Appeals, arguing that the Court had not dismissed state law claims.  Plaintiffs argued

3

that the District Court had not decided the motion to dismiss based on the Eleventh Amendment

immunity, which would not have barred state law claims in any event.

The First Circuit dismissed the appeal on the day it was argued after Plaintiffs' counsel

confirmed, as stated in their brief, that the complaint was not seeking relief based on a violation

of only state law. (*Id.*)

**2. The State Law Action: Two Other Licensed Firearms Retailers Challenge The Enforcement Notice As An Invalidly Enacted Agency Regulation Under State Law.**

On August 15, 2018, two Massachusetts licensed firearms retailers, Baystate Firearms

and Training, LLC of Peabody, and Downrange, Inc. which operates in Hyannis as Cape Gun

Works, filed with the Single Justice for the Supreme Judicial Court a Petition for Declaratory

Relief against the Attorney General. *Baystate Firearms and Training, LLC et al. v. Healey*, SJ-

2018-0364.  (Baystate Petition, Ex. A, ¶¶ 4–5.)  Baystate and Downrange raised a single claim:

that the Enforcement Notice constitutes a regulation under the state Administrative Procedures

Act contained in G.L. 30A, and the Attorney General did not provide the requisite, properly-

noticed public hearing and comment period.[1]  (Baystate Petition, Ex. A, ¶¶ 45–53.) *See* G.L. c.

30A, § 2(a) ("A public hearing is required prior to the adoption…of any regulation if [] violation

of the regulation is punishable by fine or imprisonment…"), § 7 (providing for "judicial review

of any regulation…through an action for declaratory relief").  As a result, the state court

plaintiffs claimed that the Notice is not valid.

The Attorney General accurately, but too succinctly for *Colorado River* analysis,

describes the general posture of this state court case (Mot. To Stay, p. 6).

The Attorney General answered the petition on September 18, 2018, admitting that she

did not provide notice or a public hearing before issuing the Enforcement Notice.  (Baystate

---

[1] This claim could not have been raised in federal court in this action or any other, under the 11th Amendment.

Petition, Ex. A, ¶ 32; Answer, Ex. B, ¶ 32).  Baystate and Downrange sought a hearing and

requested that the case be reported to the full panel of the Supreme Judicial Court.  (Ex. C.)

Baystate and Downrange argued that the Supreme Judicial Court should hear the case because it

"raised a question of law" only:  whether the Enforcement Notice "is a regulation" according to

the state statute's definition of "regulation." (Ex. C, p. 1).  *See, e.g., Carey v. Comm'r of*

*Correction*, 479 Mass. 367, 372 (2018) (agency notice constituted a "regulation," under the APA

and was invalid for lack of notice and hearing.)  On October 25, 2018, the Court (Cypher, J.)

issued an Order for Supplemental Briefing as to the availability of pre-enforcement review of the

Enforcement Notice.  (Ex. D.)

On about November 20, 2018, both parties submitted the requested supplemental briefs

concerning pre-enforcement review; Baystate Firearms and Cape Gun Works, in their brief,

reiterated that the "ultimate issue" in the case is a question of law: "whether the Notice is a[]

[state] APA regulation, and so invalid for the Attorney General Office's undisputed lack of

notice or hearing."  (Pl. Supp. Brief, Ex. E, p. 6.)

Despite these multiple filings over several months, the Attorney General failed to request

this Court to stay this federal action.  On December 20, 2018, the Single Justice transferred the

case to the Suffolk County Superior Court, and the case will need to be resolved by the Superior

Court before a likely appeal to the Appeals Court or direct appellate review by the Supreme

Judicial Court.[2]

---

[2] The Defendant provided a brief description of the *Worman v. Healey* case, even though it has no relevance to the abstention request and is not even referenced in the Defendant's arguments.  In so doing, the Attorney General omitted several important points.  The *Worman* plaintiffs, who are wholly distinct from the Plaintiffs here and the plaintiffs in the state court action, focused the majority of their legal arguments on the claim that G.L. c. 140, § 122, not the Notice, violated the Second Amendment, while including a claim that the Notice violated the *ex post facto* clause.  Raising ripeness *sua sponte*, the Court (Young, J.) decided that the claim was not ripe for review, but the Court had not requested any briefing on the issue; did not mention or consider the *FCC v. Fox Television* or the *Bennett v. Spear* case cited by the Plaintiffs or this Court earlier in this action; and relied solely on federal case law on what constituted a federal regulation.

## SUMMARY OF ARGUMENT

Abstention under any doctrine is meant to be exceedingly rare.  Because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," the Supreme Court warns that any abstention doctrine may be invoked only in "exceptional circumstances" as an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-14 (1976).

*Colorado River* abstention is to be exercised in the rarest of circumstances.  *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010)*, quoting Colo. River*, 424 U.S. at 819. ("Of all the abstention doctrines, [*Colorado River* abstention] is to be approached with the most caution, with '[o]nly the clearest of justifications' warranting dismissal.")

This is <u>not</u> the rare case with the "clearest of justifications."  As the Attorney General concedes, six of the eight factors considered for *Colorado River* abstention are neutral at best.  In fact, several of these factors weigh strongly against abstention.  The state court action is wholly inadequate to protect these Plaintiffs' interests (factor 6) as they are not parties to the state court action and the state court plaintiffs do not raise the federal constitutional claims at issue here; the Suffolk County state court is inconvenient for these Plaintiff retailers (factor 2), all of which are located in Worcester County and further west; this federal action was filed first (factor 4) by nearly two years; federal and not state law governs (factor 5) in this strictly federal constitutional action; and the federal action is not "vexatious or contrived" (factor 7) where it survived a motion to dismiss.

The Attorney General argues that only two factors—"the desirability of avoiding piecemeal litigation" and "whether state or federal law controls"—allegedly favor abstention. The Attorney General's arguments are fatally flawed, however, and these two factors actually are either neutral or weigh against abstention.

First, the "piecemeal litigation" factor (factor 3) is neutral at best. Not only is the remote specter of mootness insufficient to support abstention, but there is, in any event, no credible risk that the state court case could render moot this federal action. This Court already found the Notice, even if styled a guidance, is subject to constitutional vagueness review, a threshold issue distinct from the state law issue in the state court action. Moreover, there is little to no risk that the state action could impact this federal action, where this case will resolve before any appellate decision in the state action.

Second, federal law and not state law controls in this case (factor 5), weighing against abstention, where this case involves exclusively federal constitutional claims and is not "intertwined" with an exceptionally "complex" state law issue. Unlike in the *Currie* case, the state court action here involves a straightforward application of settled state law irrelevant to these federal constitutional claims: it does not involve an unsettled state law issue requiring a balance of state policy expressly incorporated into a federal claim like in *Currie*.

## ARGUMENT

### I.   *COLORADO RIVER* ABSTENTION DOES NOT APPLY

The Supreme Court recognizes four doctrines permitting, rarely, abstention from the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-14, 814-17 (1976).

The first three abstention doctrines, often referenced as *Pullman, Burford,* and *Younger,* are rooted in "considerations of proper constitutional adjudication and regard for federal-state relations." *Id.* at 817.  Even with these important constitutional considerations, the Supreme Court cautions that abstention under these three doctrines "is an <u>extraordinary and narrow exception</u> to the duty of a District Court to adjudicate a controversy properly before it," and "can be justified [] <u>only in the exceptional circumstances</u> where the order to the parties to repair to the state court would clearly serve an important countervailing interest."  *Id.* at 813-14 (emphasis added).   This balance "only rarely favors abstention."  *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 517 (1st Cir. 2009).

The Attorney General seeks to invoke the fourth abstention doctrine, the so-called *Colorado River* abstention doctrine, to justify a stay for an indeterminate time, likely to be several years.   "Of all the abstention doctrines, [*Colorado River* abstention] is to be approached with the most caution, with '[o]nly the clearest of justifications' warranting dismissal." *Jiminez v. Rodriguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010), *quoting Colo. River*, 424 U.S. at 819.  It is rarely invoked because *Colorado River* doctrine is based not on important constitutional notions of federalism, but rather on mere "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Colo. River*, 424 U.S. at 817.

Notably, *Colorado River* abstention can apply only in "the presence of parallel litigation in state court," meaning that the state court involves a "similar action" or "the same controversy."  *Jimenez*, 597 F.3d at 27. *Colorado River* abstention is inapplicable here, where this federal action and the state court action are not "similar" and do not involve the "same controversy."  Although both actions attack the Notice, the actions involve wholly distinct plaintiffs, claims, and legal issues.

8

Indeed, notably unlike here, *Colorado River* and every case the Attorney General cites as support involves the same opposing parties litigating the same legal issues in simultaneous state and federal court actions. *See Colo. River*, 424 U.S. at 806 (both state and federal actions shared opposing parties and legal issues). For example, in the *Currie v. Group Insurance Commission* case, which the Attorney General incorrectly wants to paint as "strikingly similar" to the present case, the state and federal actions involved the <u>same plaintiff</u> and the <u>same legal issue</u> of whether an insurance policy violates state antidiscrimination law. *Currie*, 290 F.3d 1, 4–5 (1st Cir. 2002). *See also Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109, 113 (1st Cir. 2012) (Ms. Nazario-Lugo was counterclaim-plaintiff in state action and plaintiff in federal action, both involving the same issue of her entitlement to wages and benefits); *Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc.*, 751 F.2d 475, 476 (1985) (same insurer and insured were opposing parties in both state and federal actions, both involving the same issue of the insurer's indemnification obligations to the insured); *KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 7 (1st Cir. 2003) (KPS and Designs were opposing parties in both state and federal actions, both involving same issue state contract law issues).

Where these Plaintiffs are not parties in the state court action, and where this action involves only federal claims not raised in state court, *Colorado River* abstention is improper.

## II. THE SIX FACTORS THE ATTORNEY GENERAL CALLS "NEUTRAL" IN FACT WEIGH HEAVILY AGAINST ABSTENTION.

Abstention analysis imposes a "heavy presumption favoring the exercise of jurisdiction." *Currie*, 290 F.3d at 10. The Attorney General has not met this extraordinary burden.

The Attorney General concedes that, of the eight factors relevant to *Colorado River* abstention, six of the factors are "neutral" at best. (Mot. To Stay, p. 8.) In fact, several of these

factors are not neutral but instead weigh strongly against abstention, and the overall weight of the

six factors strongly suggests that the Court should deny the Defendant's motion.

Most crucially, the state forum is wholly inadequate to protect the federal Plaintiffs'

interests in obtaining clarity on the Notice's ambiguity (factor 6). The only issue in the state

action is whether the Notice constitutes a "regulation" within the meaning of state law. The

wholly distinct state court plaintiffs make no claims concerning any ambiguities in the Notice,

nor will any relief there address that issue.  Until that issue is determined, these Plaintiffs will

continue operating under a cloud of uncertainty, losing valuable sales while the ambiguous

Notice has its chilling effects on the Plaintiffs' retail sales. Perhaps this is the Attorney General's

desired result: additional delay to force the stores out of business.  But the Court should not

allow this result, having found that the Amended Complaint states valid federal due process

claims.

The other factors similarly weigh strongly against abstention.  This Court sitting in

Worcester, and *not* the Suffolk Superior Court in Boston, is more convenient for the parties

(factor 2).  Where none of these Plaintiffs are parties to the state action, this federal action is by

definition not just the more convenient forum for them, but their *only* forum.  Moreover, this

forum would in any event be more convenient, as none of the Plaintiffs are located in Suffolk

County where the state action is pending; one retailer operates in Worcester and the other three

are located further west, in Hampden and Franklin Counties.  (Amend. Compl., Doc. 15, ¶¶ 5–9.)

This federal action is also the first action and the most advanced (factor 4).  While only

minimal discovery has yet taken place, this Court assumed jurisdiction in this action nearly <u>two</u>

<u>years</u> before the state court case was filed, which favors denial of this motion.

Abstention is not warranted when federal law, not state law, governs this federal constitutional action (factor 5).  In addition, there is nothing vexatious nor contrived about the nature of the federal claims (factor 7), when the Court has already found that the as-applied challenge is sufficiently stated in the Amended Complaint, and the First Circuit summarily dismissed the Attorney General's interlocutory appeal.

Where these factors weigh heavily against abstention, the Defendant's Motion should be denied.  Moreover, the Attorney General has failed to demonstrate that the only other two factors—"the desirability of avoiding piecemeal litigation" and "whether state or federal law controls"—are so exceptional in this case so as to overcome the "heavy presumption" of jurisdiction.   As discussed in the following section, those factors are either neutral or weigh against abstention.

### III.   THE "PIECEMEAL LITIGATION" FACTOR DOES NOT APPLY, WHERE THERE IS NO CREDIBLE RISK OF MOOTNESS NOR OTHER EXCEPTIONAL CIRCUMSTANCES.

The Attorney General's chief argument is that the "desirability of avoiding piecemeal litigation" is so exceptionally urgent as to justify abstention, because resolution of the state court case could somehow be dispositive of this federal action, and because discovery in the state court case could somehow overlap with discovery here.  *See* Def.'s Mot. To Stay, p. 8-10.

The Attorney General's reasoning is fatally flawed, however, because (1) the mere risk of a state case mooting a federal one is insufficient by itself to support abstention, (2) unlike here, the First Circuit in *Currie* (like other circuits) found exceptional facts based on the state case being pending on appeal, (3) in any event, any outcome in the state court case will not render moot or otherwise resolve this action, and (4) the state court action does not require discovery.

### a.   Mere Risk Of Mootness Insufficient For *Colorado River* Abstention

Preliminarily, the mere risk that a state court outcome may render moot a federal action is <u>not</u> enough to invoke *Colorado River* abstention.

"[D]ismissal is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues." *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 10–11 (1st Cir. 2003) (internal quotation omitted).   "Rather, concerns about piecemeal litigation should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora, and weigh in favor of dismissal only if there is some 'exceptional basis' for dismissing one action in favor of the other." *Id.*  "Weight may be afforded to the piecemeal litigation factor only where the implications and practical effects of litigating the parallel actions provide an *exceptional basis* for surrendering federal jurisdiction, such as a clear competing policy or some special complication." *Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109, 116 (1st Cir. 2012) (emphasis in original).  Absent such exceptional "implications and practical effects," the risk of a state action mooting a federal one is "at most, only [a] routine risk[] presenting no occasion to animate the piecemeal litigation factor." *Id.* at 117.  *See also Jimenez*, 597 F.3d at 30 ("potential for fragmented adjudication" is "to be distinguished from merely duplicative adjudication").  "Were it otherwise, courts could abstain in any diversity action that overlapped with a state-court action." *Id.* at 29.

Here, the mere fact that this Court and a state trial court are analyzing the same Notice (with wholly distinct plaintiffs, legal issues, and claims) does <u>not</u> involve any of the kinds of "implications and practical effects" the First Circuit has deemed necessary for the extraordinary relief of abstention. *See, e.g., Jimenez*, 597 F.3d at 30.

The facts in *Jimenez* demonstrate this difference.  In *Jimenez*, all heirs to a decedent's estate were parties to a state court action, but only some heirs were parties to the federal action. As a result, only the state action could fully adjudicate the issues, and "[t]his disparity in inclusiveness thus creates a greater practical risk of piecemeal litigation than the baseline inefficiencies of the average exercise of concurrent federal-state jurisdiction." *Jimenez*, 597 F. 3d at 30.  *See also*, *Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc.* 751 F.2d 475, 477 (1st Cir. 1985) (where parallel state and federal cases involved the same insured and same insurance policy, inconsistent interpretation of the same policy language could "severely prejudice the rights of one of the parties"); *Rivera-Feliciano v. Acevedo-Vila*, 438 F.3d 50 (1st Cir. 2006) (federal claims necessitated resolving "many underlying unresolved issues of Puerto Rican law") (emphasis added).

This case presents none of those types of exceptional circumstances, where this federal action and the state court action involve wholly distinct plaintiffs, claims, and legal issues.  In addition, the state court action does not involve any unsettled issues of state law.  Instead, it involves mere application of settled statutory criteria to the Notice, an analysis the state courts apply in a variety of contexts. *See e.g. Carey v. Department of Correction*, 479 Mass. 367 (2018) *and cases cited therein.* Fundamentally, there is no risk of inconsistent rulings prejudicing any party.

### b. *Colorado River* Abstention Generally Applies When, Unlike Here, The State Action Is Resolved And On Appeal.

Moreover, the First Circuit finds it significant in determining "exceptional" facts that warrant extraordinary *Colorado River* abstention, that the state case, notably unlike here, is already resolved and pending on appeal.

This is true of the cases Defendant cites, including the *Currie* case the Attorney General relies on almost exclusively in support of its argument.  Defendant tries to cast *Currie* as "strikingly similar" to this case, but *Currie* in fact is distinct in nearly every possible way. There, unlike here, the federal trial court did <u>not</u> abstain, and instead the state and federal actions were both resolved on the merits and both were pending appeals.  290 F.3d at 4–5.  Where both the state Appeals Court and the First Circuit were simultaneously deciding the same substantive state law issue on appeal, the First Circuit chose to abstain to allow the state Appeals Court to issue its decision first, noting that "deferral has even more force because the state proceeding is already on appeal on a fully developed record."  *Id.* at 11 n. 8.

That the state matter must be on appeal to present an exceptionally untenable risk of mootness is consistently the exceptional basis for considering the "piecemeal litigation" factor in First Circuit case law.  *See, e.g., Kartell v. Blue Shield of Massachusetts, Inc.*, 592 F.2d 1191, 1194 (1st Cir. 1979) (finding "great appeal" for abstention based on pending Supreme Judicial Court appeal); *Rivera-Feliciano v. Acevedo-Vila*, 438 F.3d 50, 61 (1st Cir. 2006) (abstaining where parallel Puerto Rico action was pending before Puerto Rico's highest state appeals court).[3]

This is consistent with rulings of other circuit courts.  *See, e.g., Hearne v. Bd. of Educ.,* 185 F.3d 770, 778 (7th Cir. 1999) (holding that the "principles of sound judicial administration which animated the decision in *Colorado River* ... required a stay of the federal proceedings" pending outcome of parallel state appeal); *Akins v. Rodriguez,* 26 F.3d 105 (9th

---

[3] *Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc.* is the only cited case involving a parallel state action not on appeal.  However, the "exceptional" aspects there are not present here: there, the state case was earlier by two years and was more comprehensive, and the federal action did not involve any federal issues; here, the federal action is earlier by two years, is more comprehensively litigated, and involves exclusively federal issues.  751 F.2d 475, 477 (1st Cir. 1985).

Cir. 1994) (*Colorado River* abstention appropriate where state action is on appeal to state supreme court); *Bates v. Van Buren Township,* 122 Fed. Appx. 803, 808 (6th Cir.2004).

Where the state action here involves wholly distinct parties, seeks resolution of wholly distinct legal issues and claims, and is in its infancy, there are no "exceptional" facts warranting extraordinary *Colorado River* abstention.

### c.   The State Action Is Unlikely To Moot Or Affect This Federal Action.

Regardless, there is little or no risk that the state court action could moot or otherwise affect this one.

Whether the Notice is a regulation under state law will not render moot any vagueness finding here. This Court has already found, based on federal case law, <u>not</u> the Massachusetts Administrative Procedures Act, that the Notice was sufficiently "regulatory in effect" as to trigger federal constitutional review.  *See Pullman Arms,* 301 F. Supp. 3d at 231, *citing F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012).  The Court did <u>not</u> decide that the Notice constituted a regulation under state law, requiring notice and a hearing under the state APA: it decided only that the Notice met the standard to subject the policy to Fourteenth Amendment review. If the state court finds that the Notice is a regulation, nothing changes.[4]  If it is not a regulation under state law, the Court ruling still stands.

Second, as a practical matter, there is little risk of mootness here because this federal action is likely to be resolved sooner than the state action.  Plaintiffs have proposed a tracking order with summary judgment pleadings filed before the end of the year and trial in March 2020,

---

[4] If the Notice is a regulation and did not follow the APA, it would not be valid, but the SJC recently ordered that a similar "policy," which the Court found to be a regulation, remain in effect to allow the administrative process to take place.  *Carey,* 479 Mass. at 373-374.  Thus, a ruling clarifying the Notice's scope would have a beneficial effect, perhaps for years. It would not render a decision moot.  In any event, the Attorney General would likely enact a regulation with the same tests, not having addressed the ambiguities to date.

just over one year away (*see* Joint Statement and Discovery Plan, Doc. 62, p. 2); Defendant seeks

an even more aggressive schedule, with summary judgment motions fully briefed by November

7, 2019 (*see id.*, p. 3).  This case will in all likelihood be resolved in a year.  On the other hand,

the state case will receive an average track designation given its declaratory judgement request

and will take at least one year for the Superior Court to decide the issue and another year for any

decision to be resolved on appeal.

Third, in any event, the outcome of the state court case is unlikely to have any effect

whatsoever on this federal action.

If the state court plaintiffs prevail, a recent Supreme Judicial Court decision suggests that

the state court may defer its judgment invalidating the Notice until after giving the Attorney

General the opportunity to follow the proper procedures for a regulatory hearing and comment

period.  Indeed, this is precisely what the Supreme Judicial Court ordered just last year in *Carey*

*v. Department of Corrections*, 479 Mass. at 373–74.  In *Carey*, the Department of Corrections

defended a published "policy," which the agency claimed was not a "regulation" subject to the

state Administrative Procedures Act and so did not require a public hearing to be enforceable.

*Carey*, 479 Mass. at 373–74. The Court disagreed, finding that the policy was a "regulation" and

so was unenforceable where it undisputedly was enacted without a hearing.  Importantly to the

current Motion, the *Carey* Court ordered that the judgment be deferred by 180 days, to allow the

agency "if it wishes, [to] adopt[] the regulation anew in conformance with the [state] APA."

*Carey*, 479 Mass. at 373–74.  Thus, even if the state court plaintiffs prevail, the Court could

decide to provide the Attorney General time to properly re-enact the regulation and avoid the

regulation lapsing. Given the length of time this case has been pending with no change to the

16

Notice to clarify the ambiguities identified in the complaint, there is no reason to suspect that any duly enacted regulation will take any different form than the current Notice.

Where there is little if any credible risk that the state court case could resolve the issues present in this case, the Attorney General cannot meet its exacting burden of overcoming the "heavy presumption" against abstention.

### d.   The State Court Action Does Not Require Discovery.

Finally, the Attorney General argues, incorrectly and without citing a recognized factor in favor of abstention, that the state court case will somehow cause "duplicative or overlapping discovery processes that would unnecessarily add to the parties' expenses[.]" *See* Mot., p. 10.

On the contrary, as the state court plaintiffs indicated by filing initially with the Single Justice of the Supreme Judicial Court (which does not conduct fact-finding), there is no need at all for discovery in the state court action.  That case involves the legal issue of whether the Notice's text and effect, in light of the Attorney General's undisputed public statements, is a "regulation" as defined by a state statute.  Where the state court plaintiffs have not indicated a need for discovery, there is no risk at all of "duplicative or overlapping" discovery.  Even if there were, this is not a factor to consider to apply the extraordinary *Colorado River* abstention relief.

### IV.   FEDERAL AND NOT STATE LAW CONTROLS, FURTHER WEIGHING STRONGLY AGAINST ABSTENTION.

Finally, the Attorney General misconstrues First Circuit case law when arguing that state law rather than federal law controls in this case, which involves only federal constitutional claims.  Where this case involves only federal law, this factor actually weighs *against* abstention.

The Attorney General relies on the inapposite *Currie*, in which the First Circuit found an "exceptional" basis to abstain from its appeal based in part on the federal statutory issue in that case being "intertwined with a complex issue of state law, pending before the state courts."  290

F.3d at 10.  Notably, under this *Colorado River* factor, "rare circumstances exist <u>only</u> when a case presents <u>complex</u> questions of state law that would <u>best</u> be resolved by a state court." *Id.* (internal quotation omitted) (emphasis added).

The *Currie* case is crucially unlike this action in many respects,[5] including that *Currie* involved a truly "complex" state law issue that was embedded into the substantive requirements of her federal claim.  Specifically, in the state court, Ms. Currie argued that her long-term disability insurance policy violated state disability discrimination law because it did not provide coverage for a mental disability that does not require hospitalization. 290 F.3d at 4.  In federal court, she claimed that the same policy violated the federal Americans With Disabilities Act, which has a "safe harbor" exempting state law-compliant insurance policies.  *Id.* at 6-8.

The First Circuit in *Currie* found state and federal law exceptionally "intertwined" because the federal ADA claim expressly and substantively exempts liability for state law-compliant policies.  *Id.* at 10.  The Court found the state law issue so exceptionally "complex" and "complicated" as to warrant abstention because the state antidiscrimination law was unsettled as to insurance policies distinguishing between mental health treatments, and this unsettled issue required weighing important state policy concerns: "The state law question is not clear, nor is it clear how the state ultimately would balance the important policy interests of treatment of the disabled with the financial viability of insurance policies."  *Id.* at 11.

---

[5] The *Currie* decision was based on multiple other "exceptional" facts not present here.  First, the First Circuit found it "very significant" that, unlike here, it was the plaintiff in *Currie*, not the defendant, who requested the federal court stay jurisdiction.  290 F.3d at 12.  Unlike in *Currie*, these federal Plaintiffs do *not* wish to put this case on hold for two to three more years.  Second, unlike here, Ms. Currie was plaintiff in both the parallel state and federal cases, meaning that a stay of the federal action there would not have prohibited the plaintiff from obtaining the same relief through her state court action.  *Id.* at 12.  Third, the state court will not decide the key issue in this federal action, that the Notice is unconstitutionally vague as applied to certain specific firearms. Finally, unlike here, the state court action in *Currie* had already been fully litigated before the trial court and was pending appellate review.

Unlike in *Currie*, the state court action here is neither intertwined with federal law, nor at all complex. These federal constitutional vagueness claim here is not "intertwined" with the wholly distinct state APA claim; unlike in *Currie*, whether Attorney General complied with the state APA's notice and hearing requirements has no substantive bearing on whether the Notice's vagueness violates federal substantive due process principles.[6] While this Court already ruled that the Notice is subject to federal constitutional review, it properly decided this threshold issue without considering or relying on its compliance with state procedural requirements.

Nor is the state APA claim exceptionally "complex" where, unlike the state law issue in *Currie*, it involves a straightforward application of a settled state law standard, and does not involve any state policy concerns. The state APA claim asks only whether the Notice is a "regulation," defined as "the whole or any part of any rule, regulation, standard or other requirement of general application and future effect." G.L. c. 30A, § 1(5). Not only is this standard settled, but the Supreme Judicial Court has also already applied it in extremely similar circumstances. *See, e.g., Carey*, 479 Mass. at 371–73 and n.9 (agency "policy" is a state APA "regulation," rejecting argument that it was merely a courtesy notice of the agency's internal management, where the policy was publicized by the agency and prospectively changed substantive procedures for all members of the public).

---

[6] The Defendant fatally ignores the existence of Plaintiffs' vagueness claim, and instead argues, incorrectly, that Plaintiffs' constitutional due process claim is "premised on the theory that the Constitutional required the Attorney General to follow the rulemaking procedures in G.L. c. 30A before she could issue the Enforcement Notice[.]" (Mot., p. 9.) This is not what Plaintiffs claim here, nor is that a claim this Court allowed to proceed after the Defendant's Motion to Dismiss. Instead, Plaintiffs' constitutional due process claim relies on the Notice being unconstitutionally vague as applied to certain firearms, in violation of their substantive due process rights. *See, e.g., Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) (law may be challenged as "unduly vague, in violation of due process"). Consistently, this Court, in partially denying Defendant's Motion to Dismiss, described that Plaintiffs' surviving due process claim concerns the Notice's alleged vagueness, which also has affected Plaintiffs' property rights. *See Pullman Arms*, 301 F. Supp. 3d at 232–33 (Plaintiffs claim the Notice violates Fourteenth Amendment's due process clause because of "the climate of uncertainty created by the Attorney General), p. 9 (Eleventh Amendment does not bar Plaintiffs' federal claim that the Attorney General "has abridged [their] property rights by…clouding the question of the extent of the Massachusetts assault weapon ban").

## V.     THE *COLORADO RIVER* FACTORS WEIGH AGAINST ABSTENTION.

Especially where the Attorney General's arguments fail, a balance of the *Colorado River* factors heavily weighs *against* abstention.

It is significant that the Attorney General did not request federal abstention until *after* the First Circuit Court of Appeals denied its appeal.  That the Attorney General never raised abstention as an issue until now suggests that there is no "exceptional" circumstance to deprive these federal plaintiffs of jurisdiction they have held for two years.  Indeed, the Attorney General filed several pleadings with the Supreme Judicial Court from September 2018 until its December 2018 remand to state court without providing any request to this Court to stay the case.

Regardless, as shown, the eight factors heavily oppose abstention. Where the Attorney General has failed to demonstrate "exceptional" circumstances warranting this most drastic of relief, the Attorney General's Motion should be denied.

PLAINTIFFS,

Pullman Arms Inc., et al.
By their attorneys,

/s/  David R. Kerrigan
Christopher A. Kenney, Esq., BBO# 556511
cakenney@KandSlegal.com
David R. Kerrigan, Esq., BBO# 550843
drkerrigan@KandSlegal.com
Kenney & Sams, P.C.
45 School Street
Boston, MA 02108
(617)722-6045

/s/   Michael J. Sullivan
Michael J. Sullivan, Esq.
msullivan@ashcroftlawfirm.com
Ashcroft Law Firm
200 State Street
7th Floor
Boston, MA 02109

DATED: February 22, 2019

## CERTIFICATE OF SERVICE

I hereby certify, on behalf of Plaintiffs, that on February 22, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ David R. Kerrigan
David R. Kerrigan