UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PULLMAN ARMS INC.; GUNS and GEAR, LLC; PAPER CITY FIREARMS, LLC; GRRR! GEAR, INC.; and NATIONAL SHOOTING SPORTS FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MAURA HEALEY, ATTORNEY GENERAL FOR THE COMMONWEALTH OF MASSACHUSETTS, <br><br> Defendant. | CIVIL ACTION <br> No. 4:16-cv-40136 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION TO QUASH SUBPOENAS FOR TESTIMONY ISSUED UNDER FED. R. CIV. P. 45 TO FOUR MASSACHUSETTS POLICE DEPARTMENTS**

The Defendant in this matter, Maura Healey, Attorney General for the Commonwealth of Massachusetts, with the assent of the Worcester Police Department, the Orange Police Department, the Agawam Police Department, and the Holyoke Police Department, hereby moves to quash four subpoenas for testimony issued by the Plaintiffs pursuant to Fed. R. Civ. P. 45 to those four police departments (collectively "Police Departments"). None of the Police Departments is a party to this lawsuit.

As grounds for this motion, the Attorney General states that the four subpoenas should be quashed because they seek discovery on matters that are beyond the scope of the remaining claims in this action, are not proportional to the needs of the case, and impose an undue burden on the Attorney General and the Police Departments. More specifically, where this Court has ruled that this case is limited to the application of the Enforcement Notice on Prohibited Assault

1

Weapons ("Enforcement Notice") to the firearms identified by the Plaintiffs in the Amended Complaint, discovery that exceeds the scope of that inquiry is improper. Moreover, the Attorney General has stated unequivocally through responses to interrogatories and requests for admission that the firearms identified by the Plaintiffs in the Amended Complaint are not "copies or duplicates" of enumerated assault weapons under the Massachusetts Assault Weapons Ban, G.L. c. 140, §§ 121 and 131M, or the Enforcement Notice; thus, the testimony sought from the Police Departments will not advance this case and will needlessly waste law enforcement resources.

## BACKGROUND

**A.     Plaintiffs' Requests for Discovery.**

On July 10, 2019, Plaintiffs in this matter served notices of deposition under Fed. R. Civ. P. 30(b)(6) seeking testimony from four police departments across Massachusetts: the Holyoke Police Department, the Worcester Police Department, the Orange Police Department, and the Agawam Police Department. *See* Exhibits 1-4 (Rule 30(b)(6) Deposition Notices) (**attached**). Since none of the Police Departments is a party to this lawsuit, on July 11, 2019, the Plaintiffs also served subpoenas pursuant to Fed. R. Civ. P. 45 to compel the Police Departments' testimony. *See* Exhibits 5-8 (Rule 30(b)(6) Deposition Subpoenas) (**attached**). The four depositions are scheduled for July 23 through 25, 2019, approximately two weeks from the date that the notices of deposition issued. *See* Exhibits 1-8. Pursuant the subpoenas, a representative of each of the Police Departments would be required to travel to the offices of Plaintiffs' counsel in Southborough, Massachusetts to be deposed. *See id.*

Plaintiffs have also propounded numerous written discovery requests in this matter and received responses. Plaintiffs' written requests for discovery include two sets of interrogatories to the Attorney General, to which the Attorney General responded on April 23, 2019, and May

24, 2019, respectively, and 99 requests for admission, to which the Attorney General responded on May 24, 2019. *See* Exhibit 9 (Defendant's Responses to Plaintiffs' First Set of Interrogatories to the Attorney General) (**attached**); Exhibit 10 (Defendant's Responses to Plaintiffs' Second Set of Interrogatories to the Attorney General) (**attached**); and Exhibit 11 (Defendant's Responses to Plaintiff's First Set of Requests for Admissions) (**attached**). Plaintiffs have also propounded on the Attorney General a request for production of documents, and the Attorney General has produced approximately 200 documents in response, comprising several thousand pages of records.

In addition, Plaintiffs served subpoenas for documents pursuant to Fed. R. Civ. P. 45 on the four Police Departments, as well as on three state agencies that also are not parties to this matter: the Massachusetts State Police ("MSP"), the Massachusetts Executive Office of Public Safety and Security ("EOPSS"), and the Office of Governor Charlie Baker ("Governor's Office"). The MSP, EOPSS, the Governor's Office, and at least three of the Police Departments have responded to the subpoenas for documents. Notably, of the Police Departments whose responses to the subpoenas for documents have been provided to the Attorney General, Agawam had only a copy of the Enforcement Notice received by email with a standard cover letter and another general email about the Enforcement Notice to produce; Holyoke had no documents to produce; and Worcester had only two emails to produce. *See* Exhibit 12 (Agawam Police Department's Response) (**attached**); Exhibit 13 (Holyoke Police Department's Response) (**attached**); Exhibit 14 (Worcester Police Department's Response) (**attached**).

Plaintiffs have also noticed depositions of the Attorney General's Office and EOPSS pursuant to Fed. R. Civ. P. 30(b)(6), and they have likewise expressed an intention to depose the Governor's Office and MSP pursuant to Fed. R. Civ. P. 30(b)(6). Those depositions are not at

issue in this motion.[1]

### B.     The Narrow Scope of this Case.

Plaintiffs filed this action in September 2016 to challenge the Enforcement Notice, *see* ECF Doc. Nos. 1, 15, which "provides guidance on the identification of weapons that are 'copies' or 'duplicates' of the enumerated Assault weapons that are banned under Massachusetts law." *See* Amended Compl. Exhibit G (ECF Doc. No. 15-7).  The Attorney General moved to dismiss the Amended Complaint in January 2017.  *See* ECF Doc. No. 22.  The Court denied the motion in part, but it agreed with the Attorney General that "a facial challenge to the Notice would be inappropriate for the reasons the Attorney General outlines."  *See Pullman Arms, Inc. v. Healey*, 301 F. Supp. 3d 227, 232 (D. Mass. 2018).  The Court therefore limited Plaintiffs' challenge to a claim that the Enforcement Notice is vague "as applied" to a limited number of makes and models of semi-automatic rifles named in the Amended Complaint, together with a procedural due process challenge to application of the Enforcement Notice to those weapons. *See id.* at 232; *see also Pullman Arms, Inc. v. Healey*, 364 F. Supp. 3d 118, 122 (D. Mass. 2019) (identifying the remaining claims).  This Court emphasized that it is "abundantly clear that the portion of this case that survives the motion to dismiss is limited to the question of whether or not the firearms enumerated by the plaintiffs do or do not fall within the scope of the Attorney General's intent with respect [to] the definition of banned assault weapons." *Pullman Arms*, 301 F. Supp. 3d at 233-34.

Thus narrowed, Plaintiffs' remaining claims only concern application of the Enforcement Notice to the following semi-automatic rifles:  (1) the Smith & Wesson M&P 15-22 and other

---

[1] Defendant reserves the right to seek to limit those depositions.  They are raised here only to give the Court a complete understanding of the scope of Plaintiffs' discovery plan.

4

.22 caliber rimfire AR-15 style rifles;[2] (2) the Springfield Armory M1A; (3) the IWI Tavor; (4) the Kel-Tec RFB; (5) the FN PS90; (6) the Kel-Tec Sub 2000; and (7) the Berretta CX4 Storm.[3]  *See* Amended Compl., Prayer for Relief ¶¶ 1, 5; Amended Compl., ¶¶ 62, 63, 68-71, 77-78, 81-83, 92-93, 96-98.  With respect to the first two types of rifles at issue, the Attorney General had publicly announced that these weapons were not covered by the Enforcement Notice and therefore were not illegal "copies or duplicates" of enumerated assault weapons *before the Complaint in this case was even filed*.  *See* Amended Compl. Exhibit I.  As to the other five rifle models named in the Amended Complaint, it has always been clear to "person[s] of ordinary intelligence"—and especially to gun dealers across Massachusetts—that those weapons are not "copies or duplicates" of weapons enumerated in the Assault Weapons Ban, as interpreted by the Enforcement Notice.  *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (internal quotation marks omitted).  Not surprisingly, in her responses to Plaintiffs' first set of interrogatories and requests for admissions, the Attorney General confirmed that these weapons are not "copies or duplicates" of enumerated assault weapons under the Assault Weapons Ban and Enforcement Notice.  *See* Exhibits 9 (Defendant's Response to Interrogatories Nos. 3-8, 10, 11); Exhibit 11 (Defendant's Response to Requests for Admission Nos. 1-6, 11-16, 18-23, 25-30, 32-37).  Thus, the Plaintiffs have clarity with respect to every weapon identified in their Amended Complaint.

---

[2] The Smith & Wesson M&P 15-22 is a type of .22 caliber rimfire AR-15 style rifle.  *See* Amended Compl. ¶ 63.

[3] The Amended Complaint does not seek any relief with respect to the Kel-Tec Sub 2000 or Berretta CX4 Storm.  *See* Amended Compl., Prayer for Relief ¶¶ 1, 5.  However, because these rifles are identified by name in the Amended Complaint, the Attorney General assumes, for purposes of this motion, that Plaintiffs seek relief with respect to these additional rifles.  The Amended Complaint also claims that the Enforcement Notice is vague as applied to MK 14 EBR rifles, *see* Amended Compl. ¶ 51; however, it is the Attorney General's understanding that the MK 14 EBR is a designation for a class of weapons rather than a specific, currently manufactured semi-automatic make and model of weapon that can be evaluated pursuant to the Enforcement Notice.  *See* Exhibit 11 (Defendant's Response to Request for Admission No. 39).

## ARGUMENT

### THE SUBPOENAS SHOULD BE QUASHED BECAUSE THE PLAINTIFFS SEEK DISCOVERY THAT IS NOT RELEVANT TO ANY PARTY'S REMAINING CLAIM OR DEFENSE, IS NOT PROPORTIONAL TO THE NEEDS OF THIS CASE, AND IMPOSES AN UNDUE BURDEN ON THE ATTORNEY GENERAL AND THE POLICE DEPARTMENTS.

First and foremost, "[a] Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." *In re New England Compounding Pharmacy, Inc. Products Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013) (citing *Miller v. Allstate Fire & Cas. Ins. Co.*, No. 07 Civ. 260, 2009 WL 700142, at *2 (W. D. Pa. Mar. 17, 2009)). Rule 26(b)(1) permits parties to obtain discovery:

> [R]egarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* Although the scope of the rule is broad, "the rule vests the trial judge with broad discretion to tailor discovery narrowly." *Cutter v. HealthMarkets, Inc.*, No. 10-11488-JLT, 2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011) (quoting *Crawford-El v. Britton,* 523 U.S. 574, 598, (1998)). In so doing, the Court considers the relevance of the discovery material sought to the parties' claims or defenses, *see, e.g.*, *Cutter*, 2011 WL 613703, at *2, as well as the "proportionality of *all* discovery" sought to the needs of the case. *Securities & Exchange Comm'n v. Navallier & Assocs., Inc.*, No. 17-11633-DJC, 2019 WL 688164, at *2 (D. Mass. Feb. 19, 2019) (quoting advisory committee notes to 2015 amendments to Rule 26(b)(1)) ("*Navallier*"). Where a party's "proposed discovery is outside the scope permitted by Rule 26(b)(1)," or where discovery sought is "unreasonably cumulative or duplicative," the court "must limit" the proposed discovery "[o]n motion or on its own." Fed. R. Civ. P. 26(b)(2)(C); *see Accusoft Corp. v. Quest Diagnostics,*

*Inc.*, No. 12-40007-FDS, 2012 WL 1358662, at *11 (D. Mass. April 18, 2012) ("Because this Court could effect the relief that defendants request *sua sponte,* it is not precluded from reaching the same result merely because defendants have taken the initiative."); *see also Navallier*, No. 17-11633-DJC, 2019 WL 688164, at *2.

The information sought through the four third-party subpoenas to the Police Departments is not relevant to the matters at issue in this case because the topics identified for testimony largely relate to Plaintiffs' original claim challenging the Enforcement Notice as impermissibly vague *on its face*—a claim that this Court has already rejected and for which Plaintiffs cannot obtain relief. *See Pullman Arms*, 301 F. Supp. 3d at 232-34. Specifically, Plaintiffs seek to depose the Police Departments about their "[k]nowledge and interpretation of the terms 'copies' and 'duplicates' of assault weapons appearing in G.L. c. 140, § 121, before July 20, 2016," *see* Exhibits 1-8, Schedule A ¶ 2; their "[k]nowledge of the meaning and application of the 'Interchangeability' and 'Similarity' Tests appearing in the Enforcement Notice," *see id.* ¶ 3; internal and external communications regarding interpretation of the Enforcement Notice, *see id.* ¶¶ 4, 5, 7, 8; and "[g]uidance of any kind…concerning the Enforcement Notice." *See id.* ¶ 9. These inquiries are not limited to the Police Departments' understanding of the Enforcement Notice as it applies to the specific weapons at issue in this case; instead, they seek testimony into matters related to the Enforcement Notice generally. Such inquiries are beyond the scope of this case, which turns solely on "whether or not the firearms enumerated by the plaintiffs do or do not fall within the scope of the Attorney General's intent with respect [to] the definition of banned assault weapons." *Pullman Arms*, 301 F. Supp. 3d at 233-34.

Moreover, insofar as the Plaintiffs intend to ask the Police Departments about the "[a]pplication of the Enforcement Notice and its two tests" to the weapons named in the

Amended Complaint, *see* Exhibits 1-8, Schedule A, ¶ 6, that inquiry is unnecessary where the Attorney General has already communicated unequivocally to the Plaintiffs that these weapons are not "copies or duplicates" of enumerated assault weapons under the Assault Weapons Ban or the Enforcement Notice. *See* Exhibit 9 (Defendant's Response to Interrogatories Nos. 3-8, 10, 11); Exhibit 11 (Defendant's Response to Requests for Admission Nos. 1-6, 11-16, 18-23, 25-30, 32-37). Although the Plaintiffs—who are gun sellers and a trade association that advocates on behalf of the firearms industry, *see* Amended Compl. ¶¶ 5-9—have had access to more than enough information to apply the Enforcement Notice on their own from the outset, the Attorney General's discovery responses eliminated any possible doubt as to the legality of the weapons named in the Amended Complaint. Thus, the Plaintiffs have no need to obtain duplicative information on this question from four unrelated Police Departments—police departments that are not parties to this lawsuit and that have indicated, through their responses to Plaintiffs' document demands, that they have little factual basis for testifying on the matters at issue in this case. *See* Exhibits 12-14. And, to the extent the Plaintiffs seek to improperly obtain *expert* testimony from the Police Departments, that aim would be at odds with Rule 45, which authorizes this Court to quash any subpoena that requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute." Fed. R. Civ. P. 45(d)(3)(B)(ii). The burden of requiring the Police Departments to travel to, prepare for, and sit for depositions, and requiring the Attorney General to participate in the depositions, is therefore clearly out of proportion to the Plaintiffs' need for the depositions. *See* Fed. R. Civ. P. 26(b)(1). And the lack of any demonstrable need for these depositions is especially clear in light of the substantial discovery that Plaintiffs have already obtained from the Attorney General and from nonparties to this case. *See supra*, at 2-3.

Indeed, the burden on nonparties is a factor entitled to "special weight" in the context of a subpoena under Rule 45. *See Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 15-MC-94003-TSH, 2015 WL 5934760, at *3 (D. Mass. June 18, 2015), *report and recommendation adopted*, No. 15-MC-94003-TSH, 2015 WL 5944286 (D. Mass. Feb. 2, 2015) ("'Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.'") (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)). In determining whether a subpoena imposes an "undue burden" on a non-party, the Court considers "(1) the relevance of the information requested; (2) the need of the [party] for the [testimony]; (3) the breadth of the … request; (4) the time period covered by the request; (5) the particularity with which the party describes the [request]; (6) the burden imposed; and (7) the expense and inconvenience to the non-party." *Rockstar Consortium US LP v. Google, Inc.*, No. 14-91322-FDS, 2015 WL 5972422, at *4 (D. Mass. Oct. 14, 2015) (quoting *LSI Corp. v. Vizio, Inc.*, No. 12-mc-91068-DJC, 2012 WL 1926924, at *3 (D. Mass. May 24, 2012)).

Application of these factors to the subpoenas also cuts against allowing the third-party depositions to proceed, particularly where the subpoenas target local law enforcement officials. The topics identified for testimony are irrelevant to the claims remaining in this matter, and the discovery process has made perfectly clear that the Plaintiffs are not confused as to the application of the Enforcement Notice to the weapons identified in the Amended Complaint. Moreover, Plaintiffs have made no allegation that any of the Police Departments, nor any law enforcement authorities anywhere in the Commonwealth, have arrested or charged any

individual for possessing or selling any of the weapons at issue in this case. Thus, there is no indication that the Police Departments have experience applying the Assault Weapons Ban or the Enforcement Notice to those weapons.

Plaintiffs therefore have no need for the Police Departments' testimony. And allowing these subpoenas to proceed will create an unnecessary burden and expense for the Attorney General and local law enforcement officials, who will have to travel to Plaintiffs' counsel's offices in Southborough, Massachusetts on extremely short notice to be deposed. *See* Exhibits 1-8. This would needlessly distract law enforcement officials from their public safety obligations and would waste state and local resources at taxpayers' expense. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779-80 (9th Cir. 1994) (court may "limit discovery of agency documents or testimony of agency officials if the desired discovery is relatively unimportant when compared to the government interests in conserving scarce government resources"); *Watts v. Securities & Exchange Comm'n*, 482 F.3d 501, 509 (D.C. Cir. 2007) ("Discovery under Rules 26 and 45 must properly accommodate 'the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'" (quoting *Exxon Shipping*, 34 F.3d at 779)).

## CONCLUSION

For the foregoing reasons, the Attorney General, with the assent of the Worcester Police Department, the Orange Police Department, the Agawam Police Department, and the Holyoke Police Department, seeks an order quashing the four subpoenas issued to the Police Departments, together with such relief as is necessary to prevent the scheduled depositions from going forward while this motion is pending.

>Respectfully submitted,
>
>MAURA HEALEY
>ATTORNEY GENERAL
>
> /s/ Elizabeth Kaplan
>Elizabeth Kaplan, BBO #568911
>Julia E. Kobick, BBO #680194
>Assistant Attorneys General
>Gary Klein, BBO #560769
>Special Assistant Attorney General
>Office of the Attorney General
>One Ashburton Place, 20th Floor
>Boston, Massachusetts 02108
>(617) 963-2559
>elizabeth.kaplan@state.ma.us
>gary.klein@state.ma.us
>julia.kobick@state.ma.us

Date:  July 18, 2019

**CERTIFICATE OF SERVICE**

I certify that this document filed through the CM/ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 18, 2019.

>/s/ Elizabeth Kaplan
>Elizabeth Kaplan
>Assistant Attorney General