# EXHIBIT 9

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PULLMAN ARMS INC., GUNS and GEAR, LLC, )
PAPER CITY FIREARMS, LLC, )
GRRR! GEAR, INC., and )
NATIONAL SHOOTING SPORTS )
FOUNDATION, INC. )
         Plaintiffs, )  CASE NO.: 4:16-cv-40136-TJH
v. )
MAURA HEALEY, ATTORNEY GENERAL )
FOR THE COMMONWEALTH OF )
MASSACHUSETTS )
         Defendant. )

### DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO THE ATTORNEY GENERAL

Pursuant to Fed. R. Civ. P., Rule 33, Plaintiffs submitted to the Defendant Maura Healey, in her capacity as Attorney General for the Commonwealth of Massachusetts ("AG"), the following Interrogatories to be answered under oath. Set out below the Interrogatories are the Attorney General's responses and objections. The Plaintiffs' Definitions and Instructions are retained in this Response solely for the convenience of the parties and without prejudice to the Attorney General's right to object to those Definitions and Instructions in whole or in part.

### Definitions

1. The definitions set forth in D. Mass. LR 26.5 are deemed incorporated by reference, including but not limited to the definitions for the terms and phrases: "communication," "document," "identify (with respect to persons)" identify (with respect to documents)", "plaintiff," "defendant," "person," "concerning," and "state the basis."

2.  "Plaintiffs" shall refer to Pullman, Arms, Inc., Guns and Gear, LLC, Paper City Firearms, LLC, GRRR! Gear, Inc., and National Shooting Sports Foundation Inc.

3.  "Attorney General" shall refer to Defendant Attorney General Maura Healey and anyone acting on her behalf.

4.  "Enforcement Notice" refers to the Enforcement Notice issued by the Office of the Attorney General on July 20, 2016, attached to the Amended Complaint as Exhibit G.

## INTERROGATORIES

### INTERROGATORY NO. 1

Please identify the persons assisting with drafting or contributing information to answer these interrogatories.

### RESPONSE

The Attorney General ("AG") objects to this interrogatory on the ground that the meaning of the terms "assisting with drafting" and "contributing information" is unclear.

Subject to the above objection:

Gary Klein, Special Assistant Attorney General
Julia Kobick, Assistant Attorney General, Administrative Law Division
William Porter, Chief, Administrative Law Division
Elizabeth Kaplan, Assistant Attorney General, Administrative Law Division
David Bolcome, [Formerly] Civil Investigator

### INTERROGATORY NO. 2

Please identify all persons who assisted with drafting the Enforcement Notice.

### RESPONSE

The AG objects to this interrogatory on the basis that her response is not relevant to this matter within the meaning of Fed. R. Civ. P. 26(b)(1); nor is the request reasonably calculated to lead to the discovery of admissible evidence. More specifically, the Enforcement Notice is a document that speaks for itself and the names of the persons who assisted with drafting it are not relevant to any issue in this proceeding.

The AG also objects on the ground of burdensomeness and overbreadth for reasons including that the meaning of the term "assisted with drafting" is unclear.

Subject to the above objections and the agreed limitation that the AG need only provide the names of individuals that had policy-level input into "drafting the Notice of Enforcement", the AG provides the following response. By agreement, this response will be kept confidential by Plaintiffs and their Counsel.



### INTERROGATORY NO. 3

Please state whether the firearm known as the FNPS 90 is a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice, and if so, please identify which test the FNPS 90 firearm meets and state the basis why the firearm constitutes a prohibited assault weapon.

### RESPONSE

This answer is made subject to the limitations that (i) the AG is not the only law enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban, and (ii) without inspection, the Attorney General can offer no opinion about

3

whether a particular individual weapon is a prohibited assault weapon because, among other things, an individual weapon may have been modified to include two or more prohibited features and therefore would be a prohibited Assault weapon under G.L. c. 140, § 121 (by virtue of its incorporation of the "Features Test" contained in the 1994 federal assault weapons ban). Subject to these limitations, the AG states that the FNPS 90, as currently designed and as commonly constructed and configured by the manufacturer, is not a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice.

**INTERROGATORY NO. 4**

Please state whether the firearm known as the IWI Tavor is a "prohibited Assault weapon" within the meaning of the Enforcement Notice under either the Similarity Test or the Interchangeability test in the Enforcement Notice, and if so, please identify which test the IWI Tavor firearm meets and state the basis why the firearm constitutes a prohibited assault weapon.

**RESPONSE**

This answer is made subject to the limitations that (i) the AG is not the only law enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban, and (ii) without inspection, the Attorney General can offer no opinion about whether a particular individual weapon is a prohibited assault weapon because, among other things, an individual weapon may have been modified to include two or more prohibited features and therefore would be a prohibited Assault weapon under G.L. c. 140, § 121 (by virtue of its incorporation of the "Features Test" contained in the 1994 federal assault weapons ban). Subject to these limitations, the AG states that the IWI Tavor, as currently designed and as commonly constructed and configured by the manufacturer, is not a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice.

**INTERROGATORY NO. 5**

Please state whether the firearm known as the Kel-Tec RFB is a "prohibited Assault weapon" within the meaning of the Enforcement Notice under either the Similarity Test or the Interchangeability test in the Enforcement Notice, and if so, please identify which of the two tests the Kel-Tech RFB firearm meets and state the basis why the firearm constitutes a prohibited assault weapon.

**RESPONSE**

This answer is made subject to the limitations that (i) the AG is not the only law

4

enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban, and (ii) without inspection, the Attorney General can offer no opinion about whether a particular individual weapon is a prohibited assault weapon because, among other things, an individual weapon may have been modified to include two or more prohibited features and therefore would be a prohibited Assault weapon under G.L. c. 140, § 121 (by virtue of its incorporation of the "Features Test" contained in the 1994 federal assault weapons ban). Subject to these limitations, the AG states that the Kel-Tec RFB, as currently designed and as commonly constructed and configured by the manufacturer, is not a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice.

**INTERROGATORY NO. 6**

Please state whether the firearm known as the Beretta CX4Storm is a "prohibited Assault weapon" within the meaning of the Enforcement Notice under either the Similarity Test or the Interchangeability test in the Enforcement Notice, and if so, please identify which of the two tests the Beretta CX4 Storm firearm meets and state the basis why the firearm constitutes a prohibited assault weapon.

**RESPONSE**

This answer is made subject to the limitations that (i) the AG is not the only law enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban, and (ii) without inspection, the Attorney General can offer no opinion about whether a particular individual weapon is a prohibited assault weapon because, among other things, an individual weapon may have been modified to include two or more prohibited features and therefore would be a prohibited Assault weapon under G.L. c. 140, § 121 (by virtue of its incorporation of the "Features Test" contained in the 1994 federal assault weapons ban). Subject to these limitations, the AG states that the Beretta CX4 Storm, as currently designed and as commonly constructed and configured by the manufacturer, is not a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice.

**INTERROGATORY NO. 7**

Please state whether the firearm known as the Kel-Tech Sub 2000 is a "prohibited Assault weapon" within the meaning of the Enforcement Notice under either the Similarity Test or the Interchangeability test in the Enforcement Notice, and if so, please identify which of the two tests the Kel-Tech 2000 firearm meets and state the basis why the firearm constitutes a

prohibited assault weapon.

**RESPONSE**

This answer is made subject to the limitations that (i) the AG is not the only law enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban, and (ii) without inspection, the Attorney General can offer no opinion about whether a particular individual weapon is a prohibited assault weapon because, among other things, an individual weapon may have been modified to include two or more prohibited features and therefore would be a prohibited Assault weapon under G.L. c. 140, § 121 (by virtue of its incorporation of the "Features Test" contained in the 1994 federal assault weapons ban). Subject to these limitations, the AG states that the Kel-Tec Sub 2000, as currently designed and as commonly constructed and configured by the manufacturer, is not a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice.

**INTERROGATORY NO. 8**

Please state whether the firearm known as the Smith and Wesson 15-22 is a "prohibited Assault weapon" within the meaning of the Enforcement Notice under either the Similarity Test or the Interchangeability test in the Enforcement Notice, and if so, please identify which test the Smith and Wesson 15-22 meets and state the basis why the firearm constitutes a prohibited assault weapon.

**RESPONSE**

This answer is made subject to the limitations that (i) the AG is not the only law enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban, and (ii) without inspection, the Attorney General can offer no opinion about whether a particular individual weapon is a prohibited assault weapon because, among other things, an individual weapon may have been modified to include two or more prohibited features and therefore would be a prohibited Assault weapon under G.L. c. 140, § 121 (by virtue of its incorporation of the "Features Test" contained in the 1994 federal assault weapons ban). Subject to these limitations, the AG states that the Smith and Wesson 15-22, as currently designed and as commonly constructed and configured by the manufacturer, is not a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice.

**INTERROGATORY NO. 9**

Please state the basis why and how the Attorney General determined that Ruger Mini 14's and substantially similar model weapons are not assault weapons within the meaning of

G.L. c. 140 §121 and the Enforcement Notice, as reflected on Exhibit I to the Amended Complaint.

**RESPONSE**

The AG objects to this interrogatory on the basis that her response is not relevant to this matter within the meaning of Fed. R. Civ. P. 26(b)(1); nor is the request reasonably calculated to lead to the discovery of admissible evidence. More specifically, the fact that a particular type of weapon *is not* an assault weapon as defined by Massachusetts law is not relevant to the issues in this case because the Enforcement Notice does not impinge upon the sale or transfer of any such weapon by the Plaintiffs. The AG further objects on the grounds that this interrogatory misrepresents Exhibit I which, in relevant part, is limited to a statement that the Ruger Mini 14 is not a "copy or duplicate" of an "enumerated assault weapon" under the Enforcement Notice. The Ruger Mini 14, in some configurations, may be a prohibited assault weapon if it meets the Features Test under the statutory definition of "assault weapon" in G.L. c. 140, § 121.

Subject to these objections, the Attorney General states that the Ruger Mini 14 is not a copy or duplicate of a prohibited assault weapon under the Similarity Test in the Enforcement Notice because, based on evaluation, its internal functional components are not substantially similar in construction and configuration to those of any Enumerated Weapon. The Attorney General further states that the Ruger Mini 14 is not a copy or duplicate of a prohibited assault weapon under the Interchangeability Test in the Enforcement Notice because, based on evaluation, its receiver is not the same as or interchangeable with the receiver of any Enumerated Weapon.

**INTERROGATORY NO. 10**

Please state the basis why and how the Attorney General determined that any .22 caliber rimfire rifles are not assault weapons within the meaning of G.L. c. 140 §121 and the Enforcement Notice, as reflected on Exhibit I to the Amended Complaint.

**RESPONSE**

The AG objects to this interrogatory on the basis that her response is not relevant to this matter within the meaning of Fed. R. Civ. P. 26(b)(1); nor is the request reasonably calculated to lead to the discovery of admissible evidence. More specifically, the fact that a particular type of weapon *is not* an assault weapon as defined by Massachusetts law is not relevant to the issues in this case because the Enforcement Notice does not impinge upon the sale or transfer of any such weapon by the Plaintiffs. The AG further objects on the grounds that this interrogatory misrepresents Exhibit I which, in relevant part, is limited to a statement that .22 caliber rimfire rifles are not "copies or duplicates" of an "enumerated assault weapon" under the Enforcement Notice. Such rifles, in some configurations, may be prohibited assault weapons if they meet the Features Test under the statutory definition of "assault weapon" in G.L. c. 140, § 121.

7

Subject to these objections, the Attorney General states that .22 caliber rimfire rifles are not copies or duplicates of a prohibited assault weapon under the Similarity Test in the Enforcement Notice because, based on evaluation, their internal functional components are not substantially similar in construction and configuration to those of any Enumerated Weapon. The Attorney General further states that .22 caliber rimfire rifles are not copies or duplicates of a prohibited assault weapon under the Interchangeability Test in the Enforcement Notice because, based on evaluation, their receivers are not the same as or interchangeable with the receiver of any Enumerated Weapon.

**INTERROGATORY NO. 11**

Please state the basis why and how the Attorney General determined that the Springfield Armory M1A and substantially similar model weapons are not assault weapons within the meaning of G.L. c. 140 §121 and the Enforcement Notice, as reflected on Exhibit I to the Amended Complaint.

**RESPONSE**

The AG objects to this interrogatory on the basis that her response is not relevant to this matter within the meaning of Fed. R. Civ. P. 26(b)(1); nor is the request reasonably calculated to lead to the discovery of admissible evidence. More specifically, the fact that a particular type of weapon *is not* an assault weapon as defined by Massachusetts law is not relevant to the issues in this case because the Enforcement Notice does not impinge upon the sale or transfer of any such weapon by the Plaintiffs. The AG further objects on the grounds that this interrogatory misrepresents Exhibit I which, in relevant part, is limited to a statement that the Springfield Armory M1A is not a "copy or duplicate" of an "enumerated assault weapon" under the Enforcement Notice. The Springfield Armory M1A, in some configurations, may be a prohibited assault weapon if it meets the Features Test under the statutory definition of "assault weapon" in G.L. c. 140, § 121.

Subject to these objections, the Attorney General states that the Springfield Armory M1A is not a copy or duplicate of a prohibited assault weapon under the Similarity Test in the Enforcement Notice because, based on evaluation, its internal functional components are not substantially similar in construction and configuration to those of any Enumerated Weapon. The Attorney General further states that the Springfield Armory M1A is not a copy or duplicate of a prohibited assault weapon under the Interchangeability Test in the Enforcement Notice because, based on evaluation, its receiver is not the same as or interchangeable with the receiver of any Enumerated Weapon.

**INTERROGATORY NO. 12**

Identify by name and position all Attorney General employees who received and

responded to phone inquiries regarding the applicability of the Enforcement Notice to particular firearms.

**RESPONSE**

The AG objects to this interrogatory on the basis that her response is not relevant to this matter within the meaning of Fed. R. Civ. P. 26(b)(1); nor is the request reasonably calculated to lead to the discovery of admissible evidence. More specifically, the Enforcement Notice is a document that speaks for itself and the names of persons who received and responded to inquiries about it is not relevant to any issue in this proceeding.

The AG further objects on the basis to the extent that this interrogatory calls for disclosure of information that the AG is legally precluded from making public under Mass. R. Crim. P. 5 and which if disclosed could obstruct or impede criminal investigations. The AG is further legally precluded from disclosing Criminal Record Offender Information under M.G.L. c. 6, § 178 and from providing records divulging or tending to divulge the names and addresses of persons who own or possess firearms, rifles, shotguns, machine guns and ammunition pursuant to M.G.L. c. 66, § 10(d).

The AG also objects on the basis of well established common law privileges including the privilege protecting law enforcement investigative information and techniques, *see, e.g., Puerto Rico v. United States*, 490 F.3d 50, 62-64 (1st Cir. 2007), and the privilege protecting communications made to her or her office to secure the enforcement of law. *See e.g., District Attorney v. Flatley*, 419 Mass. 507, 510 (1995). The AG further objects on the ground that inquiries made and responses to such inquiries under the Enforcement Notice are confidential.

Subject to the above objections:

> Gary Klein, [formerly] Senior Trial Counsel, Public Protection and Advocacy Bureau
> Dan Krockmalnic, [formerly] Assistant Attorney General, Consumer Protection Division
> David Bolcome, [formerly] Civil Investigator
> Kevin McCarthy, Chief, Civil Investigations
> Samantha Shusterman, Assistant Attorney General, Consumer Protection Division

Note: Position designations are as of the date that the Enforcement Notice was issued. The designation "formerly" means that the individual no longer holds that position.

**INTERROGATORY NO. 13**

Identify by name and position all Attorney General employees who received and responded to email inquiries regarding the applicability of the Enforcement Notice to particular

9

firearms.

**RESPONSE**

Same as response to Interrogatory No. 12.

Signed under the pains and penalties of perjury this ___ day of April, 2019, on behalf of Maura Healey, in her capacity as Attorney General, based on information known to the undersigned, or information made available to the undersigned, which to the best of his understanding is true.

_____
Gary Klein
Special Assistant Attorney General
Office of the Attorney General

As to Objections:

_____
Julia E. Kobick, BBO # 680194
William W. Porter, BBO # 542207
Elizabeth Kaplan, BBO # 568911
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2559
julia.kobick@state.ma.us

Date: April 23, 2017

**CERTIFICATE OF SERVICE**

I certify that this document will be served on counsel for all Plaintiffs on April 23, 2019, via first class mail, postage prepaid.

_____
Elizabeth Kaplan
Assistant Attorney General