# EXHIBIT 12

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PULLMAN ARMS INC., GUNS and GEAR, LLC, PAPER CITY FIREARMS, LLC, GRRR! GEAR, INC., and NATIONAL SHOOTING SPORTS FOUNDATION, INC.

Plaintiffs,

v.

MAURA HEALEY, ATTORNEY GENERAL FOR THE COMMONWEALTH OF MASSACHUSETTS

Defendant.

CASE NO.: 4:16-cv-40136-TJH

A TRUE COPY ATTEST

Process Server & Disinterested Person

COPY

**DOCUMENT SUBPOENA**

TO: Keeper of Records
Agawam Police Department
681 Springfield Street
Feeding Hills, MA 01030

Greetings:

YOU ARE HEREBY COMMANDED in accordance with the provisions of Rule 45 of the Federal Rules of Civil Procedure to produce documents, electronically stored information and tangible things to the Plaintiffs, care of their attorney, David R. Kerrigan, at Kenney & Sams, P.C., Reservoir Corporate Center, 144 Turnpike Road, Southborough, MA 01772, within 21 days of the service of this subpoena. You are required to produce the documents, electronically stored information, and tangible things listed on the attached Schedule A. Please see the requirements and protections afforded persons subject to this subpoena attached as Schedule B.

**Hereof fail not as you will answer your default under the pains and penalties in the law in that behalf made and provided.**

Christopher A. Kenney, BBO# 556511
cakenney@kandslegal.com
David R. Kerrigan, BBO# 550843
drkerrigan@kandslegal.com
Kenney & Sams, P.C.
Reservoir Corporate Center
144 Turnpike Road, Suite 350
Southborough, MA 01772
(508) 490-8500

Dated: April 23, 2019

Notary Public: Christina Kennedy
My Commission Expires: 7/30/21

Copy

**SCHEDULE A**

You are required to produce:

1. All documents, notes, correspondence, memoranda, or records of any kind, whether hard copy or electronic, concerning the Enforcement Notice entitled "Prohibited Assault Weapons," issued on July 20, 2016 by the Office of the Attorney General ("Enforcement Notice"), and all documents concerning subsequent amendments, and interpretations of the Enforcement Notice, including those entitled "Guns That Are Not Assault Weapons."
2. All documents, notes, memoranda, or records of any kind, whether hard copy or electronic memorializing discussions, meetings, calls, conferences, or statements about the Enforcement Notice and any subsequent notice, amendment and interpretation of the Enforcement Notice, including those entitled "Guns That Are Not Assault Weapons."
3. All documents concerning communications with any person, business, agency, office or department, including without limitation any other law enforcement agency or police department concerning the Enforcement Notice and any subsequent notice, amendment and interpretation of the Enforcement Notice, including those entitled "Guns That Are Not Assault Weapons."
4. All documents concerning guidance of any kind provided internally or externally concerning the Enforcement Notice, including without limitation any training, interpretations or presentation materials to or from any person or entity, agency or office concerning the Enforcement Notice.
5. Any documents concerning the interpretation of the terms "copy" or "duplicate"

Copy

and the "similarity" or "interchangeability" tests as they are used in the Enforcement Notice.

6. All documents reflecting or concerning communications between the Agawam Police Department and the Office of the Attorney General interpreting the Enforcement Notice.

7. All documents reflecting or concerning communications between the Agawam Police Department and any person, business, department or agency concerning the Enforcement Notice.

8. All interpretations of the Enforcement Notice provided to any person.

9. All documents concerning questions received from anyone regarding the scope or interpretation of the Enforcement Notice and any subsequent notice, amendment and interpretation entitled "Guns That Are Not Assault Weapons."

10. All documents, including without limitation manufacturers' specifications, pamphlets, product materials, photographs, and drawings concerning the:

    a. Firearms listed in the Enforcement Notice;

    b. Any firearm that is considered a Copy or Duplicate pursuant to the Enforcement Notice; and

    c. Any firearm that is not a Copy or Duplicate pursuant to the Enforcement Notice.

Copy

## SCHEDULE B

**RULE 45**

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) (ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery. (2) Claiming Privilege or Protection. (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications,

or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

Copy

**Eric Gillis**

**From:** Information - MA Chiefs of Police <info@masschiefs.org>
**Sent:** Thursday, July 21, 2016 9:52 AM
**To:** [redacted]
**Subject:** Update from the Attorney General: Massachusetts Assault Weapons Ban

# Update from the Attorney General: Massachusetts Assault Weapons Ban

Dear MCOPA Members:

Attached please find a letter and Enforcement Notice from Attorney General Maura Healey relative to the Massachusetts Assault Weapons Ban.

Click here to download.

Respectfully,
Eric R. Atstupenas

---

Eric R. Atstupenas, Esq.
General Counsel
Massachusetts Chiefs of Police Association, Inc.
353 Providence Road
South Grafton, Massachusetts 01560
Office: (508) 375-7793
Mobile: [redacted]
legal@masschiefs.org



Municipal Police Institute, Inc., 353 Providence Road, South Grafton, MA 01560

SafeUnsubscribe™

Forward email | Update Profile | About our service provider

Sent by info@masschiefs.org

Copy



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL

ONE ASHBURTON PLACE
BOSTON, MASSACHUSETTS 02108

MAURA HEALEY
ATTORNEY GENERAL

TEL: (617) 727-2200
www.mass.gov/ago

July 19, 2016

Dear Sir/Madam:

Today the Office of the Attorney General (AGO) is issuing the enclosed Enforcement Notice to provide gun manufacturers, licensed dealers, and the public with greater clarification on the Massachusetts Assault Weapons Ban, G.L. c. 140, §§ 128 and 131M, and the definition of "Assault weapon" contained in G.L. c. 140, § 121. In particular, this notice provides information on weapons that are prohibited "copies" or "duplicates" of the enumerated Assault weapons that are banned under Massachusetts law. It will be effective as of July 20, 2016.

The AGO will be available as a resource for all gun dealers who have questions about compliance with any provisions of the Massachusetts Assault Weapons Ban or this Enforcement Notice. To that end, I invite you to contact my office with any inquiries at 617.963.2775.

We appreciate your hard work and cooperation to ensure public safety and reduce gun violence and illegal gun sales in Massachusetts.

Very truly yours,

Maura Healey

COPY

**July 20, 2016**

## ENFORCEMENT NOTICE

## PROHIBITED ASSAULT WEAPONS

*The Office of the Attorney General (AGO) is issuing this Enforcement Notice to provide a framework to gun sellers and others for understanding the definition of "Assault weapon" contained in G.L. c. 140, § 121 ("Section 121"). In particular, this notice provides guidance on the identification of weapons that are "copies" or "duplicates" of the enumerated Assault weapons that are banned under Massachusetts law.*

*This guidance will be applied to future transfers of "Assault weapons," as that term is defined in Section 121. This may include, without limitation, the AGO's enforcement of criminal laws such as G.L. c. 140, §§ 128 and 131M, and civil laws such as G.L. c. 93A.*

**Background:**

The sale, transfer, or possession of an "Assault weapon," as defined in Section 121, is unlawful pursuant to G.L. c. 140, §§ 128 and 131M.

"Assault weapon" is defined as a:

> semiautomatic assault weapon as defined in the federal Public Safety and Recreational Firearms Use Protection Act, 18 U.S.C. section 921(a)(30) as appearing in such section on September 13, 1994, and shall include, but not be limited to, any of the weapons, **or copies or duplicates of the weapons** [emphasis added], of any caliber, known as:[1]
>
> (i) Avtomat Kalashnikov (AK) (all models);
> (ii) Action Arms Israeli Military Industries UZI and Galil;
> (iii) Beretta Ar70 (SC-70);
> (iv) Colt AR-15;
> (v) Fabrique National FN/FAL, FN/LAR and FNC;
> (vi) SWD M-10, M-11, M-11/9 and M-12;
> (vii) Steyr AUG;
> (viii) INTRATEC TEC-9, TEC-DC9 and TEC-22; and
> (ix) revolving cylinder shotguns, such as, or similar to, the Street Sweeper and Striker 12;
>
> provided, however, that the term assault weapon shall not include:
>
> (i) any of the weapons, or replicas or duplicates of such weapons, specified in appendix A to 18 U.S.C. section 922 as appearing in such appendix on

[1] The enumerated weapons are slightly renumbered here for clarity in light of a redundant numbering scheme in the text of the statute.

September 13, 1994, as such weapons were manufactured on October 1, 1993;

(ii) any weapon that is operated by manual bolt, pump, lever or slide action;

(iii) any weapon that has been rendered permanently inoperable or otherwise rendered permanently unable to be designated a semiautomatic assault weapon;

(iv) any weapon that was manufactured prior to the year 1899;

(v) any weapon that is an antique or relic, theatrical prop or other weapon that is not capable of firing a projectile and which is not intended for use as a functional weapon and cannot be readily modified through a combination of available parts into an operable assault weapon;

(vi) any semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition; or

(vii) any semiautomatic shotgun that cannot hold more than five rounds of ammunition in a fixed or detachable magazine.

Section 121 incorporates by reference the definition of "semiautomatic assault weapon" in the former federal assault weapons ban. This establishes that in Massachusetts weapons with the following characteristics are also within the definition of Assault weapon:[2]

18 U.S.C. section 921(a) (30) as appearing in such section on September 13, 1994:

(B) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least 2 of—

(i) a folding or telescoping stock;

(ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;

(iii) a bayonet mount;

(iv) a flash suppressor or threaded barrel designed to accommodate a flash suppressor; and

(v) a grenade launcher;

(C) a semiautomatic pistol that has an ability to accept a detachable magazine and has at least 2 of—

(i) an ammunition magazine that attaches to the pistol outside of the pistol grip;

(ii) a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;

(iii) a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the nontrigger hand without being burned;

---

[2] The former federal assault weapons ban also included the enumerated weapons described in the Commonwealth's definition of "Assault weapons" together with "copies or duplicates of such weapons."

(iv) a manufactured weight of 50 ounces or more when the pistol is unloaded; and
(v) a semiautomatic version of an automatic firearm; and

(D) a semiautomatic shotgun that has at least 2 of—

(i) a folding or telescoping stock;
(ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;
(iii) a fixed magazine capacity in excess of 5 rounds; and
(iv) an ability to accept a detachable magazine.

**Summary:**

Under the Commonwealth's statutory definition, the following are "Assault weapons":

1) Weapons on the list enumerated in G.L. c. 140, § 121, such as the Colt AR-15 ("Enumerated Weapons");

2) "Copies" or "Duplicates" of the Enumerated Weapons ("Copies or Duplicates"); and

3) Weapons with certain features as identified in former 18 U.S.C. § 921(a)(30) ("Features Test").

The AGO is issuing this enforcement notice to explain: (i) what it will deem to be "Copies or Duplicates" of the Enumerated Weapons in Section 121, and (ii) the distinction between Assault weapons that are "Copies or Duplicates" of Enumerated Weapons and Assault weapons that are defined by the Features Test above.

**Guidance:**

A weapon is a Copy or Duplicate and is therefore a prohibited Assault weapon if it meets one or both of the following tests and is 1) a semiautomatic rifle or handgun that was manufactured or subsequently configured with an ability to accept a detachable magazine, or 2) a semiautomatic shotgun.[3]

1. *Similarity Test*: A weapon is a Copy or Duplicate if its internal functional components are substantially similar in construction and configuration to those of an Enumerated Weapon. Under this test, a weapon is a Copy or Duplicate, for example, if the operating system and firing mechanism of the weapon are based on or otherwise substantially similar to one of the Enumerated Weapons.

[3] A weapon is not a Copy or Duplicate under this Guidance if it meets one or more of the exceptions ((i)-(vii)) contained in the statutory definition of Assault weapon in Section 121.

Copy

2. *Interchangeability Test*: A weapon is a Copy or Duplicate if it has a receiver that is the same as or interchangeable with the receiver of an Enumerated Weapon. A receiver will be treated as the same as or interchangeable with the receiver on an Enumerated Weapon if it includes or accepts two or more operating components that are the same as or interchangeable with those of an Enumerated Weapon. Such operating components may include, but are not limited to: 1) the trigger assembly; 2) the bolt carrier or bolt carrier group; 3) the charging handle; 4) the extractor or extractor assembly; or 5) the magazine port.

If a weapon meets one of the above tests, it is a Copy or Duplicate (and therefore a prohibited Assault weapon), even if it is marketed as "state compliant" or "Massachusetts compliant."

The fact that a weapon is or has been marketed by the manufacturer on the basis that it is the same as or substantially similar to one or more Enumerated Weapons will be relevant to identifying whether the weapon is a Copy or Duplicate (and therefore a prohibited Assault weapon) under the applicable test(s).

Under Section 121, the Features Test in the former 18 U.S.C. section 921(a)(30) remains an independent basis for qualification as an Assault weapon.

If a weapon, as manufactured or originally assembled, is a Copy or Duplicate under one or both of the applicable tests, it remains a prohibited Assault weapon even if it is altered by the seller. Therefore, a Copy or Duplicate will be treated as an Assault weapon even if it is altered, for example, by pinning the folding or telescoping stock in a fixed position, by removing the pistol grip, by removing a bayonet mount or flash suppressor, or by preventing the weapon from accepting a detachable magazine.

Purely cosmetic similarities to an Enumerated Weapon, such as finish, appearance, or shape of the stock, or appearance or shape of the rail, will not be treated as relevant to a determination of whether a weapon is a Copy or Duplicate.

**Application of this Enforcement Notice (dealers licensed under G.L. c. 140, § 122):**

The Guidance will not be applied to future possession, ownership or transfer of Assault weapons by dealers, provided that the dealer has written evidence that the weapons were transferred to the dealer in the Commonwealth prior to July 20, 2016, and provided further that a transfer made after July 20, 2016, if any, is made to persons or businesses in states where such weapons are legal.

**Application of this Enforcement Notice (individual gun owners):**

The Guidance will not be applied to possession, ownership or transfer of an Assault weapon obtained prior to July 20, 2016.

The AGO reserves the right to alter or amend this guidance.

Copy

**Eric Gillis**

**From:** Information - MA Chiefs of Police <info@masschiefs.org>
**Sent:** Friday, July 22, 2016 8:01 AM
**To:** [redacted]
**Subject:** Follow-up to the Attorney General's release of an enforcement notice on assault weapons

# Follow-up to the Attorney General's release of an enforcement notice on assault weapons

Chief,

We have received a few questions following the Attorney General's release of an enforcement notice on assault weapons Wednesday. We have been in communication with her throughout this issue and will be having another meeting soon.

First, please understand that the enforcement notice was intended to clarify existing law, not as the creation of a new law or regulations. Second, the Attorney General did not intend that the notice would require any action by police departments with gun shops in their jurisdictions.

In preparation for our meeting, we would appreciate it if chiefs would send us their questions. Please email questions to [redacted]

Thanks.

William G. Brooks III
Chief of Police
Norwood Police Department
137 Nahatan Street
Norwood, MA 02062
781-440-5150



President, Mass. Chiefs of Police Assoc.

Municipal Police Institute, Inc., 353 Providence Road, South Grafton, MA 01560

SafeUnsubscribe™ [redacted]

Forward email | Update Profile | About our service provider

Sent by info@masschiefs.org

Copy