UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

PULLMAN ARMS INC, GUNS and GEAR, LLC, )
PAPER CITY FIREARMS, LLC,                       )
GRRR! GEAR, INC, and                            )
NATIONAL SHOOTING SPORTS                        )
FOUNDATION, INC.                                )
                                                )
                                                )   CASE NO.: 4:16-cv-40136-TJH
                                                )
              Plaintiffs,                       )
                                                )
v.                                              )
                                                )
                                                )
MAURA HEALEY, ATTORNEY GENERAL                  )
FOR THE COMMONWEALTH OF                         )
MASSACHUSETTS                                   )
                                                )
              Defendant.                        )
_____)

**PLAINTIFFS' OPPOSITION
TO DEFENDANT'S MOTION TO QUASH**

After filing unsuccessful motions to dismiss and to stay the action, as well as an appeal to

the First Circuit, the Defendant continues her effort to delay, stall and avoid evidence being

obtained from the very law enforcement officers who are most likely to enforce the Enforcement

Notice that the Notice is vague and can lead to discretionary enforcement, in violation of Due

Process protections.  The testimony sought is relevant to the Plaintiffs' as applied vagueness

claims, particularly when the Attorney General has specifically acknowledged that she is not the

only law enforcement officer with jurisdiction to enforce the statute interpreted by the

Enforcement Notice.  As a result, testimony by the four departments in the cities and towns

where the stores are or were located is relevant and necessary to learn whether they understand

1

its scope, meaning and application to firearms. The Plaintiffs therefor oppose Defendant's Motion to Quash.

## Procedural Background

Plaintiffs filed this action challenging the Enforcement Notice, alleging that the Enforcement Notice's similarity and interchangeability tests to determine what is a copy of a banned assault weapon are too vague to understand and apply to certain identified firearms.  Four retail firearm stores located in Agawam, Orange, Worcester and Holyoke sold firearms listed in the amended complaint and seek a declaration that the notice is not enforceable as to those firearms.

The Notice generated confusion when issued and continues to generate confusion. For example, the amended complaint describes some of the efforts made by the stores to confirm whether firearms fell under the Notice's scope, including placing phone calls to and emailing the Attorney General's office.  One store owner, Chris Noyes, contacted the Attorney General's office just after the Notice issued and asked about the application of the Notice to firearms: she was told to use her best judgment.[1]  Amended Complaint, ¶66.  Another store owner, Judith Szczygiel from Guns and Gear, emailed the Attorney General's office on November, 2016, nearly four months after the Notice issued and two months after the initial complaint was filed, asking whether the Tavor and other, so-called "bullpup" design firearms were allowed to be sold. Gary Klein, the Attorney General's trial counsel in this action, responded by saying the Office had not taken a position on the Tavor at that time, but if it had guidance, it "will add it to the information available on the AGO website." See Exhibit A to this Opposition.

---

[1] Ms. Noyes recently testified to this effect at her deposition, but the transcript is not yet available.

This "non-position" regarding the Tavor and the other listed firearms, except for the .22 calibers, continued for two and a half years.[2]  In April, 2019, the Attorney General somehow figured out whether the firearms listed in the amended complaint met these two Enforcement Notice tests, responding to the Plaintiffs' Interrogatories that the firearms were not banned under the Notice because they did not, in the office's view, meet either of the two tests. Plaintiffs have been left to guess how and why they comply.  Exhibit B to this Opposition.  Importantly, the Attorney General recognized that its newly discovered position did not prevent other law enforcement authorities from taking a different position. "The answer is subject to the limitation[] that (i) the AG is not the only law enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's assault weapons ban…"  Exhibit B to this Opposition, Answer No. 3.

As a result, the Plaintiffs sought deposition testimony from the four police departments where the stores are located to see if they understood the meaning of the similarity and interchangeability tests and their application to listed firearms. The Plaintiffs served notices of deposition and subpoenas under Fed. R. Civ. P. Rules 30(b)(6) and 45 seeking to depose police department designees from those towns in which the Plaintiffs' businesses are or were located. See Exhibits 1-4 to Defendants' Motion. Despite acknowledging that its interpretation is not binding on other law enforcement authorities, the Attorney General now seeks to prevent the Plaintiffs from obtaining this relevant testimony.

---

[2] As to the .22 caliber firearms, the AG issued a purported clarification within a month after the original Enforcement Notice stating that .22 caliber rimfires were not banned assault weapons .  Confusion remained because G.L. c. 140 §121 and the Notice provide that firearms of any caliber are banned if they are copies, and the two Enforcement Notice tests interpret the terms "copies or duplicates." According to the Notice, if a firearm meets one of the two tests, it should be banned, and the clarifications also stated that in case of any inconsistencies between the clarification and the Enforcement Notice the Notice controlled.  Exhibit A to the Amended Complaint, Exhibit C to this Opposition, p. 1.

Because none of the reasons provided are sufficient to deny Plaintiffs the right to obtain this testimony, the Plaintiffs asks that the Court deny the motion and allow the depositions to proceed.

## ARGUMENT

### A.  Legal Standards Governing Vagueness Challenges

Parties to a lawsuit may obtain discovery on any nonprivileged matter that is relevant to the party's claim or defense and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1). In re New England Compounding, Inc. Products Liab. Litig. MDL 13-2419-FDS, 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013).  In an as-applied vagueness challenge, information concerning whether a reasonable person of ordinary intelligence can understand what conduct is prohibited and whether the regulation encourages arbitrary and discriminatory enforcement is relevant to the claims.  Id., see also, Hill v. Colorado, 530 U.S. 703, 732 (2000). A party is entitled to obtain information concerning whether the regulation either: a) fails to provide plaintiffs with notice of what is prohibited; or b) fails to limit sufficiently the discretion of the officers charged with enforcing the regulation against the plaintiffs.  Copeland v. Vance, 893 F.3d 101, 112-113 (2d Cir. 2018), cert. denied, No. 18-918, 2019 WL 234936. If reasonable people interpret the regulation differently as to a specific weapon, the regulation is vague. Copeland v. Vance, 893 F.3d at 113.  Information regarding the second vagueness concern is sought through these four deposition subpoenas, and the Supreme Court has clearly expressed that arbitrary enforcement is "the more important aspect of vagueness doctrine." Kolender v. Lawson, 461 U.S. 352, 358 (1983).

When reviewing a vagueness challenge under the due process clause, a Court may consider the interpretation of the challenged regulation given by those charged with enforcing it.

Cunney v. Bd. of Trustees of Vill. of Grand View, N.Y., 660 F.3d 612 (2d Cir. 2011); citing,

Grayned v. City of Rockford, 408 U.S. 104, 110 (1972)(internal quotation marks and footnotes

omitted), see e.g., Lake Carriers Association v. MacMullan, 406 U.S. 498, 506—508 (1972);

Cole v. Richardson, 405 U.S. 676, 685 (1972); Ehlert v. United States, 402 U.S. 99, 105, 106-

107 (1971)(Supreme Court relied on a letter from the General Counsel of the Department of the

Army to the Department of Justice regarding the prevailing interpretation of an army regulation

in holding that the Court of Appeals did not misconstrue the Selective Service regulation); cf.

Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); see also, VIP of Berlin, LLC

v. Town of Berlin, 593 F.3d 179, 186 (2d Cir. 2010)(In determining whether there was adequate

notice or if arbitrary enforcement was encouraged or authorized, the zoning officer's

understanding of the ordinance is relevant, and the Court considered testimony from the town

manager regarding how she interprets the statute and how she is asked to apply it.) Copeland v.

Vance, 893 F.3d at 114 (Court considered testimony of police officers regarding enforcement of

the law as part of vagueness determination.)

     B.  **The Information Sought is Relevant To These Claims**.

     The Attorney General does not address this abundance of authority in any fashion.  In

light of these cases, the Attorney General cannot reasonably dispute that the police departments'

1) interpretation of the Enforcement Notice; and 2) application of the two tests to the firearms is

relevant to the Plaintiffs' claims. The Plaintiffs designated deposition topics include knowledge

of the terms "copy" and "duplicate" appearing in G.L. c. 140, §121; the two tests in the

Enforcement Notice which interpret the statute; application of the tests to the listed firearms; and

other communications and guidance provided regarding the Notice's tests.  Exhibit 3 to the

Memorandum in Support of Motion to Quash, Topics of Discussion. The designees are from the

four locations where the stores are or were located, and the deposition testimony sought is targeted and relevant to evaluate whether the law enforcement authorities most likely to enforce and apply the Notice understand the application of the tests to the firearms listed in the complaint.  This information lies at the heart of the vagueness challenge.   In fact, an officer from one of the four departments has already indicated that the tests are subject to interpretation and can be interpreted differently by different officers.  Affidavit of David R. Kerrigan in Support of Opposition to Motion to Quash, ¶6. This is the foundation of discretionary enforcement and is precisely the judicial concern which the Due Process clause protects against.

The Attorney General argues that the requested discovery is not necessary because she has publicly announced through interrogatory answers and in recently updated Questions and Answers on her website that the firearms listed in the complaint are not "copies or duplicates" of assault weapons.  There are several problems with this argument that the recent "clarity" provided by the Office obviates the need for this discovery. First, the Attorney General specifically acknowledged in the very document that she now argues provides clarity that her interpretation regarding the application of the Notice is subject to the limitation that she is "not the only law enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban."  Interrogatories, 8, Exhibit B to this Opposition, Answer 3. Seeking to prevent the Plaintiffs from learning whether the most likely officers to enforce the law have difficulty interpreting the Notice's tests runs directly contrary to her acknowledgement.

In addition, to suggest that the Notice has ever been clear, even by the recent pronouncements, strains credulity when it took the Attorney General over two and a half years to figure out how to apply the tests to the complaint's firearms.  The Attorney General has never

explained how or why she reached these conclusions – this will be learned during the deposition of her office's designees.  If it was so clear, what took so long? For the Attorney General to state that "it has always been clear to 'persons of ordinary intelligence'… that those weapons are not 'copies or duplicates'" necessarily implies that those people from the Attorney General's Office who struggled and were unable to determine its meaning and application when the stores made the clarification requests in 2016 must not be of ordinary intelligence.[3]  Memorandum in Support of Motion to Quash, p. 5, and Exhibit A to this Opposition. Finally, the Attorney General fails to acknowledge that the conflicting language between the Enforcement Notice and the subsequent "clarifications" suggests that confusion remains despite clarifying efforts.  The Attorney General's previously issued guidances state that where the questions and answers conflict with the Notice, the terms of the Notice, not the guidance, govern.  Exhibit C to this Opposition, p. 1. Thus, if the tests are confusing, the confusion remains regardless of subsequent guidance efforts. When all of these documents are read together, Plaintiffs cannot determine how the Notice applies to certain firearms, so their vagueness challenge remains and discovery should continue.

**C.  Balancing of Factors Does Not Support the Request to Quash the Subpoenas.**

The remaining "balancing of factors" argument does not justify the drastic relief requested by the Attorney General.  While the departments are not parties to the case, that does not mean they are not subject to discovery.  Considering the relevance of the information sought, the need for the testimony, the particularity of the requests, and the burden imposed, none of these factors alone or in combination warrants the relief requested. First, as argued above, the information sought is relevant and necessary when these police departments are the most likely law enforcement authorities to apply the Notice to Plaintiffs' firearms sales.  Their understanding

---

[3] This cannot be.  The fact is that the employees were unable to tell because they, and the stores, were uncertain on whether the firearms met the tests.

of the tests is crucial to determine one of the two vagueness concerns. Simply because, as the Attorney General argues, the police departments may or may not have enforced the law does not mean that the Notice and its tests suffer from vague terms and offer the potential for discriminatory enforcement.

Moreover, the subpoenas were narrowly drawn to focus on the tests and their application to firearms. [4] The subpoenas require the departments to designate people to discuss the assault weapons statute, the Notice, its tests, the application of the tests to the listed firearms, and communications concerning the Notice.  This testimony is needed, particularly when the Attorney General has not supplied any internal documents regarding the Notice and its interpretation. Affidavit of David R. Kerrigan, ¶¶2-5.

The time for the deponents to prepare and travel do not warrant intervention by the Court to prevent the depositions from taking place. As to the depositions' location, counsel's Southborough office is well within the 100 miles provided for by the Rules of Procedure for all of the departments, and the Worcester police department is less than 15 miles from counsel's office.  Affidavit of David R. Kerrigan, ¶7. If the location is too inconvenient for the other departments, even though they are within distance allowed by rule, counsel is willing to consider using the Attorney General's Springfield office.  The depositions will not last long, and the Assistant Attorney Generals do not need to prepare – they need only attend if desired.

The testimony of the officers knowledgeable about the interpretation and application of these two tests is relevant to evaluating the discretion given to those officers and the potential for

---

[4] The AG argues that because one of the listed deposition topics includes knowledge of G.L. c. 140 §121 and how the departments interpreted the statutory phrases "copy and duplicate" before the Notice, the plaintiffs are seeking information relevant to a facial, not an as applied challenge.  This is simply not true, and the Plaintiffs understand what legal claims remain in this case.  Depositions are not taken in a vacuum, and the background information concerning a) the law as written; and b) the pre-Enforcement Notice interpretation of "copy" is relevant to understand how the departments interpret the current Enforcement Notice tests which interpret those statutory terms.

arbitrary and discriminatory enforcement.  Cunney v. Bd. of Trustees of Vill. of Grand View,
N.Y., 660 F.3d 612 (2d Cir. 2011).  The testimony sought is directly relevant to the issues
presented in this as-applied, vagueness challenge, and there is no valid reason to prevent the
Plaintiffs from learning this information.

       For these reasons, the Plaintiffs request that the Court deny the Motion to Quash the
subpoenas.

                                              PLAINTIFFS,

                                              Pullman Arms Inc., Guns and Gear, LLC,
Paper City Firearms, LLC, Grrr! Gear, Inc.,
and National Shooting Sports Foundation,
Inc.

By their attorneys,

   /s/  David R. Kerrigan
Christopher A. Kenney, Esq., BBO# 556511
cakenney@KSlegal.com
David R. Kerrigan, Esq., BBO# 550843
drkerrigan@KSlegal.com
Kristen R. Ragosta, Esq., BBO#664362
krragosta@kslegal.com
Kenney & Sams, P.C.
Old City Hall
45 School Street
Boston, MA 02108
(617)722-6045

   /s/   Michael J. Sullivan
Michael J. Sullivan, Esq.
msullivan@ashcroftlawfirm.com
Ashcroft Law Firm
200 State Street
7th Floor
Boston, MA 02109

DATED: July 26, 2019

## CERTIFICATE OF SERVICE

I hereby certify, on behalf of Plaintiffs, that on July 26, 2019, I caused to be filed electronically the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ David R. Kerrigan
David R. Kerrigan

# EXHIBIT A

From: **GunInquiries (AGO)** <GunInquiries@massmail.state.ma.us
Date: Thursday, November 3, 2016
Subject: IWI Tavor and Bullpup designs
To: Judith Szczygiel <gunsandgearllc@gmail.com>, "GunInquiries (AGO)"
<guninquiries@state.ma.us>

Jude:  The AGO has not taken a position on the sale of the Tavor as of this time.  If we have guidance
applicable to that gun, we will add it to the information available on the AGO website.

Best,


Gary Klein
Senior Trial Counsel
Public Protection and Advocacy
Office of Attorney General Maura Healey
(617) 963-2567
Gary.Klein@state.ma.us



**From:** Judith Szczygiel [mailto:gunsandgearllc@gmail.com]
**Sent:** Wednesday, November 02, 2016 5:14 PM
**To:** GunInquiries (AGO) <GunInquiries@MassMail.State.MA.US>
**Subject:** IWI Tavor and Bullpup designs

I had a question on the IWI Tavor and Bullpup designs.  I've seen other shops selling the Tavor and
was curious if that was admissible with the new ban?

Jude
--
Chris Szczygiel
Guns and Gear LLC - www.gunsandgearllc.com
Follow us @GunsNGearOutlet on twitter
413-786-0100



--
Chris Szczygiel
Guns and Gear LLC - www.gunsandgearllc.com
Follow us @GunsNGearOutlet on twitter
413-786-0100


This email has been scanned for email related threats and delivered safely by Mimecast. For more
information please visit http://www.mimecast.com

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PULLMAN ARMS INC., GUNS and GEAR, LLC, ) <br> PAPER CITY FIREARMS, LLC, ) <br> GRRR! GEAR, INC., and ) <br> NATIONAL SHOOTING SPORTS ) <br> FOUNDATION, INC. ) <br> ) <br>   Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MAURA HEALEY, ATTORNEY GENERAL ) <br> FOR THE COMMONWEALTH OF ) <br> MASSACHUSETTS ) <br> ) <br>   Defendant. ) | CASE NO.: 4:16-cv-40136-TJH |

## DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO THE ATTORNEY GENERAL

Pursuant to Fed. R. Civ. P., Rule 33, Plaintiffs submitted to the Defendant Maura Healey, in her capacity as Attorney General for the Commonwealth of Massachusetts ("AG"), the following Interrogatories to be answered under oath. Set out below the Interrogatories are the Attorney General's responses and objections. The Plaintiffs' Definitions and Instructions are retained in this Response solely for the convenience of the parties and without prejudice to the Attorney General's right to object to those Definitions and Instructions in whole or in part.

### Definitions

1.    The definitions set forth in D. Mass. LR 26.5 are deemed incorporated by reference, including but not limited to the definitions for the terms and phrases: "communication," "document," "identify (with respect to persons)" identify (with respect to documents)", "plaintiff," "defendant," "person," "concerning," and "state the basis."

2.     "Plaintiffs" shall refer to Pullman, Arms, Inc., Guns and Gear, LLC, Paper City Firearms, LLC, GRRR! Gear, Inc., and National Shooting Sports Foundation Inc.

3.     "Attorney General" shall refer to Defendant Attorney General Maura Healey and anyone acting on her behalf.

4.     "Enforcement Notice" refers to the Enforcement Notice issued by the Office of the Attorney General on July 20, 2016, attached to the Amended Complaint as Exhibit G.

## INTERROGATORIES

### INTERROGATORY NO. 1

Please identify the persons assisting with drafting or contributing information to answer these interrogatories.

### RESPONSE

The Attorney General ("AG") objects to this interrogatory on the ground that the meaning of the terms "assisting with drafting" and "contributing information" is unclear.

Subject to the above objection:

Gary Klein, Special Assistant Attorney General
Julia Kobick, Assistant Attorney General, Administrative Law Division
William Porter, Chief, Administrative Law Division
Elizabeth Kaplan, Assistant Attorney General, Administrative Law Division
David Bolcome, [Formerly] Civil Investigator

### INTERROGATORY NO. 2

Please identify all persons who assisted with drafting the Enforcement Notice.

### RESPONSE

The AG objects to this interrogatory on the basis that her response is not relevant to this matter within the meaning of Fed. R. Civ. P. 26(b)(1); nor is the request reasonably calculated to lead to the discovery of admissible evidence. More specifically, the Enforcement Notice is a document that speaks for itself and the names of the persons who assisted with drafting it are not relevant to any issue in this proceeding.

The AG also objects on the ground of burdensomeness and overbreadth for reasons including that the meaning of the term "assisted with drafting" is unclear.

Subject to the above objections and the agreed limitation that the AG need only provide the names of individuals that had policy-level input into "drafting the Notice of Enforcement", the AG provides the following response. By agreement, this response will be kept confidential by Plaintiffs and their Counsel.



## INTERROGATORY NO. 3

Please state whether the firearm known as the FNPS 90 is a "prohibited Assault weapon"

under either the Similarity Test or the Interchangeability Test in the Enforcement Notice, and if

so, please identify which test the FNPS 90 firearm meets and state the basis why the firearm

constitutes a prohibited assault weapon.

## RESPONSE

This answer is made subject to the limitations that (i) the AG is not the only law enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban, and (ii) without inspection, the Attorney General can offer no opinion about

whether a particular individual weapon is a prohibited assault weapon because, among other things, an individual weapon may have been modified to include two or more prohibited features and therefore would be a prohibited Assault weapon under G.L. c. 140, § 121 (by virtue of its incorporation of the "Features Test" contained in the 1994 federal assault weapons ban). Subject to these limitations, the AG states that the FNPS 90, as currently designed and as commonly constructed and configured by the manufacturer, is not a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice.

### INTERROGATORY NO. 4

Please state whether the firearm known as the IWI Tavor is a "prohibited Assault

weapon" within the meaning of the Enforcement Notice under either the Similarity Test or the

Interchangeability test in the Enforcement Notice, and if so, please identify which test the IWI

Tavor firearm meets and state the basis why the firearm constitutes a prohibited assault weapon.

### RESPONSE

This answer is made subject to the limitations that (i) the AG is not the only law enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban, and (ii) without inspection, the Attorney General can offer no opinion about whether a particular weapon is a prohibited assault weapon because, among other things, an individual weapon may have been modified to include two or more prohibited features and therefore would be a prohibited Assault weapon under G.L. c. 140, § 121 (by virtue of its incorporation of the "Features Test" contained in the 1994 federal assault weapons ban). Subject to these limitations, the AG states that the IWI Tavor, as currently designed and as commonly constructed and configured by the manufacturer, is not a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice.

### INTERROGATORY NO. 5

Please state whether the firearm known as the Kel-Tec RFB is a "prohibited Assault

weapon" within the meaning of the Enforcement Notice under either the Similarity Test or the

Interchangeability test in the Enforcement Notice, and if so, please identify which of the two

tests the Kel-Tech RFB firearm meets and state the basis why the firearm constitutes a prohibited

assault weapon.

### RESPONSE

This answer is made subject to the limitations that (i) the AG is not the only law

4

enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban, and (ii) without inspection, the Attorney General can offer no opinion about whether a particular individual weapon is a prohibited assault weapon because, among other things, an individual weapon may have been modified to include two or more prohibited features and therefore would be a prohibited Assault weapon under G.L. c. 140, § 121 (by virtue of its incorporation of the "Features Test" contained in the 1994 federal assault weapons ban). Subject to these limitations, the AG states that the Kel-Tec RFB, as currently designed and as commonly constructed and configured by the manufacturer, is not a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice.

## INTERROGATORY NO. 6

Please state whether the firearm known as the Beretta CX4Storm is a "prohibited Assault weapon" within the meaning of the Enforcement Notice under either the Similarity Test or the Interchangeability test in the Enforcement Notice, and if so, please identify which of the two tests the Beretta CX4 Storm firearm meets and state the basis why the firearm constitutes a prohibited assault weapon.

## RESPONSE

This answer is made subject to the limitations that (i) the AG is not the only law enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban, and (ii) without inspection, the Attorney General can offer no opinion about whether a particular individual weapon is a prohibited assault weapon because, among other things, an individual weapon may have been modified to include two or more prohibited features and therefore would be a prohibited Assault weapon under G.L. c. 140, § 121 (by virtue of its incorporation of the "Features Test" contained in the 1994 federal assault weapons ban). Subject to these limitations, the AG states that the Beretta CX4 Storm, as currently designed and as commonly constructed and configured by the manufacturer, is not a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice.

## INTERROGATORY NO. 7

Please state whether the firearm known as the Kel-Tech Sub 2000 is a "prohibited Assault weapon" within the meaning of the Enforcement Notice under either the Similarity Test or the Interchangeability test in the Enforcement Notice, and if so, please identify which of the two tests the Kel-Tech 2000 firearm meets and state the basis why the firearm constitutes a

prohibited assault weapon.

## RESPONSE

This answer is made subject to the limitations that (i) the AG is not the only law enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban, and (ii) without inspection, the Attorney General can offer no opinion about whether a particular individual weapon is a prohibited assault weapon because, among other things, an individual weapon may have been modified to include two or more prohibited features and therefore would be a prohibited Assault weapon under G.L. c. 140, § 121 (by virtue of its incorporation of the "Features Test" contained in the 1994 federal assault weapons ban). Subject to these limitations, the AG states that the Kel-Tec Sub 2000, as currently designed and as commonly constructed and configured by the manufacturer, is not a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice.

## INTERROGATORY NO. 8

Please state whether the firearm known as the Smith and Wesson 15-22 is a "prohibited

Assault weapon" within the meaning of the Enforcement Notice under either the Similarity Test

or the Interchangeability test in the Enforcement Notice, and if so, please identify which test the

Smith and Wesson 15-22 meets and state the basis why the firearm constitutes a prohibited

assault weapon.

## RESPONSE

This answer is made subject to the limitations that (i) the AG is not the only law enforcement officer in Massachusetts who is authorized to enforce the Commonwealth's Assault weapons ban, and (ii) without inspection, the Attorney General can offer no opinion about whether a particular individual weapon is a prohibited assault weapon because, among other things, an individual weapon may have been modified to include two or more prohibited features and therefore would be a prohibited Assault weapon under G.L. c. 140, § 121 (by virtue of its incorporation of the "Features Test" contained in the 1994 federal assault weapons ban). Subject to these limitations, the AG states that the Smith and Wesson 15-22, as currently designed and as commonly constructed and configured by the manufacturer, is not a "prohibited Assault weapon" under either the Similarity Test or the Interchangeability Test in the Enforcement Notice.

## INTERROGATORY NO. 9

Please state the basis why and how the Attorney General determined that Ruger Mini

14's and substantially similar model weapons are not assault weapons within the meaning of

G.L. c. 140 §121 and the Enforcement Notice, as reflected on Exhibit I to the Amended

Complaint.

## RESPONSE

The AG objects to this interrogatory on the basis that her response is not relevant to this matter within the meaning of Fed. R. Civ. P. 26(b)(1); nor is the request reasonably calculated to lead to the discovery of admissible evidence. More specifically, the fact that a particular type of weapon *is not* an assault weapon as defined by Massachusetts law is not relevant to the issues in this case because the Enforcement Notice does not impinge upon the sale or transfer of any such weapon by the Plaintiffs. The AG further objects on the grounds that this interrogatory misrepresents Exhibit I which, in relevant part, is limited to a statement that the Ruger Mini 14 is not a "copy or duplicate" of an "enumerated assault weapon" under the Enforcement Notice. The Ruger Mini 14, in some configurations, may be a prohibited assault weapon if it meets the Features Test under the statutory definition of "assault weapon" in G.L. c. 140, § 121.

Subject to these objections, the Attorney General states that the Ruger Mini 14 is not a copy or duplicate of a prohibited assault weapon under the Similarity Test in the Enforcement Notice because, based on evaluation, its internal functional components are not substantially similar in construction and configuration to those of any Enumerated Weapon. The Attorney General further states that the Ruger Mini 14 is not a copy or duplicate of a prohibited assault weapon under the Interchangeability Test in the Enforcement Notice because, based on evaluation, its receiver is not the same as or interchangeable with the receiver of any Enumerated Weapon.

## INTERROGATORY NO. 10

Please state the basis why and how the Attorney General determined that any .22 caliber

rimfire rifles are not assault weapons within the meaning of G.L. c. 140 §121 and the

Enforcement Notice, as reflected on Exhibit I to the Amended Complaint.

## RESPONSE

The AG objects to this interrogatory on the basis that her response is not relevant to this matter within the meaning of Fed. R. Civ. P. 26(b)(1); nor is the request reasonably calculated to lead to the discovery of admissible evidence. More specifically, the fact that a particular type of weapon *is not* an assault weapon as defined by Massachusetts law is not relevant to the issues in this case because the Enforcement Notice does not impinge upon the sale or transfer of any such weapon by the Plaintiffs. The AG further objects on the grounds that this interrogatory misrepresents Exhibit I which, in relevant part, is limited to a statement that .22 caliber rimfire rifles are not "copies or duplicates" of an "enumerated assault weapon" under the Enforcement Notice. Such rifles, in some configurations, may be prohibited assault weapons if they meet the Features Test under the statutory definition of "assault weapon" in G.L. c. 140, § 121.

Subject to these objections, the Attorney General states that .22 caliber rimfire rifles are not copies or duplicates of a prohibited assault weapon under the Similarity Test in the Enforcement Notice because, based on evaluation, their internal functional components are not substantially similar in construction and configuration to those of any Enumerated Weapon. The Attorney General further states that .22 caliber rimfire rifles are not copies or duplicates of a prohibited assault weapon under the Interchangeability Test in the Enforcement Notice because, based on evaluation, their receivers are not the same as or interchangeable with the receiver of any Enumerated Weapon.

## INTERROGATORY NO. 11

Please state the basis why and how the Attorney General determined that the Springfield

Armory M1A and substantially similar model weapons are not assault weapons within the

meaning of G.L. c. 140 §121 and the Enforcement Notice, as reflected on Exhibit I to the

Amended Complaint.

## RESPONSE

The AG objects to this interrogatory on the basis that her response is not relevant to this matter within the meaning of Fed. R. Civ. P. 26(b)(1); nor is the request reasonably calculated to lead to the discovery of admissible evidence. More specifically, the fact that a particular type of weapon *is not* an assault weapon as defined by Massachusetts law is not relevant to the issues in this case because the Enforcement Notice does not impinge upon the sale or transfer of any such weapon by the Plaintiffs. The AG further objects on the grounds that this interrogatory misrepresents Exhibit I which, in relevant part, is limited to a statement that the Springfield Armory M1A is not a "copy or duplicate" of an "enumerated assault weapon" under the Enforcement Notice. The Springfield Armory M1A, in some configurations, may be a prohibited assault weapon if it meets the Features Test under the statutory definition of "assault weapon" in G.L. c. 140, § 121.

Subject to these objections, the Attorney General states that the Springfield Armory M1A is not a copy or duplicate of a prohibited assault weapon under the Similarity Test in the Enforcement Notice because, based on evaluation, its internal functional components are not substantially similar in construction and configuration to those of any Enumerated Weapon. The Attorney General further states that the Springfield Armory M1A is not a copy or duplicate of a prohibited assault weapon under the Interchangeability Test in the Enforcement Notice because, based on evaluation, its receiver is not the same as or interchangeable with the receiver of any Enumerated Weapon.

## INTERROGATORY NO. 12

Identify by name and position all Attorney General employees who received and

responded to phone inquiries regarding the applicability of the Enforcement Notice to particular

firearms.

## RESPONSE

The AG objects to this interrogatory on the basis that her response is not relevant to this
matter within the meaning of Fed. R. Civ. P. 26(b)(1); nor is the request reasonably calculated to
lead to the discovery of admissible evidence. More specifically, the Enforcement Notice is a
document that speaks for itself and the names of persons who received and responded to
inquiries about it is not relevant to any issue in this proceeding.

The AG further objects on the basis to the extent that this interrogatory calls for
disclosure of information that the AG is legally precluded from making public under Mass. R.
Crim. P. 5 and which if disclosed could obstruct or impede criminal investigations. The AG is
further legally precluded from disclosing Criminal Record Offender Information under M.G.L. c.
6, § 178 and from providing records divulging or tending to divulge the names and addresses of
persons who own or possess firearms, rifles, shotguns, machine guns and ammunition pursuant
to M.G.L. c. 66, § 10(d).

The AG also objects on the basis of well established common law privileges including
the privilege protecting law enforcement investigative information and techniques, *see, e.g.,
Puerto Rico v. United States*, 490 F.3d 50, 62-64 (1st Cir. 2007), and the privilege protecting
communications made to her or her office to secure the enforcement of law. *See e.g., District
Attorney v. Flatley*, 419 Mass. 507, 510 (1995). The AG further objects on the ground that
inquiries made and responses to such inquiries under the Enforcement Notice are confidential.

Subject to the above objections:

> Gary Klein, [formerly] Senior Trial Counsel, Public Protection and Advocacy
> Bureau
> Dan Krockmalnic, [formerly] Assistant Attorney General, Consumer Protection
> Division
> David Bolcome, [formerly] Civil Investigator
> Kevin McCarthy, Chief, Civil Investigations
> Samantha Shusterman, Assistant Attorney General, Consumer Protection Division

Note: Position designations are as of the date that the Enforcement Notice was issued. The
designation "formerly" means that the individual no longer holds that position.

## INTERROGATORY NO. 13

Identify by name and position all Attorney General employees who received and

responded to email inquiries regarding the applicability of the Enforcement Notice to particular

firearms.

**RESPONSE**

Same as response to Interrogatory No. 12.

Signed under the pains and penalties of perjury this __ day of April, 2019, on behalf of Maura Healey, in her capacity as Attorney General, based on information known to the undersigned, or information made available to the undersigned, which to the best of his understanding is true.

_____
Gary Klein
Special Assistant Attorney General
Office of the Attorney General

As to Objections:

_____
Julia E. Kobick, BBO # 680194
William W. Porter, BBO # 542207
Elizabeth Kaplan, BBO # 568911
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2559
Date: April 23, 2017                    julia.kobick@state.ma.us

**CERTIFICATE OF SERVICE**

I certify that this document will be served on counsel for all Plaintiffs on April 23 2019, via first class mail, postage prepaid.

_____
Elizabeth Kaplan
Assistant Attorney General

10

# EXHIBIT C



The Official Website of the Attorney General of Massachusetts

## Attorney General
## Maura Healey

🏠 Home  >  Public Safety  >  Assault Weapons Ban Enforcement

## Assault Weapons Ban Enforcement

Attorney General Maura Healey has issued a notice to all gun sellers and manufacturers in Massachusetts, warning that her office is stepping up enforcement of the state's assault weapons ban, including a crackdown on the sale of copycat weapons.

The enforcement notice clarifies what constitutes a "copy" or "duplicate" weapon under the assault weapons ban. Copies or duplicates of banned assault rifles, including copies of the Colt AR-15 and the Kalishnikov AK-47, are prohibited by the Massachusetts assault weapons ban. Despite the law, an estimated 10,000 copycat assault weapons were sold in Massachusetts in 2015 alone.

The loophole in the Mass assault weapons ban - Op-Ed by Attorney General Healey as it appeared in the July 20, 2016 Boston Globe 🗎

AG Healey Announces Enforcement of Ban on Copycat Assault Weapons

Remarks of Attorney General Healey 🗎

Attorney General's Assault Weapons Enforcement Notice 🗎

Guns That Are Not Assault Weapons

| AG Letter & Guidance | Questions & Answers | Support for Ban | Images |
|---|---|---|---|

Massachusetts law prohibits sale and possession of Assault Weapons.  G.L. c. 140, §§ 128 and 131M.  Sale by a business of any weapon that the buyer is not permitted to possess also violates the state consumer protection act, G.L. c. 93A.

On July 20, 2016, the Attorney General issued an Enforcement Notice on Prohibited Assault Weapons that provides gun manufacturers, licensed dealers, and the public with guidance on the Assault Weapons ban.  In particular, the notice explains how the Attorney General identifies weapons that are prohibited as "copies" or "duplicates" of the enumerated banned Assault Weapons that are listed in Massachusetts law.

The full text of the Enforcement Notice, issued on July 20, 2016, is available here 🗎.  These FAQs are intended to summarize the Enforcement Notice, but in case of any inconsistency, the Enforcement Notice controls.

Q: What type of weapons are prohibited as "copies or duplicates" of the Assault Weapons listed in G.L. c. 140, § 121?

- Under Massachusetts law, Assault Weapons are defined in several ways. Among other things, the law sets out a list of weapons, by make and model, that are prohibited. The law further states that "copies or duplicates" of the listed weapons are also banned.  Separately, there is a list of features that make certain guns Assault Weapons.

- The Attorney General's Enforcement Notice describes two tests the AGO uses to identify guns that are "copies or duplicates" because those guns are sufficiently similar to be considered "copycats" of the listed guns.

- As explained in the Notice, "copies" or "duplicates" of banned Assault Weapons include semiautomatic weapons that can accept a detachable ammunition magazine and that meet one of the following tests:

  - The weapon's internal functional components are substantially similar to the construction or configuration of a weapon that is expressly banned under the law (such as a Colt AR-15 or a Kalashnikov AK-47);

    OR

  - The weapon has a receiver that includes or accepts key operating components that are interchangeable with those of a banned weapon.  The relevant operating components may include, but are not limited to:

    1) the trigger assembly;

    2) the bolt carrier or bolt carrier group;

    3) the charging handle;

    4) the extractor or extractor assembly; or

    5) the magazine port.

**Q: Does the Enforcement Notice affect the legality of the sale of receivers for Assault Weapons if the gun is not built out?**

- Yes. If the receiver is for a weapon that would meet one of the tests described above, it will be treated as an Assault Weapon and it cannot be sold in Massachusetts.

**Q: I am a law enforcement officer. Does the notice affect me?**

- No. The notice does not change the law with respect to ownership of Assault Weapons by law enforcement officers. Your existing right to buy and possess Assault Weapons remains protected under Massachusetts law.

**Q: I am a dealer. May I re-stock my inventory of Assault Weapons for sales exclusively to law enforcement officers?**

- No. However, you may take orders for sales of Assault Weapons to law enforcement officers, and you may obtain those weapons from your distributor and possess them until you complete the transfer. When you do so, you must retain information sufficient to verify that the transferee is a law enforcement officer.

**Q: Are there examples or categories of weapons that are not copies or duplicates of Assault Weapons?**

- Yes. Many rifles, shotguns, and pistols are not copies or duplicates of enumerated Assault Weapons. For example, the following are not copies or duplicates under G.L. c. 140, § 121:

  - Any handgun on the August 2016 version of the state's Approved Firearms Roster, available here 🔧.

  - Handguns are still subject to MA 940 CMR 16.00 *et seq* Consumer Protection Regulations;

  - Any .17 or .22 caliber rimfire rifle;

  - Any Ruger Mini 14 or substantially similar model weapon;

  - Any Springfield Armory M1A or substantially similar model weapon;

  - Any of the hundreds of rifles and shotguns on this list 🔧 —Appendix A to 18 U.S.C. § 922, as appearing on September 13, 1994;

  - Any weapon that is operated by manual bolt, pump, lever, or slide action;

  - Any weapon that is an antique, relic, or theatrical prop;

  - Any semiautomatic rifle that *cannot* accept a detachable magazine that holds more than five rounds of ammunition;

  - Any semiautomatic shotgun that *cannot* hold more than five rounds of ammunition in a fixed or detachable magazine.

- This list is not exhaustive; it is meant for illustrative purposes only. Many other weapons are not Assault Weapons or copies or duplicates of Assault Weapons.

**Q: Are any .17 or .22 caliber rimfire rifles affected by the Enforcement Notice?**

- No. However, a weapon that is manufactured as an Assault Weapon cannot be made legal by alterations that allow it to discharge .17 or .22 caliber ammunition.

**Q: Does the Enforcement Notice change which semi-automatic pistols may be sold in Massachusetts?**

- No. The Enforcement Notice makes no change to the list of handguns, including semi-automatic pistols, on the August 2016 version of the state's Approved Firearms Roster. The August 2016 list 🔧 is available here.

- The Massachusetts Assault Weapons Ban does prohibit the sale of certain semi-automatic pistols, including the INTRATEC TEC-9, TEC-DC9 and TEC-22; and the Action Arms Israeli Military Industries UZI and Galil. Only these weapons and copies or duplicates of these specific pistols are prohibited under the ban, and none appear on the approved list. Handguns are still subject to MA 940 CMR 16.00 *et seq.* Consumer Protection Regulation.

**Q: Does the Enforcement Notice apply to sales transactions or transfers that were started before July 20, 2016, but not completed until several days after that date?**

- Yes. But as a matter of enforcement priorities, the Attorney General's office does not expect to conduct enforcement actions in connection with those transactions. Sellers should retain evidence that clearly establishes the date on which such transactions were commenced.

**Q: My gun dealer is telling me that a gun is labeled by the manufacturer as "Massachusetts compliant." Does that mean that the weapon is not banned?**

- No. The fact that that a weapon has been labeled "state compliant" or "Massachusetts compliant" by the manufacturer does not make the gun legal to purchase and own in Massachusetts. Whether a weapon is banned depends on whether it meets the definition of Assault Weapon in state law. A weapon is a prohibited "copy or duplicate" if it meets one of the tests contained in the Enforcement Notice.

**Q: If the gun does not have certain features like a flash suppressor or a collapsible stock, can it still be an Assault Weapon?**

- Yes. If a weapon is a copy or duplicate of one of the enumerated models under one of the tests in the Enforcement Notice, it is a prohibited weapon, even if it does not have certain features such as a flash suppressor and a collapsible stock. In other words, a gun that meets one of the tests is an Assault Weapon – even if its flash suppressor is removed and/or its stock is pinned in a fixed position.

- The Features Test, as referenced in state law and set out in the Enforcement Notice, is a separate and independent basis for concluding that a weapon is a banned Assault Weapon.

Q: How am I supposed to know whether a gun is a copy or duplicate that is prohibited under state law?

- Gun dealers and gun manufacturers must use their knowledge and experience to assess which guns are substantially similar to a banned weapon and likely to meet one of the tests. The Attorney General expects voluntary compliance from gun dealers and manufacturers with respect to prohibited weapons.

- You may also examine the owner's manual and marketing material for a gun. If a gun is labeled or marketed as "the same as" or "similar to" an "AR-15", "AK-47" or any other Enumerated Weapon, this would strongly suggest that the weapon is prohibited as a "copy or duplicate."

- You may also review the separate question above that lists many guns, by example or category, that are not copies or duplicates of Assault Weapons under the Enforcement Notice.

Q: What if I already own a gun that is a copy or duplicate?

- If a weapon is a copy or duplicate of one of the models enumerated in the law, it is an Assault Weapon. The Enforcement notice will not be applied to possession, ownership or transfer by an individual gun owner of weapons obtained on or before July 20, 2016.

- The AGO also will not enforce the law against a gun dealer that possesses or transfers a "copy or duplicate" weapon that was obtained on or before July 20, 2016, provided that transfers, if any, are made to persons or businesses in states where ownership of the weapon is legal.

Q: What can I do if I no longer want my gun?

- There are frequent state, regional or local buyback programs. Check with your local police department.

- You may also surrender any gun, at any time, for any reason to your local police department or to the State Police. *See* 5.15 CMR § 3.06.

Q: May I return a weapon covered by the Enforcement Notice after July 20, 2016 if it was transferred to me for storage or repairs before that date?

- Yes. If the owner purchased the weapon prior to July 20, 2016 and you have proof that you received the weapon solely for storage or repairs, you may return it provided that you register the transfer. You should keep evidence of the circumstances of the transfer.

Q: May I return a weapon covered by the Enforcement Notice to a manufacturer after July 20, 2016 for repairs or replacement under warranty or pursuant to a recall? And may the manufacturer return it to me thereafter?

- Yes. If you purchased the weapon prior to July 20, 2016, you may return the weapon to the manufacturer, who may then return it to you after it is repaired or replaced.

Q: Why did the Attorney General take this action?

- The Enforcement Notice explains how the AGO will enforce a law -- the Assault Weapons ban -- that was enacted in 1998 to protect public safety. By issuing the notice, the Attorney General hopes and expects that non-compliant gun dealers will come into voluntary compliance with the law, to minimize the need for criminal or civil enforcement.

- The Attorney General intends to give full effect to the Legislature's mandate that Assault Weapons, including copies or duplicates of the listed weapons, stay out of civilian hands.

Q: Is there a list of weapons that are banned under state law?

- No. The AGO will work with gun dealers, as necessary, to help them identify the guns that meet one or both of the tests of a copy or duplicate.

- The AGO is expecting full, voluntary compliance with the Assault Weapons ban, as it is explained in the Enforcement Notice, but will enforce the Commonwealth's laws in a civil or criminal action if gun dealers or individuals do not comply.

© 2016 Commonwealth of Massachusetts.

Mass.Gov® is a registered service mark of the Commonwealth of Massachusetts.

Site Policies    Contact the Attorney General's Office